UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 7 |
| WESTLAKE PROPERTY HOLDINGS, LLC, | ) |
| *et al.*, | ) Case No. 19-22878 |
| Debtors. | ) |
| | ) Judge Deborah L. Thorne |

## MEMORANDUM OPINION

This is a chapter 7 case filed by Pipeline-Westlake Hospital, LLC (Westlake) and its related entity, Westlake Property Holdings, LLC. Westlake is located in the Village of Melrose Park (Village) which filed a motion to dismiss these cases as well as an emergency motion for the entry of an order that the automatic stay is not applicable pursuant to 11 U.S.C. § 362(b)(4). The parties have fully briefed each motion and for the reasons discussed below, the motion to dismiss is denied. The motion seeking a determination that the automatic stay does not apply to the Village under section 362(b)(4) is also denied.

### 1. Background

The facts are drawn from the parties' papers and other materials on the docket of the bankruptcy case. No facts pertinent to these motions are in dispute.

Westlake operated a community hospital in the Village for over 100 years. In late 2018, the for-profit group, SRC Hospital Investments II, LLC (SRC), purchased Westlake and its related entity along with two other Chicago area hospitals. At the time SRC sought to purchase Westlake, it made certain representations to the Village and to the Illinois Health Facilities Review Board (Review Board)[1], including that it would continue to serve indigent patients and

---

[1] The Illinois Health Facilities Planning Act (Planning Act) places exclusive power in the Review Board over healthcare facilities in Illinois. 20 ILCS 3960/2. It is empowered with establishing "an orderly and comprehensive

maintain the Hospital for at least two years. Based on those representations, the purchase was approved by the Review Board.

Several months after the purchase closed, SRC announced that Westlake was not financially viable and began to facilitate a closing of the Hospital by filing a Discontinuation Application with the Review Board. On April 30, 2019, the Review Board unanimously approved the Discontinuation Application.

### a. The State Court Proceedings

Prior to the Review Board's consideration of the Discontinuation Application, the Village filed a complaint in the Circuit Court of Cook County (Circuit Court) against Westlake and its non-debtor affiliates Pipeline Health System LLC, SRC, TWG Partners LLC, Nicolas Orzano and Eric Whitaker[2] alleging fraudulent misrepresentation, civil conspiracy and violation of several municipal codes in connection with Westlake and SRC's initial application to purchase Westlake. The Circuit Court entered a temporary restraining order in favor of the Village and against the defendants which enjoined them from closing Westlake. The Illinois Appellate Court

---

health care delivery system". *Id*. The Review Board consists of nine voting members appointed by the Governor with the advice and consent of the Senate. 20 ILCS 3960/4. In order to purchase, construct, modify, or close a healthcare facility, the party doing so must submit an application to the Review Board for its approval. 20 ILCS 3960/5. Healthcare facilities must also obtain the Review Board's approval to discontinue any service they provide. 20 ILCS 3960/8.7. An interested party may object to a discontinuation application, which may give rise to a public hearing before the Review Board makes its decision. 20 ILCS 3960/8.7. Once the Review Board decides whether to approve or deny an application, any person who is adversely affected by the decision may challenge it in state court. 20 ILCS 3960/11. The Review Board may impose sanctions on parties who act in violation of its decision or if a party takes action without first seeking the Review Board's approval. 20 ILCS 3960/14. It may also impose an injunction against those parties who are attempting to circumvent the Review Board's authority. 20 ILCS 3960/15. These powers are exclusive to the Review Board and the Planning Act explicitly forbids home rule units from exercising these powers. 20 ILCS 3960/17.

[2] The action was captioned, *Village of Melrose Park v. Pipeline Health Systems, LLC, et al.*, Case No. 2019 CH 03041. The appellate ruling was entered on April 18, 2019 in the Appellate Court of Illinois, First District, Second Division under case number 1-19-0727. The Appellate Court's decision is reported at 2019 Il App (1st) 190727-U*, 2019 Ill. App. Unpub.LEXIS 676 (Ill.App.Ct. 1st Dist. Apr. 18, 2019).

2

reversed and remanded the case back to the Circuit Court, finding that the Village failed to demonstrate that it had an ascertainable right endangered by the defendants' conduct.

On May 2, the Village, upset with the decision of the Review Board authorizing the Discontinuation Application, filed a second action in the Circuit Court against the Review Board, Westlake and SRC seeking judicial review of the Review Board's action under the Illinois Administrative Review Law (Review Action).[3] Among the allegations in the Review Action, the Village alleged that the Review Board was not properly constituted at its April 30 meeting. Following a hearing on May 7, 2019, the Circuit Court entered an order (May 7 Order) temporarily enjoining Westlake and SRC from discontinuing or modifying any medical services offered by Westlake.

Specifically, the May 7 Order enjoined Westlake, SRC and any of their employees or agents from among other things:

- Taking any action pursuant to the Discontinuation Application, including, but not limited to closing Westlake;

- Discontinuing any medical services offered by Westlake on April 30, 2019, or modifying the scope of those services; and

- Creating conditions that change the status quo, including but not limited to terminating employees.

---

[3] The action is styled, *Village of Melrose Park v. Illinois Health Facilities and Services Review Board, et al.*, Case No. 2019-CH-05553. The complaint was amended on May 23, 2019 and was joined by the Cook County State's Attorney as an intervenor-plaintiff. Additional allegations were added, including allegations that the Review Board was not properly constituted at the time it voted on the Discontinuation Application.

3

The May 7 Order also authorized the Cook County State's Attorney to intervene as a plaintiff on the side of the Village. SRC and Westlake appealed the May 7 Order. The appeal is currently pending before the Illinois Appellate Court.

On August 6, 2019, while the appeal was pending, Westlake and Westlake Property Holdings, LLC, filed voluntary chapter 7 petitions in the Bankruptcy Court for the District of Delaware. On that same day, the Delaware Bankruptcy Court entered an order authorizing the chapter 7 trustee to continue operating Westlake through August 13 without prejudice to further extensions as might be requested by the chapter 7 trustee.

On August 8, the Village and the Cook County State's Attorney moved in the Circuit Court to have SRC held in contempt for violating the May 7 Order by using the bankruptcy case to "evade the Court's Stay and shutter the hospital" [Dkt. No. 23, Exhibit C]. In addition, the emergency motion asked for daily fines of at least $200,000 for violation of the Order. In response, SRC filed its own motion in the Review Action to stay proceedings pending the outcome of the Westlake bankruptcy proceedings.

Although no stay of the May 7 Order was entered pending the appeal, the Illinois Appellate Court entered an order on August 13 staying all proceedings pending resolution of the bankruptcy proceedings of Westlake. On the same day, the Delaware Court transferred the cases to this district. On August 14, the Circuit Court stayed proceedings in conjunction with the administrative review action pending a ruling from this court on the instant motions.

### b.      Westlake's Financial Condition

In response to the Village's Motion to Dismiss, Westlake has described its financial condition as causing the need for bankruptcy relief. James Edwards, the CEO of SRC, listed the

4

many indications of financial strain under which Westlake was operating during the first half of 2019. [Dkt. 23, Exhibit 5A]. These include:

- Loss of $4,000,000 in state funding;

- Withdrawal of $500,000 in Village funding for the Westlake redevelopment plan;

- Losses of $1 million per month in Westlake operations in 2018;

- Decreases in occupied beds by February to only 50%, to 30% in April and to 20% in May;

- Resignation of approximately 45 staff members while the Discontinuation Application was pending before the Review Board;

- Loss of approximately $2,300,000 in April;

- Loss of approximately $2,500,000 in May;

- Loss of approximately $2,700,000 in July 2019; and

- Failure to locate a purchaser of the Hospital as a going-concern;

## 2. Discussion

The Village filed a motion to dismiss this case under section 305(a) of the Bankruptcy Code maintaining that the interests of creditors and the debtor would be better served by dismissal or suspension and alleging that the petition was filed in bad faith. Additionally, the Village filed an emergency motion for the entry of an order that the automatic stay is not applicable to the Review Action and contempt proceeding. For the reasons stated below, the motion to dismiss is denied. Further, the Village is not exempt from the automatic stay under section 362(b)(4) and thus cannot pursue it claims against Westlake in the Review Action.

### a. The Motion to Dismiss

### (1) Effect of the State Court Injunction

The motion to dismiss first raises the question of whether an apparently insolvent debtor can file a chapter 7 case in light of an existing state court injunction prohibiting the debtor from closing its doors. To answer this question, the court first looks at the constitutional authority provided to Congress to enact bankruptcy laws and those laws found in the Bankruptcy Code which allow eligible debtors to file.

The right of Congress to provide for laws related to bankruptcy relief is found in the United States Constitution. U.S. Const. Art.I, § 8, cl. 4. Congress has exercised this responsibility by adopting the Bankruptcy Code. 11 U.S.C. § 101 *et. seq.* Federal district courts are given exclusive jurisdiction over bankruptcy cases and the filing of bankruptcy petitions. *See In re Allied Products Corp.*, 288 B.R. 533, 535 (Bankr. N.D. Ill. 2003); *Gonzales v. Parks*, 830 F.2d 1033, 1035 (9th Cir. 1987); 28 U.S.C. § 1334(a). The district court may refer certain "core" cases to the bankruptcy court for final judgment under 28 U.S.C. § 157(a)-(b)(1). In the Northern District of Illinois, these cases are referred to the bankruptcy court "[a]s a matter of course." *See FTI Consulting, Inc. v. Merit Mgmt. Grp., LP*, 476 B.R. 535, 537 (N.D. Ill. 2012); *In re Neumann Homes, Inc.*, 414 B.R. 383, 385–86 (N.D. Ill. 2009) (citing L.R. 40.3.1); *In re Hedstrom Corp.*, Nos. 04–38543 & 05 C 6888, 2006 WL 1120572, at *1 (N.D. Ill. Apr. 24, 2006) (same).

Section 109 of the Bankruptcy Code, not state law, defines which entities are eligible to seek relief as debtors in bankruptcy. 11 U.S.C. § 109. State laws cannot restrict statutory eligibility to file a bankruptcy petition and to pursue bankruptcy relief under the Bankruptcy Code. *See State of Ill., Dep't of Revenue v. Schechter*, 195 B.R. 380, 385 (N.D. Ill. 1996).

Similarly, a party may not use a state court injunction to support dismissal of a bankruptcy petition; only federal courts hold the remedies to challenge the filing of a bankruptcy petition. *See In re Medifacts Intern., Inc.*, 2007 WL 521917, at *1 (Bankr. D. Del. 2007); *In re Emerald Acquisition Corp.*, 170 B.R. 632, 644 (Bankr. N.D. Ill. 1994); *In re Sino Clean Energy, Inc.*, 901 F.3d 1139, 1142 (9th Cir. 2018); *In re Kreisers, Inc.*, 112 B.R. 996, 999 (Bankr. D.S.D. 1990).

In the May 7 Order, the Circuit Court enjoined the Debtor and SRC from "taking any action pursuant to the . . . Discontinuation Application, . . . discontinuing any medical service offered by [the Debtor] on April 30, 2019, . . . modifying the scope of those services[, or] creating conditions that change the status quo." The Village suggests that the bankruptcy petition was filed at "SRC's bidding" and seeks contempt against SRC and the Debtor for filing this case.

The state court order does not mention bankruptcy and nothing in the order prohibits the filing of a bankruptcy petition. Moreover, as discussed above, under the Supremacy Clause and the federal bankruptcy laws, the state court could not have prohibited Westlake from filing. To the extent that the injunction did prohibit the bankruptcy filing, the Supremacy Clause and the Bankruptcy Code would render the injunction invalid. As of August 6, Westlake has been under the control of chapter 7 trustees who are not parties to the injunction and who were ultimately responsible for closing the Hospital.

As Westlake's sole member and manager, the entity vested with the "power of management," SRC holds authority to file a bankruptcy petition on behalf of Westlake. The authority to file a bankruptcy petition on behalf of a limited liability company is determined by state corporate governance law, in this case by Delaware law. *Price v. Gurney*, 324 U.S. 100, 105 (1945); *In re Gen–Air Plumbing & Remodeling, Inc.*, 208 B.R. 426, 430 (Bankr. N.D. Ill.

7

1997); *see also In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Or. 2003). Under Delaware law, a limited liability company is managed by its members and can only act through authorization provided in its operating agreement or Delaware law. Del.Code tit. 6, § 18–402. While this court has not seen the operating agreement for the Debtor, no allegations have been made that the filing of the chapter 7 petition, including the resolution executed by SRC, was an invalid exercise of management's authority under Delaware law. The state court can no more enjoin SRC from filing a petition on behalf of Westlake than it could enjoin Westlake itself. Therefore, to the extent the state court injunction prohibited SRC from filing a petition on behalf of Westlake, and it is not clear that it did, the injunction as to SRC would also violate the Bankruptcy Code.

### (2) Section 305(a) Dismissal or Abstention Is not Warranted

The Village's motion to dismiss asks this court to suspend proceedings or dismiss this case under section 305(a)(1) which authorizes dismissal or suspension of a bankruptcy case if "the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1).

The decision to dismiss under section 305(a) is an extraordinary remedy made on a case-by-case basis within the bankruptcy court's discretion. *In re Int'l Zinc Coatings & Chem. Corp.*, 355 B.R. 76, 82 (Bankr. N.D. Ill. 2006). Dismissal under section 305(a)(1) is only appropriate when both "creditors and the debtor" would be "better served" by dismissal. *In re Eastman*, 188 B.R. 621, 624 (B.A.P. 9th Cir. 1995). When considering whether dismissal is warranted, courts typically consider "(1) the presence of unsettled issues of non-bankruptcy law; (2) the availability of another forum to decide those issues; (3) economy and efficiency of

administration; (4) any prejudice to the parties; and (5) the purpose of the bankruptcy." *In re Int'l Zinc*, 355 B.R. at 82.

Here, dismissal under section 305(a) is inappropriate because the Debtors' and creditors' interests are better served in bankruptcy. Since February, the Debtor has lost between $1,000,000 and $2,700,000 a month. The Debtor has suffered severe employee attrition and had few patients.. The resulting financial distress indicates that seeking bankruptcy relief is clearly in the interest of not only the Debtors, but also their creditors. Furthermore, an independent chapter 7 trustee is in control and will exercise his fiduciary duty to creditors during the liquidation. Although the court may only consider the interests of the debtor and creditors, we note that patients' interests are further protected by the healthcare ombudsman. Neither abstention or dismissal are warranted under section 305(a).

### (3)  Section 707(a) Dismissal for Bad Faith is Not Warranted

The Village further argues that these cases should be dismissed because they were filed in bad faith. Although the Village did not cite section 707(a) in support of its motion, this section provides a nonexclusive list of what constitutes the grounds for dismissal of a case for cause. "The enumerated grounds for a 'for cause' dismissal are not exhaustive, but merely illustrative." *Novak v. Wagnitz*, No. 03C5106, 2004 WL 626821, at *3 (N.D. Ill. Mar.29, 2004); *see also In re Sekendur*, 334 B.R. 609, 618 (Bankr. N.D. Ill. 2005). The various circuit courts of appeal are not in agreement on the proper grounds for dismissal. The Third and Sixth Circuit Courts of Appeals have adopted a lack of good faith as a ground for dismissal "for cause." *See Tamecki v. Frank*, 229 F.3d 205, 207 (3rd Cir. 2000); *Indus. Ins. Servs, Inc. v. Zick*, 931 F.2d 1124, 1127 (6th Cir. 1991). The Eighth and Ninth Circuits have rejected this approach. *See Sherman v. Sec. and Exch. Comm'n*, 491 F.3d 948, 970 (9th Cir. 2007); *Huckfeldt v. Huckfeldt*, 39 F.3d 829, 832

(8th Cir. 1994). The Seventh Circuit has not addressed whether bad faith qualifies as cause under section 707(a), but the majority of district and bankruptcy courts in this Circuit have held that bad faith is a sufficient ground for a "for cause" dismissal. *See, e.g., Sec. America v. Tallman*, 417 B.R. 568, 575 (N.D. Ind. 2009); *Sekendur*, 334 B.R. at 619; *In re Am. Telecom Corp.*, 304 B.R. 867, 869 (Bankr. N.D. Ill. 2004); *In re Collins*, 250 B.R. 645, 653 (Bankr. N.D. Ill. 2000); *but see In re Adolph*, 441 B.R. 909, 911 (Bankr. N.D. Ill. 2011). This inquiry typically looks at the totality of the circumstances. *See Sekendur*, 334 B.R. at 618–19. Fraudulent or malicious intent when filing is not required for a finding of lack of good faith. *Am. Telecom Corp.*, 304 B.R. at 869. The determination of whether cause exists to dismiss a case under section 707(a) lies within the discretion of the bankruptcy court. *Smith v. Geltzer*, 507 F.3d 64, 73 (2d Cir. 2007).

Looking at the totality of the circumstances, there is no evidence that the Debtor's filing lacked good faith. The Debtor was rapidly losing money by operating the Hospital pursuant to the May 7 Order's injunction. The Debtor stayed open for three months following the May 7 Order and since February lost between $1,000,000 and $2,700,000 a month. This filing was made in the interest of the patients, creditors, and Debtors.[4]

Based on the information provided to this court, there is sufficient evidence that the Debtor's bankruptcy filing was made in good faith and dismissal under section 707 is not warranted.

The Motion to Dismiss is denied.

---

[4] The Village has alleged that Westlake and SRC made fraudulent statements to the Planning Board related to the purchase and planned operation of Westlake. These allegations are not before this court and are not relevant to the court's consideration as to whether the petitions were filed in good faith. In connection with that inquiry, the court looks only at the financial situation of the Debtor and its status as an eligible debtor under 11 U.S.C. section 109(a) and (b). As is discussed below, litigation as to the bad faith by SRC and the individuals who control it is pending before the state court.

### b. The Motion to Determine that the Automatic Stay is not applicable to the Village under 11 U.S.C. § 362(b)(4)

In its second motion, the Village asserts that this court should find that the automatic stay is not applicable to the state proceedings because of the police and regulatory power it has over the health and welfare of its constituents. It seeks to continue the contempt proceedings in state court for violating the May 7 Order by filing bankruptcy. Additionally, it seeks to have this court determine that the automatic stay does not prevent it from pursuing the Review Action against Westlake. To answer this question, the court will examine whether the automatic stay exception applies in light of the specific restrictions on the regulation of hospitals in the State of Illinois under the Review Act.

### (1) The Automatic Stay

The automatic stay precludes any entity from " the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). This prohibition includes the review of an administrative proceeding "against the debtor." *See Delpit v. C.I.R.*, 18 F. 3d 768 (9th Cir. 1994) (a review of a tax court judgment concerning debtors' alleged tax deficiency was a "continuation" of an administrative proceeding "against the debtors" subject to the automatic stay). This provision only stays actions that have been or could have been commenced against the debtor. "The stay envisioned is 'applicable to all entities,' § 362(a), but only in the sense that it stays all entities proceeding against the debtor. . . . The protections of § 362 neither apply to co-defendants nor preclude severance." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir. 1983).

The Debtor and its sole member, SRC, are both named defendants in the Review Action filed by the Village and joined by the Cook County State's Attorney. The Review Action is an

11

administrative review commenced against the Review Board, the Debtor and other non-debtor parties prior to the petition date. As such, continuation of the Review Action, as it relates to the Debtor, is prohibited by the automatic stay. While section 362(a)(1) prevents the continuation of the Review Action against Westlake, it does not prevent the Village from continuing its action against the Review Board and SRC, both non-debtor parties.

SRC argues that the Review Action cannot move forward without Westlake because it is an indispensable party. Whether or not that is true is a matter for the state court. In any event, the Review Action cannot move forward against Westlake unless the automatic stay is modified after notice and a hearing. No such motion has been filed.

The Village also seeks to pursue its state court contempt proceedings arising out of the bankruptcy filing against Westlake and SRC. The automatic stay prevents the Village from proceeding against Westlake. The automatic stay does not apply to SRC, but as discussed above, any contempt citation based on the filing would be barred under the Supremacy Clause and the federally enacted Bankruptcy Code.

### (2)   Exception to the Automatic Stay

The Village argues that the automatic stay does not apply to litigation filed against Westlake and SRC because the Village is exercising its police and regulatory powers, exempting it under section 362(b)(4). Section 362(b)(4) provides that "the commencement or continuation of an action or proceeding by a governmental unit . . . *to enforce such governmental unit's . . . police and regulatory power*" are not stayed. 11 U.S.C. § 362(b)(4) (emphasis added). The Village may only exert police and regulatory powers within its authority. *See In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 522 F.Supp.2d 569, 571 (Quincy, California lacked the police or regulatory power to enforce environmental regulations passed by

the California legislature and although it was governmental unit did not possess the required regulatory power for the exception). Similarly, the Village, while holding certain police and regulatory powers, does not hold regulatory power over hospitals in Illinois. That power is only held by the Review Board. 20 ILCS 3960/17. (See note 1 above.)

The Planning Act explicitly precludes any home rule unit from exercising any powers or functions exercised and performed by the State of Illinois under the Act. *Id.* ("the powers and functions exercised and performed by the State pursuant to this Act are exclusive to the State of Illinois"). The Planning Act further states "that these powers and functions shall not be exercised, either independently or concurrently, by any home rule unit." *Id.* The Review Board, on behalf of the state, has the exclusive power to approve or deny discontinuation applications for a healthcare facility, issue injunctions and impose fines. 20 ILCS 3960/6(a)

While the Village has standing to have the Review Board's decision judicially reviewed, it is not granted the regulatory power to enforce the Planning Act and therefore section 362(b)(4) does not shelter the Village from the automatic stay. The Motion for the entry of an order that the automatic stay is not applicable pursuant to 11 U.S.C. § 362(b)(4) is denied.

### 3.    Conclusion

The motions of the Village of Melrose Park to dismiss this case and for the entry of an order that the automatic stay does not apply to it under 11 U.S.C. section 362(b)(4) are denied. Separate orders will be entered consistent with this opinion.

Dated: September 24, 2019

                                          Deborah L. Thorne
                                          United States Bankruptcy Judge