# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| WESTLAKE PROPERTY HOLDINGS, LLC | ) | Case No. 19-22878 (DLT) |
| | ) | |
| Debtor. | ) | Hon. Deborah L. Thorne |
| | ) | |
| In re: | ) | Chapter 7 |
| | ) | |
| PIPELINE – WESTLAKE HOSPITAL LLC d/b/a WESTLAKE HOSPITAL | ) ) | Case No. 19–22881 (DLT) |
| | ) | Hon. Deborah L. Thorne |
| Debtor. | ) ) | |

## GLOBAL NOTES, STATEMENT OF LIMITATIONS, METHODOLOGY AND DISCLAIMERS AND SPECIFIC DISCLOSURES REGARDING DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

### Introduction

Westlake Property Holdings, LLC ("Propco") and Pipeline – Westlake Hospital LLC d/b/a Westlake Hospital ("Opco," and together with Propco, the "Debtors") submit their *Schedules of Assets and Liabilities* (the "Schedules") and *Statement of Financial Affairs* (the "Statements" and, together with the Schedules, the "Schedules and Statements") pursuant to section 521 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure.

These Global Notes and Statement of Limitations, Methodology and Disclaimers Regarding Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Global Notes") pertain to, are incorporated by reference in, and constitute an integral part of, each of the Debtors' Schedules and Statements. Any party reviewing the Schedules and Statements should refer to, consider and consult the Global Notes in connection with such review.

These Global Notes consist of: (I) general comments regarding the Schedules and Statements; (II) specific disclosures applicable to the Debtors' Schedules; and (III) specific disclosures applicable to the Debtors' Statements.

On August 6, 2019 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"). On August 13, 2019, the Delaware Bankruptcy Court transferred the Debtors' bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois (the "Illinois Bankruptcy Court").

On the Petition Date, the Delaware Bankruptcy Court entered an order in Opco's bankruptcy case authorizing Opco to file certain portions of its creditor matrix, schedules and statements, and related documents containing employee (collectively, the "Employees") information under seal [Docket No. 10]. Further, on August 13, 2019, the Delaware Bankruptcy Court directed the

appointment of a patient care ombudsman [Docket No. 21]. The United States Trustee subsequently selected Suzanne Koenig as the patient care ombudsman (the "PCO").

On the Petition Date, Opco operated Westlake Hospital (the "Hospital"), and was therefore a health care business, as that term is defined in Section 101(27A) of the Bankruptcy Code and a Health Care Provider as defined by 42 U.S.C. § 1320(d)(3), and is subject to the Health Insurance Portability and Accountability Act of 1996, as amended (HIPAA). Therefore, Opco cannot, as a matter of law, publish the names of its former patients (collectively, the "Patients"). Taken together, the Schedules and Statements will not include any reference to the names or addresses of any former Employees or Patients. Information with respect to the names of the Employees and Patients will be provided to Ira Bodenstein, the Chapter 7 trustee (the "Trustee"), the office of the United States Trustee, and solely with respect to the names and addresses of the Patients, to the PCO.

The Schedules and Statements were prepared by employees of SRC Hospital Investments II, LLC ("SRC") and the Debtors' counsel, and they are unaudited. The members of SRC's management who are responsible for the preparation of the Schedules and Statements have made a reasonable effort based upon information known to them at the time to ensure that the Schedules and Statements are accurate and complete after reasonable inquiry. The Debtors reserve their right to amend and/or supplement their Schedules and Statements from time to time as may be necessary or appropriate and they will do so as information becomes available.

**General Comments Regarding the Schedules and Statements**

1. **Global Notes Control.** In the event that the Schedules and Statements differ from the Global Notes, the Global Notes shall control.

2. **Reservation of Rights.** The Debtors, through the employees of SRC, and their advisors have made reasonable efforts to prepare and file complete and accurate Schedules and Statements; however, inadvertent errors or omissions in the Schedules and Statements may exist. The Debtors reserve all rights to amend, supplement or otherwise modify the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, without limitation, the right to amend the Schedules and Statements with respect to the description or designation of any claim against any Debtor (including, without limitation, reserving the right to: (a) alter the description or designation of any claim; (b) dispute or otherwise assert a right of setoff or other defenses to any claim, including, without limitation, any defenses relating to amount, liability, priority, status or classification; (c) subsequently designate any claim as "disputed," "contingent," or "unliquidated"; and/or (d) object to the extent, validity, enforceability, priority or avoidability of any claim). The absence of a "disputed," "contingent," or "unliquidated" designation with respect to any claim or amount in the Schedules and Statements does not constitute an admission by the Debtors that such claim or amount is not "disputed," "contingent," or "unliquidated."

3. **Basis of Presentation.** Except as otherwise noted herein or in the Schedules and Statements, the Schedules and Statements are intended to reflect the separate assets and liabilities for each of the Debtors.

4. **Timing of Formation of Debtors.** Opco was first organized as a limited liability company on August 16, 2018, and Propco was first organized as a limited liability company on August 22, 2018. The Debtors had no operations until after January 28, 2019, when the Debtors purchased substantially all of assets of the Hospital, including its accounts receivable, from VHS Westlake Hospital, Inc. (the "Sale Transaction"). Prior to the Sale Transaction, the Debtors had virtually no operations or assets, other than organization of the Debtors' entities. Because neither Opco nor Propco existed for more than a year, the Debtors cannot provide any information beyond that period. Relatedly, much of the information contained with respect to equipment is premised

upon information received as part of the Sales Transaction.

5. **Division of Assets and Liabilities.** Following the Sale Transaction, Propco owned all of the real estate, including furniture and fixtures, and equipment located at the Hospital. The only assets of Opco are the accounts receivable and its bank accounts.

6. **Valuation of Assets.** Many of these assets of the Debtors' as set forth in the Schedules and Statements are premised upon valuations that were provided to the Debtors in anticipation of the Sale Transaction. Except as otherwise noted, the Debtors have not formally evaluated the valuation of the assets or updated the assets contained therein or updated such valuation as of the Petition Date, and are presented as they appear on the Debtors' ledgers.

7. **Postpetition Transactions not reflected in Schedules.** Prior to the Petition Date, as a matter of ordinary course of business of the three hospitals, Opco was responsible for payment of the certain costs and obligations, including obligations to Opco's employees (the "Employees"). Many of the Debtors' Employees worked for Opco and either Louis A. Weiss Memorial Hospital ("Weiss") and/or West Suburban Medical Center ("West Suburban"), and the three hospitals would maintain records of obligations among themselves. Prior to the Petition Date, West Suburban was obligated to Opco in the amount of approximately $850,000 for obligations incurred in the ordinary course of the parties, including among other things, shared personnel. Meanwhile, Opco was obligated to Weiss in the amount of approximately $6.1 million, which amounts were used to fund Opco's operations. As of the Petition Date, the Debtors were obligated to remit payment on August 10, 2019 on account of nine (9) days of prepetition wages and related expenses, including payroll taxes, and withholding contributions (the "Prepetition Employee Obligations") totaling approximately $731,250.

On the Petition Date, the Delaware Bankruptcy Court entered an Order (the "Operations Order") authorizing Alfred T. Giuliano, the prior Chapter 7 trustee (the "Prior Trustee"), to among other things, accept and receive, on an interim basis, $1,325,000 from West Suburban, subject to adjustment per an agreement of the Chapter 7 Trustee and West Suburban Hospital. Such amount reduced the amount owed by West Suburban to the Debtors, without prejudice to Chapter 7 Trustee on the one hand or West Suburban, Weiss, or SRC on the other hand, to assert further prepetition or postpetition claims against each other. Further, by the Operations Order West Suburban was entitled to an administrative expense claim for such amounts paid beyond the prepetition claim of the Debtors against West Suburban, with all rights reserved. Such administrative expense claim was subordinate only to the fees of the Chapter 7 Trustee, pursuant 11 U.S.C. § 326, and the fees and expenses of his professionals pursuant to 11 U.S.C. §§ 328 and 330.

The Operations Order also authorized the Prior Trustee to make transfers for the payment of employees on account of their prepetition claims for employee wages, deductions, and payroll taxes to the extent such payments do not violate the priority cap in section 507(a)(4) of the Bankruptcy Code pursuant to Sections 105(a) and 507(a)(4) of the Bankruptcy Code, without prejudice to the Prior Trustee's right to seek further relief to seek payment of such other benefits, including health insurance and paid leave, as otherwise provided to the Employees in the Debtors' ordinary course of business. The Debtors understand that the Prior Trustee remitted payments satisfying the Debtors' payments to the Employees in accordance with the Operations Order.

Notwithstanding the foregoing, the Schedules and Statements do not reflect any transfers made after the Petition Date, including but not limited to the transfers made by from West Suburban to the Trustee, the setoff as against the obligations owed by the West Suburban to Opco, or the satisfaction of the Employees' claims.

Relatedly, the Hospital continued limited operations after the Petition Date. Such operations were

undertaken under the supervision and control of the Prior Trustee and the Chapter 7 Trustee. Accordingly, the Debtors are unaware as to how much the Hospital received or were entitled to receive for services after the Petition Date.

8. **De Minimis assets.** The Debtors did not undertake an inventory of their de minimis assets prior to the Petition Date. As noted above, the Hospital was operating on the Petition Date, and conducted limited operations after the Petition Date under the supervision and control of the Prior Trustee and the Chapter 7 Trustee. As such, it owned a significant number of de minimis assets used in the ordinary course of business, such as latex gloves, tongue depressors, and medication. The Debtors understand that the Chapter 7 Trustee has visited and toured the Hospital, and collected all medication once the operations at the Hospital ceased. Once the Debtors' right to possess or control the facility ceased on the Petition Date, they no longer had access to the Hospital to undertake an inventory and (a) certain assets may be primarily used by a Debtor other than the entity which holds title to such assets according to the Debtors' books and records; (b) the Debtor entity that owns or holds title to certain assets may not be ascertainable given the consolidated manner in which the Debtors have operated their businesses; (c) certain liabilities may have been nominally incurred by one Debtor, yet such liabilities may have actually been incurred by, or the invoices related to such liabilities may have been issued to or in the name of, the other Debtor.

9. **Statute of Limitations for Personal Injury Claims.** The Debtors have made their best efforts to set forth known causes of action by third parties. The Debtors are unaware of any actions against them for personal injury claims, including any claims for medical malpractice, however the statute of limitations under applicable non-bankruptcy (i.e., Illinois) law has not yet passed.

10. **Totals.** All totals that are included in the Schedules and Statements represent totals of all known amounts. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total. In addition, even where not marked as contingent, unliquidated or disputed, totals may represent the sum of all unpaid invoices issued by any creditor, as reflected in the applicable Debtors' books and records, without reference to any credits, allowances, defenses or counterclaims that may exist with respect to such invoices. The Debtors reserve all of their rights with respect to any such defenses or counterclaims, including, without limitation, the right to amend the Schedules and Statements as necessary or appropriate.

11. **Overpayments.** In the ordinary course of business, Opco provides medical services to certain patients based upon their income level. Some former patients may have claims for overpayments that were made to the Debtors. To the extent known by the Debtors after reasonable inquiry and due diligence, such payments have been disclosed.

12. **Accounts Receivable.** Opco was owed certain money from insurers, including Medicare and Medicaid. The Debtors understand that the underlying obligations may, in whole or in part, be obligations of individual patients of the Hospital. The Debtors are unable to determine whether the insurer or patient is ultimately responsible for the obligation to the Hospital.

**Specific Disclosures Regarding the Debtors' Schedules**

*Schedule A/B – Real and Personal Property*

Attached as Exhibit A is a list of all of Propco's assets (other than inventory and de minimis assets), including real estate, equipment, fixtures and furniture, which was taken from the list of assets received in connection with the purchase of the Hospital. Exhibit A includes the Debtors' estimated value for each of the listed assets, after depreciation. Importantly, this list of assets originated in connection with the purchase of the Hospital in January 29, 2019, and the Debtors' may have purchased additional assets that have not been listed on Exhibit A, or disposed of other assets since the purchase of the Hospital. Further, the assets listed on Exhibit A have not been the subject of independent valuation.

**Question: 1** - Attached as Exhibit 1 to Opco Schedule A is a list of all of the money in the Debtors' bank accounts on the Petition Date. Such amounts reflect actual amounts in the respective accounts as of the Petition Date, as applicable. Note that only the last four digits of each account are listed on Exhibit 1. A copy of the most recent bank statements has been provided to the Chapter 7 Trustee.

**Questions 2-5** – The Debtors are unaware of whether there was any petty cash at the Hospital on the Petition Date. The Debtors are continuing to investigate whether there are any other cash of cash equivalents.

**Questions 6-9** – Attached as Exhibit 6 to Opco Schedule A is a list of deposits and prepayments made by the Debtors. The Debtors are continuing to investigate whether there are any other deposits or prepayments which may constitute assets of the estate. Note: this list also includes a payment of a retainer of $300,000 provided by the Debtors to its counsel, Morris James LLP (which is also included in Schedule Exhibit 11 (for which $221,422.01 of unused cash was returned to the Trustee via wire transfers after the Petition Date).

**Questions 10-12** – Attached as Exhibit 10 to Opco Schedule A is a list of accounts receivable owed to Opco. Each of the account debtors are insurers or Medicare or Medicaid, however the Debtors understand that he underlying obligations may, in whole, or in part be debts of individual patients of the Hospital.

**Questions 18-26** – Attached as Exhibit 18 to Propco Schedule A is information related to the Debtors' inventory and supplies, all of which is owned by Propco. This list was obtained by the Debtors in connection with the purchase of the Hospital on January 29, 2019. The Hospital was operating as of the Petition Date, and the Debtor did not maintain an updated inventory of supplies. Accordingly, the Debtors cannot affirmatively state the value of the inventory and supplies at the Hospital on the Petition Date.

**Questions 47-53** – Propco owns two vehicles, a 2005 Ford Ranger (used as a maintenance truck) and a 2011 Ford Escape. The Debtors have not received any appraisal value for those vehicles. The Debtors understand that the vehicle is not drivable due to an airbag recall, and the airbag cannot be replaced due to serious front end damage that would be cost- prohibitive. Without any formal valuation, the Debtors have given this vehicle an estimated value of $100.00, which they believe represents salvage value, after the cost of disposal. The Debtors are unaware of the condition of the Ford Escape or its mileage. Rather than provide any estimate which is unsupported, the Debtors have estimated the value of the vehicle at $500.00.

Attached as Exhibit A to Propco's Schedule A is a list of substantially all of Propco's assets (other than inventory and de minimis assets), including real estate, equipment, fixtures and furniture, and the Debtors' estimated value for each, after depreciation. Importantly, this list of assets originated in connection with the purchase of the Hospital in January 29, 2019, and the Debtors' may have purchased additional assets that have not been listed on Exhibit A, or disposed of other assets since

the purchase of the Hospital. Further, the assets listed on Exhibit A have not been the subject of independent valuation.

**Questions 58** - Attached as Exhibit 58 to Propco Schedule A is a copy of the quitclaim deed for property owned by Propco, which details the legal description of all of the Debtor's real property. As set forth on Exhibit A the Debtors estimate that the land, site improvements and building of the Hospital is valued, after depreciation at $14,200,836, the ARO Building is valued, after depreciation, at $364,887.74, and the Professional Office Building is valued, after depreciation, at $2,480,066.19, and the Medical Arts Building is valued, after depreciation, at $382,064.52. Those values are based upon the Debtors' depreciation, premised upon information when they purchased the real property. The Debtors have not had a formal valuation of the real property.

**Questions 59-69** – The Debtors do not own any intellectual property, other than the domain name and website for the Hospital, and the goodwill for the Hospital, which closed after a significant and public controversy in Illinois state court. This intellectual property has not been appraised however Debtors attribute no value to either asset.

**Questions 70- 79** – The Debtors do not believe that they have any other assets that have not been otherwise disclosed as set forth herein. The Debtors investigation continues, and the Debtors will supplement this response

*Schedule D – Creditors Holding Secured Claims*

The descriptions provided in Schedule D are intended to be only a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent and priority of any liens. Nothing in these Global Notes or the Schedules and Statements shall be deemed to be a modification or interpretation of the terms of such agreements. Further, the Debtors have identified the secured claims of which they are aware, however there may be other claimants, including taxing entities, utility companies or other service providers who may assert a claim for which they may be entitled a security interest, as a matter of law.

**Schedule E/F – Creditors Holding Priority Unsecured Claims**

The claims identified in Schedule E/F Part 2 arose or were incurred on various dates. In certain instances, the date on which a claim arose is an open issue of fact. Although reasonable efforts have been made to identify the date each claim was incurred or arose, determining each such date would be unduly burdensome and cost prohibitive. In addition, claims identified in Schedule E/F Part 2 have been aggregated by the creditor and may include several dates of incurrence for the aggregate balance listed. As such, Schedule E/F Part 2 does not include the date of incurrence for every claim identified thereon.

Schedule E/F may also reflect the prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts may be paid in connection with the assumption, or assumption and assignment, of an executory contract or unexpired lease. Additionally, Schedule E/F Part 2 does not attempt to anticipate any potential rejection damage claims of the counterparties to executory contracts and unexpired leases that may be rejected.

**Question 3:**

Schedule E for each of the Debtors contains a list of the tax claims known by the Debtors on the Petition Date. Additionally, the Debtors believe that, on the Petition Date, Opco may have additionally owed some obligations to taxing and other governmental entities in connection their status as an employer, including but not limited to social security, Medicare, federal

unemployment tax, and state, county, and local taxes, all of which were incurred in the ordinary course of business, and which were not yet due to be paid because the Debtors filed for bankruptcy relief in the middle of a pay period. The Debtors understand that the amounts due on account of taxes incurred in connection with the Prepetition Employee Claims were all paid by the Prior Trustee. If the Debtors learn of any additional claims of taxing entities who are entitled to assert priority claims, the Debtors will amend their schedules.

Further, as set forth hereinabove, pursuant to the Operations Order, the Debtors understand that the Prior Trustee remitted payments on account of all Prepetition Employee Obligations aggregating $731,250. The Chapter 7 Trustee should have a copy of all payments remitted to the Employees. Further, out of concern for the privacy of the Employees, and consistent with the order of the bankruptcy Delaware Bankruptcy Court, the names and addresses of the Employees is not being disclosed publicly but will be made available to the Chapter 7 Trustee.

### *Schedule E/F Part 2 - Creditors Holding Nonpriority Unsecured Claims*

Attached as Exhibit E-4 to to Opco Schedule E is a list of all claimants known to the Debtors after conducting a reasonable investigation of their books and records. There may be additional claimants who the Debtors have no basis for knowing, including general unsecured claims based upon medical services received at the Hospital for which the statute of limitations has not yet passed. Also included in Exhibit E-4 is a list of checks which remained outstanding as of the Petition Date. Out of an abundance of caution, because some of the payees may be individuals who were patients who remitted overpayments or employees, the Debtors have listed certain payees as "individual _" and provided a separate key of those individuals to the Chapter 7 Trustee.

### *Schedule G – Executory Contracts and Unexpired Leases*

The businesses of the Debtors are complex and, SRC is endeavoring to determine the contracts to which the Debtors are parties to equipment leases, supply agreements and other contacts. Additionally, the Propco is party to certain leases where it is a landlord. Those leases are identified in Exhibit 1 to the Propco Statements. The Debtors will supplement Schedule G in the event that they are able to determine the names and other information regarding executory contracts and unexpired leases to which either of the Debtors were a party on the Petition Date.

### *Schedule H - Co-Debtors.*

The Debtors that are either principal obligors or guarantors with respect to the Debtors' secured claims. The Debtors are unaware of any other obligations for which third parties may be liable, although there may be other claims, such as malpractice claims in which individuals or insurers may be jointly or severally liable. Further, there could be other claims against one or more of the Debtors, for example, a personal injury claim arising on real property owned by Propco that is rented to a third party.

### **Specific Disclosures Regarding the Debtors' Statements**

**Question 1: Gross Revenues from Business** - Attached hereto as Statement Exhibit 1 to each of Opco's and Propco's Statements is a statement of income for the Debtors. Note that the revenue to Propco for rental to third parties is through only June 12, 2019. The Debtors will supplement their response to this question, once it determines rental income received by the Debtors between June 13, 2019 through the Petition Date.

**Question 2 – Non-business Revenue** – The Debtors are not aware of any revenue not listed on Statements Exhibit 1, although there may be incidental income received by the Debtors such as interest received on account of money held in the one or more of the bank accounts, or money

received on account of vending machines located at the Hospital.

**Question 3 – Certain Payments or Transfers to Creditors Within 90 days Before Filing this Case.** Attached as Statement Exhibit 3 to Opco's Statements are payments made to creditors during the preference period. The Debtors' responses to Question 3 include any disbursement or other transfer made by the Debtors except for those made to potential insiders or other Debtors (which payments appear in response to Question 4. Further Statement Exhibit 3 does not include income or benefits paid for the benefit of specific Opco's Employees, but to Aegon and ADP on account of the Employees' 401k plan, and to ADP on account of payroll, fees, garnishments, and other compensation-related items. This also does not include payments to bankruptcy professionals (which payments appear in response to Question 11). Exhibit 3 does not include any transfer of rents received by Propco from third parties; such rents were deposited directly into the lock box of VHS of Illinois, Inc., the secured creditor as required pursuant to the Senior Secured Promissory Note and the Mortgage Assignment of Rents Security Agreement and Fixture Filing, both dated January 28, 2019. Finally, out of an abundance of caution, because some of the payees may be individuals who were patients who remitted overpayments or employees, the Debtors have listed certain payees as "individual _" and provided a separate key of those individuals to the Chapter 7 Trustee.

**Question 4 – Payments or Other Transfers of Property Made Within 1 Year Before Filing this Case That Benefited Any Insider.** Statements Exhibit 4 to Opco Statements lists all known transfers of property that benefited an insider.

**Question 6 – Set-offs.** The Debtors are unaware of any setoffs made during the ninety (90) days immediately prior to the Petition Date.

**Question 7 – Legal Actions, Administrative Proceedings, Court Actions, Executions, Attachments, or Governmental Audits.** Other than the pending – but stayed – actions by the Village of Westlake in the Cook County Court of Chancery, the Debtors are unaware of any legal actions or administrative proceedings against either of the Debtors. The Debtors are currently unaware of any actions related to the practice of medicine at the hospital or any claims (such as slip-and-fall claims), but the statute of limitations for such actions had not passed prior to the Petition Date.

**Question 8 – Assignments and receivership.** Opco was not the subject of an assignment or receivership prior to the Petition Date, however, it was the subject of two actions by the Village of Westlake, that effectively precluded Opco from taking necessary actions which would have minimized the Hospital's costs. Specifically, on April 9, 2019, the Cook County Circuit Court (in Case No. 19-CH 03041) entered an Order temporarily enjoining the Hospital from discontinuing any medical service offered by Hospital on April 9, 2019, or modifying the scope of medical service that were offered by Westlake Hospital on April 9, 2019, until such time as Defendants receive approval to do so from the Illinois Board. On April 18, 2019, the Appellate Court of Illinois, First District, concluded that the circuit court erred by entering a temporary restraining order where the plaintiff, the Village, lacked standing and promptly reversed that order and remanded to the Circuit Court for further proceedings. The Village's petition for leave to appeal the Illinois Appellate Court's decision was currently pending before the Illinois Supreme Court.

**Question 9 – Gifts and Charitable Contributions.** Westlake Hospital was considered a "safety net" hospital which provided 'charity care' to the community. As part of that charity care, in the ordinary course of its business, Opco regularly provided free or discounted services to patients who could not afford to pay. Specifically, Opco and provided medical services (and related goods such as medicine) completely free of charge to individuals in households with incomes less than 200% of the federal poverty level and steeply discounted services to individuals in households

with incomes under 500% of the federal poverty level or who were burdened by medical debt. In Exhibit 10 to the Statements, the Debtors, identify $37,581 of accounts receivable credited toward charity care, of which $35,895 is for services within the 30 days immediately prior to the Petition Date. The Debtors cannot disclose such records publicly as it would violate HIPAA and the Delaware Bankruptcy Court's order to seal. If available, the Debtors will provide the names of those patients who were recipients of the charity care to the United States Trustee, the Chapter 7 Trustee, and the PCO.

**Question 10 – Casualty Losses.** The Debtors are not aware of any casualty losses.

**Question 11 – Payments or Transfers Related to Bankruptcy.** Prior to the Petition Date, Opco remitted payment of $300,000 to Morris James LLP. Since the Petition Date, Morris James has turned over $221,422.01 to the Chapter 7 Trustee, which is the balance for unused prepetition legal fees and expenses.

**Questions 15 -17 – Health Care Bankruptcy.** Opco is a hospital providing health services, and is therefore in possession of personally identifiable information and healthcare records. Attached as Exhibit 15 to the Opco Statements is a list of locations where patient records are stored.

**Question 20 – Off-Premises Storage.** As a hospital providing health services, Opco maintained certain of their records on the premises and stored other patients' records off-site at Iron Mountain facility. Additionally, pursuant to a transition services agreement, Tenet Healthcare stored certain of the Hospital's medical records electronically. Attached as Exhibit 20 to the Opco Statements is a list of locations where patient records are stored.

**Question 21 – Property Held for Others.** As a hospital providing health services, the Debtors were in possession of their patients' medical records. Additionally, and as set forth in the rent roll attached as Exhibit 1, the Debtors received certain security deposits under the Leases. The Debtors have made reasonable efforts to identify and disclose property held for others in response to Question 21.

**Questions 22-24 – Details About Environmental Information.** The Debtors have made reasonable efforts to identify all applicable environmental information requested by Questions 22 through 24. In the ordinary course of its operations, Opco regularly handled and disposed of biohazardous materials containing bodily fluids, which may technically be "hazardous materials." For purposes of waste disposal, including biohazardous materials, Westlake used Stericycle and is party to a contract with IWSS Integrated Waste Steam System to cover the Hospital's different types of waste. The Debtors are not part to any juridical or administrative proceeding in connection with such materials, and do not believe that they have any liability on account of such materials.

**Question 26d – Parties to Whom Financial Statements Have Been Issued.** The Debtors have not made issued financial statements to any third parties, however the Debtors' financials have been maintained in the ordinary course by SRC's accounting department for the Chicago market.

**Questions 28-30 – Questions Relating to the Debtors' Officers, Directors, Managing Members, General Partners, Members in Control, Controlling Shareholders, or Other People in Control.** Attached as Statement Exhibit 28 to each of Propco's and Opco's Statements is a list of all of the Debtors' Officers, Directors, Members, Shareholders, or Other People in Control. In addition to the members and managers of the two Debtors, the Hospital also had a governing board which included six (6) individuals. The board membership was an unpaid position.

**Fill in this information to identify the case:**

Debtor Name: Pipeline – Westlake Hospital, LLC

United States Bankruptcy Court for the: District of Delaware

Case number (if known) 19-11757

☐ Check if this is an amended filing

Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

## Part 1: Cash and cash equivalents

1. Does the debtor have any cash or cash equivalents?

    ☐ No. Go to Part 2.
    ☑ Yes. Fill in the information below. **See Exhibit 1.**

    All cash or cash equivalents owned or controlled by the debtor    Current value of debtor's interest

2. Cash on hand -- No

3. Checking, savings, money market, or financial brokerage accounts *(Identify all)*

    | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
    |---|---|---|---|
    | 3.1. _____ | _____ | ____ ____ ____ ____ | $374,000.21 |

4. Other cash equivalents *(Identify all)*

    4.1. None

5. Total of Part 1    $ 374,000.21

    Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

## Part 2: Deposits and prepayments

6. Does the debtor have any deposits or prepayments?

    ☑ No. Go to Part 3.
    ☐ Yes. Fill in the information below.

    Current value of debtor's interest

7. Deposits, including security deposits and utility deposits

    Description, including name of holder of deposit
    7.1. _____    $_____

Debtor   Pipeline – Westlake Hospital, LLC          Case number (*if known*) 19-11757
         Name

**8. Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

8.1. _____   $_____

**9. Total of Part 2.**
Add lines 7 through 8. Copy the total to line 81.                                         $_____

## Part 3: Accounts receivable

**10. Does the debtor have any accounts receivable?**
☐ No. Go to Part 4.
☑ Yes. Fill in the information below.

                                                                                          Current value of debtor's
                                                                                          interest

**11. Accounts receivable**

11a. 90 days old or less:   **See attached Exhibit 10**  – ___ = ....... → face amount    $_____
                                                          doubtful or uncollectible accounts

11b. Over 90 days old:      _____  – ___ = ....... → face amount          _____
                                                          doubtful or uncollectible accounts

**12. Total of Part 3**
Current value on lines 11a + 11b = line 12. Copy the total to line 82.                    $ 8,580,559.00

## Part 4: Investments

**13. Does the debtor own any investments?**
☑ No. Go to Part 5.
☐ Yes. Fill in the information below.

                                                           Valuation method        Current value of debtor's
                                                           used for current value  interest

**14. Mutual funds or publicly traded stocks not included in Part 1**
Name of fund or stock:
14.1. _____    _____        $_____
14.2. _____    _____        $_____

**15. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:                                    % of ownership:
15.1. _____      _____ %           _____   $_____
15.2. _____      _____ %           _____   $_____

**16. Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:
16.1. _____    _____        $_____
16.2. _____    _____        $_____

**17. Total of Part 4**
Add lines 14 through 16. Copy the total to line 83.                                       $_____

Official Form 206A/B          Schedule A/B: Assets — Real and Personal Property          page 2

## Part 5: Inventory, excluding agriculture assets

18. Does the debtor own any inventory (excluding agriculture assets)?
    - ✓ No. Go to Part 6.
    - ☐ Yes. Fill in the information below.

    | General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
    |---|---|---|---|---|
    | 19. Raw materials | MM / DD / YYYY | $ | | $ |
    | 20. Work in progress | MM / DD / YYYY | $ | | $ |
    | 21. Finished goods, including goods held for resale | MM / DD / YYYY | $ | | $ |
    | 22. Other inventory or supplies | MM / DD / YYYY | $ | | $ |

23. Total of Part 5                                                                                    $ _____
    Add lines 19 through 22. Copy the total to line 84.

24. Is any of the property listed in Part 5 perishable?
    - ☐ No
    - ✓ Yes

25. Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?
    - ✓ No - Unknown
    - ☐ Yes. Book value _____ Valuation method _____ Current value _____

26. Has any of the property listed in Part 5 been appraised by a professional within the last year?
    - ✓ No
    - ☐ Yes

## Part 6: Farming and fishing-related assets (other than titled motor vehicles and land)

27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?
    - ✓ No. Go to Part 7.
    - ☐ Yes. Fill in the information below.

    | General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
    |---|---|---|---|
    | 28. Crops—either planted or harvested | $ | | $ |
    | 29. Farm animals  Examples: Livestock, poultry, farm-raised fish | $ | | $ |
    | 30. Farm machinery and equipment (Other than titled motor vehicles) | $ | | $ |
    | 31. Farm and fishing supplies, chemicals, and feed | $ | | $ |
    | 32. Other farming and fishing-related property not already listed in Part 6 | $ | | $ |

Debtor Pipeline – Westlake Hospital, LLC Case number (*if known*) 19-11757
    Name

33. **Total of Part 6.**
    Add lines 28 through 32. Copy the total to line 85.                                       $_____

34. Is the debtor a member of an agricultural cooperative?
    ☐ No
    ☐ Yes. Is any of the debtor's property stored at the cooperative?
        ☐ No
        ☐ Yes

35. Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?
    ☐ No
    ☐ Yes. Book value $_____ Valuation method _____ Current value $_____

36. Is a depreciation schedule available for any of the property listed in Part 6?
    ☐ No
    ☐ Yes

37. Has any of the property listed in Part 6 been appraised by a professional within the last year?
    ☐ No
    ☐ Yes

## Part 7: Office furniture, fixtures, and equipment; and collectibles

38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?

    ✓  No. Go to Part 8.
    ☐  Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. Office furniture | $_____ | _____ | $_____ |
| 40. Office fixtures | $_____ | _____ | $_____ |
| 41. Office equipment, including all computer equipment and communication systems equipment and software | $_____ | _____ | $_____ |
| 42. Collectibles *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1 _____ | $_____ | _____ | $_____ |
| 42.2 _____ | $_____ | _____ | $_____ |
| 42.3 _____ | $_____ | _____ | $_____ |

43. **Total of Part 7.**
    Add lines 39 through 42. Copy the total to line 86.                                       $_____

44. Is a depreciation schedule available for any of the property listed in Part 7?
    ☐ No
    ☐ Yes

45. Has any of the property listed in Part 7 been appraised by a professional within the last year?
    ☐ No
    ☐ Yes

Debtor     Pipeline – Westlake Hospital, LLC                                     Case number (if known) 19-11757
           Name

## Part 8: Machinery, equipment, and vehicles

46. Does the debtor own or lease any machinery, equipment, or vehicles?
    - ✓ No. Go to Part 9.
    - ☐ Yes. Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles

    47.1 _____   $_____   _____   $_____
    47.2 _____   $_____   _____   $_____
    47.3 _____   $_____   _____   $_____
    47.4 _____   $_____   _____   $_____

48. Watercraft, trailers, motors, and related accessories Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

    48.1 _____   $_____   _____   $_____
    48.2 _____   $_____   _____   $_____

49. Aircraft and accessories

    49.1 _____   $_____   _____   $_____
    49.2 _____   $_____   _____   $_____

50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment)

    _____   $_____   _____   $_____

51. **Total of Part 8.**
    Add lines 47 through 50. Copy the total to line 87.                    $_____

52. Is a depreciation schedule available for any of the property listed in Part 8?
    - ☐ No
    - ☐ Yes

53. Has any of the property listed in Part 8 been appraised by a professional within the last year?
    - ☐ No
    - ☐ Yes

### Part 9: Real property

54. Does the debtor own or lease any real property?
    - ✓ No. Go to Part 10.
    - ☐ Yes. Fill in the information below.

55. Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 | | $ | | $ |
| 55.2 | | $ | | $ |
| 55.3 | | $ | | $ |
| 55.4 | | $ | | $ |
| 55.5 | | $ | | $ |
| 55.6 | | $ | | $ |

56. Total of Part 9.                                                                                     $
    Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

57. Is a depreciation schedule available for any of the property listed in Part 9?
    - ✓ No
    - ☐ Yes

58. Has any of the property listed in Part 9 been appraised by a professional within the last year?
    - ☐ No
    - ✓ Yes

### Part 10: Intangibles and intellectual property

59. Does the debtor have any interests in intangibles or intellectual property?
    - ✓ No. Go to Part 11.
    - ☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60. Patents, copyrights, trademarks, and trade secrets | $ | | $ |
| 61. Internet domain names and websites | $ | | $ |
| 62. Licenses, franchises, and royalties | $ | | $ |
| 63. Customer lists, mailing lists, or other compilations | $ | | $ |
| 64. Other intangibles, or intellectual property | $ | | $ |
| 65. Goodwill | $ | | $ |

66. Total of Part 10.                                                                                    $
    Add lines 60 through 65. Copy the total to line 89.

Debtor  Pipeline – Westlake Hospital, LLC  Case number (if known) 19-11757
        Name

67. Do your lists or records include personally identifiable information of customers (as defined in 11 U.S.C. §§ 101(41A) and 107)?
    ✓ No
    ☐ Yes

68. Is there an amortization or other similar schedule available for any of the property listed in Part 10?
    ☐ No
    ✓ Yes

69. Has any of the property listed in Part 10 been appraised by a professional within the last year?
    ✓ No
    ☐ Yes

### Part 11: All other assets

70. Does the debtor own any other assets that have not yet been reported on this form?
    Include all interests in executory contracts and unexpired leases not previously reported on this form.
    ✓ No. Go to Part 12.
    ☐ Yes. Fill in the information below.

    Current value of debtor's interest

71. **Notes receivable**
    Description (include name of obligor)
    _____ — _____ = →
    Total face amount   doubtful or uncollectible amount

72. **Tax refunds and unused net operating losses (NOLs)**
    Description (for example, federal, state, local)

    Tax year _____ $_____
    Tax year _____ $_____
    Tax year _____ $_____

73. **Interests in insurance policies or annuities**
    $_____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**
    $_____
    Nature of claim
    Amount requested  $_____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**
    $_____
    Nature of claim
    Amount requested  $_____

76. **Trusts, equitable or future interests in property**
    $_____

77. **Other property of any kind not already listed** Examples: Season tickets, country club membership
    $_____
    $_____

78. **Total of Part 11.**
    Add lines 71 through 77. Copy the total to line 90.
    $_____

79. Has any of the property listed in Part 11 been appraised by a professional within the last year?
    ✓ No
    ☐ Yes

Debtor  Pipeline – Westlake Hospital, LLC   Case number (if known) 19-11757
        Name

## Part 12:  Summary

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. Cash, cash equivalents, and financial assets. *Copy line 5, Part 1.* | $ 374,000.21 | |
| 81. Deposits and prepayments. *Copy line 9, Part 2.* | $ 681,225.33 | |
| 82. Accounts receivable. *Copy line 12, Part 3.* | $ 13,764,059.00 | |
| 83. Investments. *Copy line 17, Part 4.* | $ | |
| 84. Inventory. *Copy line 23, Part 5.* | $ | |
| 85. Farming and fishing-related assets. *Copy line 33, Part 6.* | $ | |
| 86. Office furniture, fixtures, and equipment; and collectibles. *Copy line 43, Part 7.* | $ | |
| 87. Machinery, equipment, and vehicles. *Copy line 51, Part 8.* | $ | |
| 88. Real property. *Copy line 56, Part 9.* → | | $ |
| 89. Intangibles and intellectual property. *Copy line 66, Part 10.* | $ | |
| 90. All other assets. *Copy line 78, Part 11.* | + $ | |
| 91. Total. Add lines 80 through 90 for each column............ 91a. | $ 14,819,284.54 | + 91b. $ |

92. Total of all property on Schedule A/B. Lines 91a + 91b = 92. ............................................................  $ 14,819,284.54

**Fill in this information to identify the case:**

Debtor name: **Pipeline - Westlake Hospital, LLC**

United States Bankruptcy Court for the: **DISTRICT OF DELAWARE**

Case number (if known): **19-11757**

☐ Check if this is an amended filing

Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible.

1. Do any creditors have claims secured by debtor's property?
   - ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
   - ■ Yes. Fill in all of the information below.

## Part 1: List Creditors Who Have Secured Claims

2. List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim |
|---|---|---|---|
| 2.1 **Tenet Business Service Corpration**<br>Creditor's Name<br><br>c/o Tenet Business Corporation<br>1445 Ross Ave., Suite 1400<br>Dallas, TX 75202<br>Creditor's mailing address<br><br>Creditor's email address, if known<br><br>Date debt was incurred<br>**January 28, 2019**<br>Last 4 digits of account number<br><br>Do multiple creditors have an interest in the same property?<br>■ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | Describe debtor's property that is subject to a lien<br>**All of Propco's real property, including the Hospital, the ARO Building, Professional Office Building and Medical Arts Building, including all improvements thereto, as well as the Debtor's personal property.**<br><br>Describe the lien<br>**Senior Secured Promissory Note**<br>Is the creditor an insider or related party?<br>■ No<br>☐ Yes<br>Is anyone else liable on this claim?<br>■ No<br>☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)<br><br>As of the petition filing date, the claim is:<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $14,645,991.00 | $0.00 |

3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. $14,645,991.00

## Part 2: List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

**Fill in this information to identify the case:**

Debtor Name: Pipeline – Westlake Hospital, LLC

United States Bankruptcy Court for the: District of Delaware

Case number (if known) 19-11757

☐ Check if this is an amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1: List All Creditors with PRIORITY Unsecured Claims

1. Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).
   ☐ No. Go to Part 2.
   ✓ Yes. Go to line 2. – See attached Exhibit

2. List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part. If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | Total claim | Priority amount |
|---|---|---|---|
| 2.1 Priority creditor's name and mailing address<br>_____<br>_____<br>_____<br>Date or dates debt was incurred<br>_____<br>Last 4 digits of account number _____<br>Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (____) | As of the petition filing date, the claim is:<br>Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>Basis for the claim:<br>_____<br>Is the claim subject to offset?<br>☐ No<br>☐ Yes | $_____ | $_____ |
| 2.2 Priority creditor's name and mailing address<br>_____<br>_____<br>_____<br>Date or dates debt was incurred<br>_____<br>Last 4 digits of account number _____<br>Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (____) | As of the petition filing date, the claim is:<br>Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>Basis for the claim:<br>_____<br>Is the claim subject to offset?<br>☐ No<br>☐ Yes | $_____ | $_____ |
| 2.3 Priority creditor's name and mailing address<br>_____<br>_____<br>_____<br>Date or dates debt was incurred<br>_____<br>Last 4 digits of account number _____<br>Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (____) | As of the petition filing date, the claim is:<br>Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>Basis for the claim:<br>_____<br>Is the claim subject to offset?<br>☐ No<br>☐ Yes | $_____ | $_____ |

Official Form 206E/F                Schedule E/F: Creditors Who Have Unsecured Claims                page 1 of ____