# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) Case No. 19-22878 |
| WESTLAKE PROPERTY HOLDINGS, LLC, *et al.*, | ) (Jointly Administered) |
| | ) |
| | ) Hon. Deborah L. Thorne |
| Debtors. | ) |

## NOTICE OF MOTION

TO:     See Attached Service List

**PLEASE TAKE NOTICE** that on **Tuesday, February 11, 2020 at 9:30 a.m.** or as soon thereafter as counsel may be heard, I shall appear before the **Honorable Deborah L. Thorne**, Bankruptcy Judge, in Courtroom 613, United States Bankruptcy Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois, and shall then and there present the **Trustee's Motion For Authority To (I) Use Cash Collateral, (II) Provide Adequate Protection, (III) Surcharge Lender's Collateral Under Section 506(c) Of The Bankruptcy Code, And (IV) For Related Relief**, a copy of which is attached and herewith served upon you, and shall pray for the entry of an order in conformity with the prayer of said pleading.

**AT WHICH TIME AND PLACE** you may appear if you so see fit.

    Ira Bodenstein, not personally, but as chapter 7 trustee for the bankruptcy estates of Pipeline – Westlake Hospital, LLC and Westlake Property Holdings, LLC

Dated: January 23, 2020

*/s/ Allen J. Guon*
One of his attorneys

Robert M. Fishman
Allen J. Guon
David D. Doyle
FOX ROTHSCHILD LLP
321 N. Clark Street, Suite 1600
Chicago, IL 60654
312-517-9200

106990229.v1

## **CERTIFICATE OF SERVICE**

Allen J. Guon, an attorney, certifies that he caused to be served a true copy of the above and foregoing notice and attached pleading upon the Electronic Mail Notice List through the ECF System which sent notification of such filing via electronic means or via U.S. First Class Mail, as indicated, on January 23, 2020.

*/s/ Allen J. Guon*

Mailing Information for Case 19-22878

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Terence G Banich    tbanich@foxrothschild.com, kjanecki@foxrothschild.com
- Ira Bodenstein    iratrustee@foxrothschild.com, IL29@ecfcbis.com;plove@foxrothschild.com;chdocket@foxrothschild.com
- Ira Bodenstein    ibodenstein@foxrothschild.com, plove@foxrothschild.com;chdocket@foxrothschild.com
- Erin M Buechler    erin.buechler@comed.com
- John T Carroll    jcarroll@cozen.com, pgiordano@cozen.com;jdeeney@cozen.com;john-carroll-2735@ecf.pacerpro.com
- Rosanne Ciambrone    rciambrone@duanemorris.com, jkahane@duanemorris.com;rpdarke@duanemorris.com;jjohnson3@duanemorris.com
- Scott R Clar    sclar@cranesimon.com, mjoberhausen@cranesimon.com;asimon@cranesimon.com
- David E Cohen    dcohen@fishercohen.com
- Jeffrey C Dan    jdan@cranesimon.com, sclar@cranesimon.com;mjoberhausen@cranesimon.com
- David R Doyle    ddoyle@foxrothschild.com, kjanecki@foxrothschild.com
- Robert M Fishman    rfishman@foxrothschild.com, kjanecki@foxrothschild.com
- Allen J Guon    aguon@foxrothschild.com, plove@foxrothschild.com;chdocket@foxrothschild.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Kevin H Morse    kmorse@clarkhill.com
- Nancy A Peterman    petermann@gtlaw.com, chilitdock@gtlaw.com;greenbergc@gtlaw.com;stibbep@gtlaw.com
- Christina Sanfelippo    csanfelippo@foxrothschild.com, orafalovsky@foxrothschild.com
- Julia Jensen Smolka    jjensen@dimonteandlizak.com, mkwakwa@dimontelaw.com
- John R Weiss    jrweiss@duanemorris.com
- Eric R von Helms    evonhelms@kmksc.com

106990229.v1

**Manual Notice List – Via E-Mail**
Stanley Otake
sotake@wilshirepacificadvisors.com
Eric Weissman
eweissman@wilshirepacificadvisors.com
Wilshire Pacific Capital Advisors

106990229.v1

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) Case No. 19-22878 |
| WESTLAKE PROPERTY HOLDINGS, LLC, | ) (Jointly Administered) |
| *et al.*, | ) |
| | ) Hon. Deborah L. Thorne |
| Debtors. | ) |
| | ) |
| | ) |

**TRUSTEE'S AGREED MOTION FOR AUTHORITY TO (I) USE CASH COLLATERAL, (II) PROVIDE ADEQUATE PROTECTION, (III) SURCHARGE LENDER'S COLLATERAL UNDER SECTION 506(C) OF THE BANKRUPTCY CODE, AND (IV) FOR RELATED RELIEF**

Ira Bodenstein, not individually, but solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estates of Westlake Property Holdings, LLC ("Holdings") and Pipeline – Westlake Hospital, LLC ("Pipeline-Westlake," and together with Holdings, the "Debtors"), pursuant to 11 U.S.C. §§ 361, 363(c)(2), 363(e), 506(c), Fed. R. Bankr. P. 4001(b), and Local Rule 4001-2, hereby requests that this Court enter a final order substantially in the form the proposed agreed order attached hereto ("Cash Collateral Order") authorizing the Trustee to (i) use the cash collateral of VHS of Illinois, Inc. ("Lender"), (ii) provide adequate protection to the Lender on account of its asserted prepetition liens, all of the foregoing in accordance with the Cash Collateral Order and budgets attached hereto as Group Exhibit 1 (collectively, the "Budget")[1], (iii) surcharge the Lender's collateral pursuant section 506(c) of the Bankruptcy Code, and (iv) grant related relief. In support of this motion, the Trustee respectfully states as follows:

---

[1] The Budget is comprised of a budget for the Hospital building and a budget for the adjoining medical office building ("MOB").

## I. FACTUAL BACKGROUND

### A. The Debtors' Chapter 7 Cases

1. On August 6, 2019 ("Petition Date"), the Debtors filed bankruptcy petitions under chapter 7 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware ("Delaware Court"), designated as Case Nos. 19-11756 and 19-11757, respectively (collectively, "Cases").

2. On August 13, 2019, the Delaware Court entered the Order Granting Motion of the United States Trustee to Transfer Venue to the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division [Case No. 19-11756, Dkt. No. 59; Case No. 19-11757, Dkt. No. 57] ("Transfer Orders") in each of the Cases. Pursuant to the Transfer Orders, the Delaware Court transferred the Cases to the United States Bankruptcy Court for the Northern District of Illinois ("Court").

3. On August 14, 2019, the Office of the United States Trustee appointed Mr. Bodenstein to serve as the successor chapter 7 trustee of the Debtors' bankruptcy estates ("Estates").

4. On August 26, 2019, the Court approved the joint administration of the Cases for procedural purposes only.

5. This Court has jurisdiction to hear this matter and enter a final order granting the relief requested herein pursuant to 28 U.S.C. §§ 1334 and 157(b)(2) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

### B. The Debtors and the Real Property

6. Prior to the Petition Date, the Debtors owned and operated a 230-bed hospital ("Hospital") in Melrose Park, Illinois, the adjoining MOB and certain other related real property used in connection with the Hospital (collectively, all of the real property is referred to as the "Real

2

Property"). Pipeline-Westlake is the operating entity for the Hospital. Holdings owns all of the Real Property. The Hospital has ceased operating and accepting patients, and as of August 13, 2019, no patients remained at the Hospital. However, the MOB remains leased and is occupied by a number of tenants.

7. On September 17, 2019, the Court entered the *Order (I) Authorizing the Trustee, pursuant to 11 U.S.C. §§ 363(c)(1) and 721, (A) to Undertake Certain Actions Necessary to Maintain the Assets of the Estates and (B) to Continue the Business Operations of the Medical Office Building; and (II) Granting Related Relief* [Dkt. No. 70] ("Administration Order").

8. Under the Administration Order, the Trustee is authorized to perform certain tasks and pay expenses relating to the administration of the Debtors' businesses in order to effectuate an orderly wind-down and preserve the value of the Estates pursuant to §§ 363(c)(1) and 721 of the Bankruptcy Code.

9. Pursuant to the authority granted to the Trustee under the Administrative Order, on October 7, 2019, the Trustee entered into a Management Agreement with Crossroads Real Estate Partners, LLC ("Crossroads") to provide management, operating and supervisory services for the MOB. On November 1, 2019, the Trustee entered into an Exclusive Listing Agreement to Lease ("Listing Agreement") with Crossroads. Under the Listing Agreement, Crossroads also acts as the exclusive leasing agent for the MOB.

### C. The Lender's Interests In The Real Property

10. On or about December 31, 2018, SRC Hospital Investments II, LLC ("SRC") and Tenet Business Services Corporation, along with certain other sellers named therein (collectively, Sellers"), entered into that certain Amended and Restated Asset Purchase Agreement ("Purchase Agreement"). Pursuant to the terms of the Purchase Agreement, SRC acquired from Sellers certain

3

assets owned and used by Sellers in connection with the operation of Louis A. Weiss Memorial Hospital, West Suburban Hospital, Westlake Hospital and other businesses related thereto.

11. Among other documents, Holdings executed a Senior Secured Promissory Note ("Note") in favor of the Lender in the original principal amount of $10,000,000.00 as payment for the portion of the consideration asserted to be payable for the purchase of the Real Property and substantially all of the assets of the healthcare business operated at the Real Property. The maturity date of the Note is January 28, 2022.

12. Contemporaneous with the execution of the Note, Holdings also executed a certain Mortgage, Assignment of Rents, Security Agreement and Fixture Filing ("Mortgage") in connection with the Real Property and in favor of the Lender to secure the indebtedness evidenced by the Note. The Mortgage was recorded on February 1, 2019. Copies of the Note and the Mortgage are attached hereto as Exhibit 2 and Exhibit 3, respectively.

13. Lender asserts that it holds a perfected prepetition security interest ("Lender's Prepetition Security Interests") in all of the Real Property and post-petition proceeds thereof (collectively, the "Collateral") based on the Mortgage.

14. As of the Petition Date, the Lender asserted that the outstanding aggregate amount owed under the Note and secured by the Mortgage was $10,000,000.00, plus interest ("Prepetition Claim").

15. The Trustee is currently investigating the Lender's asserted security interests in and to the Collateral.

### D. The Trustee's Proposed Continued Use Of The Lender's Cash Collateral

16. Since his appointment, the Trustee has been using the cash collateral to pay all reasonable, necessary costs and expenses incurred in preserving, maintaining or disposing of the Collateral in compliance with the Administrative Order and without objection from Lender. The

Trustee has reached a formal agreement with Lender for the continued use of cash collateral pursuant to the terms of the proposed Cash Collateral Order.

17. Subject to the terms of a proposed Cash Collateral Order and the Budget, the Trustee seeks authority to use the Lenders' cash collateral effective from the Petition Date though a period ending 90 days after the entry of the Cash Collateral Order, subject to further extensions thereafter. The Trustee intends to use the cash collateral solely to pay for the expenses related to the preservation, maintenance and operation of the Real Property pending its sale.

## II. FED. R. BANKR. P. 4001(b)(1)(B) and L.R. 4001-2 DISCLOSURES[2]

18. The following disclosures are made pursuant to Fed. R. Bankr. P. 4001(b)(1)(B):

   a. The only entity with an asserted interest in the subject cash collateral is the Lender.

   b. The Trustee requires the use of the Lender's cash collateral to pay (i) all reasonable, necessary costs and expenses incurred in preserving, maintaining or disposing of the Collateral (collectively, "Collateral Preservation Expenses") retroactive to the Petition Date and (ii) any other expenses authorized by the Court. Accordingly, and pursuant to 11 U.S.C. § 363(c)(2), the Trustee requests authority to use cash collateral in accordance with the provisions of the Cash Collateral Order and Budget to pay ongoing Collateral Preservation Expenses. Cash Collateral Order ¶ 2.

   c. Within thirty (30) days after each calendar month, the Trustee shall prepare and furnish to the Lender a monthly report of receipts, disbursements, and a reconciliation of actual receipts and disbursements with those set forth in the Budget showing any material percentage variance to the Budget (i) for such monthly period and (ii) on a cumulative basis for the period of the Budget or such other budget period, as applicable, which shall be certified by the Trustee's property manager (the "Budget Reconciliation"). Cash Collateral Order ¶ 13.

   d. The use of cash collateral will terminate upon the earlier of (i) 90 days after the entry of an Order approving the Cash Collateral Order, unless extended by agreement with the Lender or by further order of the Court, and (ii) five (5) business days following delivery of written notice (the "Default Notice," and such period of time, the "Default Notice Period") by the Lender to the

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Cash Collateral Order.

    Trustee of the occurrence of an Event of Default hereunder unless such Event of Default has been cured or waived by the Lender during the Default Notice Period or, after notice and a hearing, the Court authorizes the Trustee's continued use of cash collateral; <u>provided that</u>, during the Default Notice Period, the Trustee shall be entitled to continue to use the cash collateral in accordance with the terms of the Cash Collateral Order (the occurrence of (i) or (ii), the "<u>Termination Date</u>"). Cash Collateral Order ¶10.

 e. Pursuant to 11 U.S.C. §§ 361 and 363(e), the Trustee requests authority to grant certain adequate protection to the Lender on account of its prepetition liens. As adequate protection for any diminution in the value of any of the Lender's Pre-petition Security Interests in the Collateral, including the cash collateral, Lender is hereby granted, retroactive to the Petition Date and without the necessity of any additional documentation or filings: (i) valid, enforceable, non-avoidable, and fully perfected, first-priority post-petition security interests in and liens (effective and perfected upon the date of entry of the Cash Collateral Order and without the necessity of execution by Holdings of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments), to the same extent as the validity, enforceability, non-avoidability and perfection as the Lender's Pre-Petition Security Interests, on any property of Holdings' Estate that is not subject to (a) valid, perfected, non-avoidable, and enforceable liens in existence on or as of the Petition Date or (b) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "<u>Unencumbered Property</u>"); provided that the Unencumbered Property shall not include causes of action under sections 544, 545, 547, 548, or 550 of the Bankruptcy Code or their proceeds (collectively, the "<u>Avoidance Actions</u>"); (ii) valid, enforceable, non-avoidable, and fully perfected junior priority security interests in and post-petition liens (effective and perfected upon the date of entry of the Order approving the Cash Collateral Order and without the necessity of execution by Holdings of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments), to the same extent as the validity, enforceability, non-avoidability and perfection as the Lender's Pre-Petition Security Interests, on all property of Holdings' Estate that is subject to (a) valid, perfected, and unavoidable liens in existence immediately prior to the Petition Date or (b) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected, and unavoidable liens are senior in priority to the security interests and liens in favor of the Lender (collectively, the "<u>Adequate Protection Liens</u>"). To the extent that the Lender, in spite of the Adequate Protection Liens provided pursuant to the Cash Collateral Order, has an allowable claim arising from the use, sale, or lease of the Collateral (the "<u>Additional Claim</u>"), then the Additional Claim shall have priority over

6

every other allowable under section 507. <u>For the avoidance of any doubt, the Trustee's use of cash collateral to pay Collateral Preservation Expenses shall not constitute a diminution in the value of any of the Lender's interests in the Collateral and shall not entitle the Lender to any adequate protection in excess of the adequate protection provided by the Trustee's payment of the Collateral Preservation Expenses.</u>  Cash Collateral Order ¶ 3.

19. The following disclosures of certain terms contained in the Cash Collateral Order are made pursuant to Local Bankruptcy Rule 4001-2(A)(2):

    a. **Cross Collateralization Other Than As Adequate Protection:** No.

    b. **Findings Regarding Validity, Perfection Or Amount Of Secured Creditor's Lien Or Debt And Waiver Of Claims Against Secured Creditor:** No. Cash Collateral Order ¶ 8.

    c. **Waiver Of Rights Under Section 506(c)**: No. To the extent that the Trustee uses any funds to pay any Collateral Preservation Expenses that are determined by the Court not to constitute cash collateral ("Non-Cash Collateral Payments"), then the Trustee is entitled and authorized, pursuant to 11 U.S.C. § 506(c), to surcharge the proceeds from the disposition of any Collateral ("Collateral Proceeds") in the amount of such Non-Cash Collateral Payments. The amount of any surcharge to be assessed against the Collateral Proceeds shall be determined at a future date, either by the agreement of Lender and the Trustee, or by order of this Court. Cash Collateral Order ¶ 9.

    d. **Liens On Chapter 5 Causes Of Action:** No. Cash Collateral Order ¶3.

    e. **Immediate Roll-Up Of Prepetition Debt Or Use Of Postpetition Loans To Pay Prepetition Debt (Other Than Under § 552(b)):** No.

    f. **Different Treatment Of Professionals And Limit On Committee's Use Of Carve-Out:** Not applicable.

    g. **Priming Of Secured Liens Without Consent:** No.

    h. **Declaration Against Imposition Of Lender Liability:** No.

    i. **Relief From The Automatic Stay On An Expedited Basis And/Or Without Further Order Of The Court:** In the event the Lender sends a Default Notice to the Trustee and following the Default Notice Period, the Lender may revoke the Trustee's right to use cash collateral. During and after the Default Notice Period, the Trustee shall be entitled to file an emergency motion seeking the continued use of cash collateral, which motion may be heard by the Court as soon as practicable based on the

7

    Court's calendar following three (3) business days' written notice by the Trustee to the Lender and any other parties entitled to notice under applicable rules. Unless the Court orders otherwise during the Default Notice Period, following the Default Notice Period, the Trustee shall no longer have the right to use cash collateral. Further, after the Default Notice Period, the Lender shall be entitled to file an emergency motion seeking relief from the automatic stay, which motion may be heard by the Court as soon as practicable based on the Court's calendar following three (3) business days' written notice by Lender to the Trustee and any other parties entitled to notice under applicable rules. The delay or failure to exercise rights and remedies under the Cash Collateral Order shall not constitute a waiver of the Lender's rights thereunder or otherwise. Cash Collateral Order ¶ 12.

  j. **In Jointly Administered Cases, Provisions For Joint And Several Liability On Loans:** No.

20. Pursuant to Local Rule 4001-2(A)(3)-(4), and to the extent not otherwise described herein, the following is a summary of other essential provisions of the Trustee's proposed use of cash collateral pursuant to the Cash Collateral Order:

### The Maximum Borrowing On An Interim And Final Basis

a. This is not applicable to the Cash Collateral Order.

### Borrowing Conditions

b. This is not applicable to the Cash Collateral Order.

### The Interest Rate

c. This is not applicable to the Cash Collateral Order.

### Maturity

d. This is not applicable to the Cash Collateral Order.

### Events of Default

e. The occurrence of any of the following shall constitute an event of default (each, an "Event of Default"): (i) the Trustee's failure to comply with any of the terms or conditions of the Cash Collateral Order resulting in a material adverse effect on the Lender and any such failure to comply has not been duly waived or cured in accordance with the terms hereof within five (5) business days of the Trustee receiving actual notice thereof; and (ii) any provision of the Cash Collateral Order

8

    shall for any reason cease to be valid and binding, and such cessation has a material adverse effect on the Lender. Cash Collateral Order ¶ 11.

### Use of Funds Limitations

f. Pursuant to paragraph 2 of the Cash Collateral Order, Trustee is authorized to use the cash collateral only to pay (i) the Collateral Preservation Expenses retroactive to the Petition Date and (ii) any other expenses authorized by the Court. Cash Collateral Order ¶ 2.

### §§ 363 and 364 Protections

g. *See* ¶ 18(e) above.

### The Budget

h. A Budget is attached hereto as <u>Group Exhibit 1</u> covering the time period from the February 1, 2020 through April 30, 2020.

### III. REQUESTED AUTHORITY TO USE CASH COLLATERAL

21. By virtue of the Note and Mortgage, Lender asserts that its claims are secured by perfected, valid and enforceable liens on the Real Property and the rents that they generate. The Lender also asserts that it holds perfected and enforceable liens on Holdings' "cash collateral" as that term is defined within the meaning of 11 U.S.C. § 363(a).[3]

22. The Trustee requires the continued use of the Lender's cash collateral in order to maintain and preserve the value of the Real Property pending its sale. Accordingly, and pursuant to 11 U.S.C. § 363(c)(2), the Trustee requests authority to use cash collateral in accordance with the provisions of the Cash Collateral Order to pay the Collateral Preservation Expenses. These expenses include, without limitation, maintenance costs, utilities, management fees, tenant improvements, taxes, and insurance. The duration of the proposed cash collateral use will be from

---

[3] Notwithstanding the Trustee's request for authority to use the Lender's cash collateral, nothing contained in this motion should be construed to constitute an admission regarding the amount, extent, validity, priority, perfection, enforceability, or avoidability of the Lender's claims or its prepetition liens or interests in the Real Property or the Debtor's other assets. The Trustee reserves all of its rights regarding the amount, extent, validity, priority, perfection, enforceability, or avoidability of the Lender's secured claims.

the Petition Date through and including the date that is 90 days after the entry of the Cash Collateral Order and may be thereafter extended by (i) agreement with the Lender, or (ii) Court approval.

23.    The Lender has consented to the Trustee's continued use of its cash collateral, and therefore, his continued use should be authorized accordance with 11 U.S.C. § 363(c)(2)(B), (e). The Trustee's proposed use of cash collateral as described in the Budget and the proposed Cash Collateral Order is designed to preserve the value of the Real Property and thereby adequately protect the value of the Lender's interests in the Real Property as of the Petition Date. *See In re Addison Properties Ltd. P'ship*, 185 B.R. 766, 783 (Bankr. N.D. Ill. 1995) ("It is now established that 'adequate protection' is meant only to assure that a secured creditor does not suffer a decline in the value of its interest in the estate's property, rather than to compensate the creditor for the bankruptcy-imposed delay in enforcing its rights in that property.") (citing *United States Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988)).

24.    As additional adequate protection, the Trustee also requests that the Lender be granted, retroactive to the Petition Date and without the necessity of any additional documentation or filings, valid, enforceable, non-avoidable, and fully perfected replacement liens of the highest available priority upon all property of Holdings' Estate, but excluding any avoidance actions under chapter 5 of the Bankruptcy Code and their proceeds.

25.    The Trustee requests that the adequate protection liens (i) only attach to the same extent and with the same validity and priority as Lender's Pre-Petition Security Interests in the Collateral (but only to the extent such interest is non-avoidable), (ii) be limited to the extent of the aggregate diminution subsequent to the Petition Date in the value of the Lender's Pre-petition Security Interests in the Collateral (including the cash collateral) and (iii) be subject only to prior

10

perfected and unavoidable liens in property of Holdings' Estate as of the Petition Date. These measures of adequate protection are reflected in the proposed Cash Collateral Order.

26. To the extent that the Lender, in spite of the adequate protection liens provided in the Cash Collateral Order, has an allowable claim arising from the use, sale, or lease of the Collateral (the "Additional Claim"), then the Additional Claim shall have priority over every other allowable claim under section 507 of the Bankruptcy Code.

27. Importantly, however, the Cash Collateral Order expressly provides that the Trustee's use of cash collateral to pay Collateral Preservation Expenses shall not constitute a diminution in the value of any of the Lender's interests in the Collateral and shall not entitle the Lender to any adequate protection in excess of the adequate protection provided by the Trustee's payment of the Collateral Preservation Expenses.

28. Without the ability to use cash collateral to pay for the Collateral Preservation Expenses, the value of the Real Property is certain to deteriorate. Consequently, the Trustee's use of the Lender's cash collateral is necessary to avoid immediate and irreparable harm to the value of the Real Property and Holdings' Estate.

29. The Trustee's use of the Lender's cash collateral should be authorized accordingly.

## IV. ADEQUATE PROTECTION

30. As stated above, pursuant to 11 U.S.C. §§ 361 and 363(e), the Trustee requests authority to grant certain adequate protection measures to the Lender on account of its asserted prepetition liens and security interests. As more specifically set forth in paragraph 3 of the Cash Collateral Order, the Trustee proposes that his use of the Lender's cash collateral be accompanied by the conferral of replacement liens on all existing and hereafter acquired assets of Holdings' Estate (excluding chapter 5 causes of action and their proceeds).

11

31. The adequate protection liens granted to the Lender will secure payment of the Lender's prepetition claims in an amount equal to the aggregate diminution, from and after the Petition Date, of the value of the Lender's interest in prepetition collateral as a consequence of the Trustee's use or otherwise. Under paragraph 3 of the proposed Cash Collateral Order, the replacement liens shall (i) only attach to the same extent and with the same validity and priority as Lender's Pre-Petition Security Interests in the Collateral (but only to the extent such interest is non-avoidable), (ii) be limited to the extent of the aggregate diminution subsequent to the Petition Date in the value of the Lender's Pre-petition Security Interests in the Collateral (including the cash collateral) and (iii) be subject only to prior perfected and unavoidable liens in property of Holdings' Estate as of the Petition Date.

## V. **SURCHARGE OF COLLATERAL**

32. Section 506(c) of the Bankruptcy Code permits the Trustee to surcharge certain costs against a secured creditor's collateral. Section 506(c) of the Bankruptcy Code provides that:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

33. "Section 506(c) is based in equity and is the proper vehicle for making the [lender] pay for the benefit it reaped, if the requirements are met." *In re Lunan Family Restaurants Ltd. Partnership*, 192 B.R. 173, 178 (Bankr. N.D.Ill. 1996). The three criteria that must be established in order to charge a secured creditor under section 506(c) of the Bankruptcy Code are: (i) the expenses must be necessary; (ii) the expense must have benefited the secured creditor; and (iii) the expenses must be reasonable. *In re Trim-X*, 695 F.2d 296, 299 (7th Cir. 1983). Expenses may also be charged against a lender collateral if it caused or consented to such expenses. *Id*. at 301. "The

12

key element for recovery under section 506(c) is whether the services conferred a direct benefit on the [Lender]." *In re Evanston Beauty Supply, Inc.,* 136 B.R. 171, 176 (Bankr. N.D. Ill. 1992).

34. In this case, the Trustee believes that the Cash Collateral Proceeds (e.g., rents) will be insufficient to fully maintain and preserve the Real Property prior to a sale. The Trustee requests that, to the extent that funds that do not represent the Lender's cash collateral are used to pay any Collateral Preservation Expenses, then the Trustee should be authorized, pursuant to section 506(c) of the Bankruptcy Code, to surcharge the Collateral Proceeds in the amount of such Non-Cash Collateral Payments. In this regard, the Trustee seeks protection for Holdings' Estate to ensure that it is reimbursed to the extent of any unencumbered assets that the Trustee may use to pay Collateral Preservation Expenses. Importantly, the amount of any surcharge to be assessed against the Collateral Proceeds shall be determined at a future date, either by the agreement of Lender and the Trustee, or by order of this Court.

## VI. NOTICE

35. The Trustee has provided 14 days' notice of this motion on (i) the Office of the United States Trustee; (ii) the Lender; and (iii) all parties who have requested notice in these Cases.

## VII. CONCLUSION

WHEREFORE, pursuant to 11 U.S.C. §§ 361, 362, 363(c)(2), 363(e), 506(c), Fed. R. Bankr. P. 4001(b), and Local Rule 4001-2, the Trustee requests the entry of a final order approving this motion, and specifically: (i) authorizing the Trustee to use the Lender's cash collateral on a final basis on substantially the same terms as the Cash Collateral Order; (ii) authorizing the Trustee

13

to provide adequate protection in favor of the Lender in the manner and to the extent described herein; (iii) authorizing the Trustee to surcharge the Lender's Collateral pursuant section 506(c) of the Bankruptcy Code; and (iv) granting such other and further relief as is just and to which the Trustee may be entitled under the circumstances. and appropriate.

                                        Respectfully submitted,

                                        Ira Bodenstein, not personally, but as chapter 7 trustee for the bankruptcy estates of Pipeline – Westlake Hospital, LLC and Westlake Property Holdings, LLC

Dated: January 23, 2020                      By:   */s/ Allen J. Guon*
                                                                        One of his attorneys

Robert M. Fishman
Allen J. Guon
David D. Doyle
FOX ROTHSCHILD LLP
321 North Clark Street, Suite 1600
Chicago, Illinois 60654
(312) 517-9200
106872161.v4

14