# **EXHIBIT 2**

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE AND MAY NOT BE SOLD, TRANSFERRED, OR OTHERWISE DISPOSED OF EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT AND APPLICABLE STATE SECURITIES LAWS OR PURSUANT TO AN APPLICABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF SUCH ACT AND SUCH LAWS.

## SENIOR SECURED PROMISSORY NOTE

**January 28, 2019**                                                                                   **$10,000,000.00**

**WESTLAKE PROPERTY HOLDINGS, LLC**, a Delaware limited liability company (together with its permitted successors and assigns, "Maker"), hereby promises to pay to the order of **VHS OF ILLINOIS, INC.**, a Delaware corporation (together with its successors and assigns, "Payee"), the principal amount of TEN MILLION AND NO/100 DOLLARS ($10,000,000.00), together with interest thereon calculated from the date hereof (the "Issue Date") in accordance with the provisions of this Senior Secured Promissory Note (this "Note"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in Section 9.

1.      Borrowings. This Note is issued pursuant to that certain Amended and Restated Asset Purchase Agreement dated as of December 31, 2018 (as amended, restated, replaced or modified from time to time, the "Purchase Agreement"), by and among Payee and the other Sellers (as defined therein) party thereto and SRC Hospital Investments II, LLC, a Delaware limited liability company as Buyer party thereto (the "Buyer"), as payment, on behalf of Maker, of the portion of the consideration payable thereunder by the Buyer to Payee for the purchase of the Mortgaged Property and substantially all of the assets used with respect to the operation of the Healthcare Business (as defined in the Purchase Agreement) at the Mortgaged Property. This Note is the "Seller Note" referred to in the Purchase Agreement. It is acknowledged and agreed that the obligations evidenced by this Note represent seller financing provided by Payee.

2.      Payment of Interest. Commencing on the Issue Date, interest shall accrue daily on the outstanding principal balance of this Note until repayment of all amounts due hereunder at a per annum rate of interest of ten percent (10%) (computed based on a 360-day year), which interest shall payable by Maker to Payee in arrears in cash in monthly installments on the last day of each calendar month, with the first such monthly payment due on the first calendar month end occurring after the Issue Date. Any accrued interest not previously paid by Maker shall be paid in full in cash at such time as all remaining unpaid principal on this Note is paid in accordance with this Note (including on the Maturity Date). Following the occurrence and during the continuance of an Event of Default, the interest rate otherwise applicable pursuant to this Section 2 shall be increased, at Payee's election upon notice to Maker, by 4.0% per annum (such increase to be retroactive to the date of such Event of Default) (the "Default Rate"). Interest payments are subject to deferral provided Maker complies with the terms of the Disposition Agreement.

3.      Payment of Principal on Note.

(a)      Payment on Maturity Date. Maker shall pay the entire unpaid outstanding principal amount of this Note, together with all accrued but unpaid interest thereon, on the date which is three (3) years from the Issue Date (the "Maturity Date"). Payment of principal shall be governed by the terms of the Disposition Agreement provided Maker complies with the terms thereof.

principal amount of this Note, together with all accrued but unpaid interest thereon and the Prepayment Fee, in each case, as required in the definition of "Mandatory Prepayment Event" with respect to the applicable Mandatory Prepayment Event.

(c)  Optional Prepayments.  Maker may, at any time and from time to time, prepay all or any portion of the unpaid principal amount of this Note together with any unpaid interest which has accrued on the portion of the principal so prepaid and the Prepayment Fee applicable to the portion of principal so prepaid.

(d)  Time of Payment.  If any payment on this Note becomes due on a Saturday, Sunday or legal holiday under the laws of the State of Delaware (any day, other than any of the foregoing days, being referred to herein as a "Business Day"), then such payment shall be made on the next Business Day and such extension of time shall be included in computing interest in connection with such payment.

(e)  Application of Payments.  Except as may be otherwise agreed by the parties (including, without limitation, the terms of the Disposition Agreement), all payments under this Note (including pursuant to the foregoing clauses (b) and (c)) shall be applied (i) first, to any outstanding documented out-of-pocket fees, costs and expenses of Payee incurred in connection with (x) any amendments or other modifications to the Note Documents requested by Maker and (y) Payee enforcing any rights under this Note and the other Note Documents (collectively, "Reimbursable Expenses"), (ii) second, to the payment of accrued and unpaid interest hereunder until all such interest is paid, (iii) third, to the Prepayment Fee, and (iv) fourth, to the repayment of the outstanding unpaid principal amount of this Note.  Notwithstanding the foregoing, following an Event of Default, Payee may apply any payments received in any order determined by Payee in its sole discretion.

(f)  Prepayment Fee.  Any tender of payment by Maker or any other person or entity of the unpaid principal balance prior to the Maturity Date, shall constitute a prohibited prepayment unless paid strictly in accordance with this Section 3.  If a prepayment of all or any part of the unpaid principal balance is made following (i) an Event of Default and an acceleration of the Maturity Date, (ii) the application of money to the principal amount of this Note after a casualty or condemnation, or (iii) in connection with a purchase of the Mortgaged Property or a repayment of the Obligations at any time before, during or after, a judicial or non-judicial foreclosure or sale of the Mortgaged Property, Maker shall also pay any unpaid interest which has accrued on the portion of the principal so prepaid and, to compensate Payee for the loss of the investment, the Prepayment Fee applicable to the portion of principal being prepaid.

4.  Representations and Warranties.  Maker hereby makes the representations and warranties to Payee set forth on Exhibit A hereto.

5.  Affirmative Covenants.  On the Issue Date and at all times thereafter, until the repayment in full of all the Obligations (other than any contingent indemnification obligation for which no claim has been asserted that are expressly stated in this Note or any of the other Note Documents to survive payment in full of the Obligations), Maker hereby agrees to comply with each of the covenants set forth on Exhibit B hereto.Negative Covenants.  On the Issue Date and at all times thereafter until the repayment in full of all the Obligations (other than any contingent indemnification obligation for which no claim has been asserted that are expressly stated in this Note or any of the other Note Documents to survive payment in full of the Obligations), Maker agrees not to:

(a)  declare, order, pay, make, or set apart any sum for any Restricted Payment, except, solely if Maker is a pass-through entity for income tax purposes, Permitted Tax Distributions;

2

(b)    create, incur, assume or suffer to exist any Indebtedness, except Indebtedness under this Note;

(c)    create, incur, assume or suffer to exist any Lien upon any of its property, assets or revenues, whether now owned or hereafter acquired, except for Liens granted under the Note Documents securing the Obligations and Permitted Liens;

(d)    guaranty or otherwise become liable for any Indebtedness or other obligations of any Person (including any Affiliate);

(e)    engage in any line of business other than ownership of the Mortgaged Property and all activities related or incidental to the ownership of such Mortgaged Property;

(f)    sell, lease, assign, transfer or otherwise dispose of any of its property or assets except pursuant to the Disposition Agreement of even date herewith between Payee and Maker, or as otherwise approved by Payee in its sole discretion;

(g)    merge, dissolve, liquidate or consolidate with or into another Person, or acquire or agree to acquire by merger, consolidation, recapitalization or other business combination or otherwise, the stock, assets or business of any Person;

(h)    make loans to any Person or make any other Investment;

(i)    except as required by applicable law, amend or otherwise modify any organizational documents of Maker (each as in effect and delivered to Payee on the Issue Date) in violation of Section 6(j) below or if any such amendment or modification could materially and adversely affect the rights and interests of Payee under the Note Documents; it being understood that Maker shall fully disclose all amendments or other modifications to Maker's organizational documents to Payee in writing within thirty (30) days after the filing or effectiveness, as applicable, thereof;

(j)    change Maker's state of formation or organization, its existence as a limited liability company or its legal name, in each case as in effect on the Issue Date; or

(k)    enter into any transaction or series of related transactions with any Affiliate of Maker or Buyer, except for transactions the terms of which are no less favorable to Maker than would reasonably be obtained by Maker at that time in a comparable arm's-length transaction with a Person other than any such Affiliate.

7.    Security.

(a)    The Obligations under this Note and the other Note Documents are secured by the Collateral.

(b)    Further Assurances.

(i)    Maker agrees that from time to time, at its own expense, Maker will promptly execute and deliver all further instruments and documents, and take all further action, that Payee may reasonably request to create, perfect or protect the security interest purported to be granted by Maker under any Mortgage and the other Note Documents in the Collateral or to enable Payee to exercise and enforce its rights and remedies under any Mortgage or the other Note Documents with respect to any of the Collateral.

(ii)     Maker will execute and deliver to Payee such other instruments or notices, as Payee may reasonably request, in order to perfect and preserve the security interest in the Collateral.

(iii)     Maker acknowledges that it is not authorized to file, or to authorize the filing of, any financing statement or amendment or termination statement with respect Maker or any of its assets without the prior written consent of Payee.

8.     Defaults and Remedies.

(a)     Events of Default. An "Event of Default" shall occur under this Note if:

(i)     Maker shall fail to make payment of (A) any principal under this Note when and as the same shall become due and payable, in each case, within thirty (30) days after the date on which the same shall become due and payable, or upon the occurrence of the Maturity Date, or (B) interest under this Note or any other Obligations or amounts under any Note Document, in each case, within fifteen (15) days after the date on which the same shall become due and payable, or upon the occurrence of the Maturity Date; or

(ii)     Maker shall breach or otherwise fail to comply with its covenants and agreements set forth in Section 6 of this Note; or

(iii)     an Insolvency Event shall occur with respect to Maker or Maker shall take any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, an Insolvency Event with respect to Maker, or Maker shall generally not, or shall be unable to, or shall admit in writing its inability to, pay its debts as they become due; or

(iv)     a Change of Control occurs; or

(v)     any of the representations and warranties set forth in the Note Documents shall be untrue or shall be incorrect in any material respect when made (without duplication of materiality for a representation or warranty that is already qualified by materiality); or

(vi)     Maker shall breach, fail to comply with, or otherwise default under, covenants and agreements set forth in this Note, the Mortgage or the other Note Documents (other than those described in other clauses of this Section 8) and such breach or failure shall not have been remedied by Maker or waived in writing by Payee within twenty (20) days after the earlier of (x) receipt by Maker of notice from Payee of such default and (y) actual knowledge of such default by Maker; or

(vii)     intentionally omitted; or

(viii)     intentionally omitted ; or

(ix)     there is entered against Maker or Buyer (x) one or more final judgments or orders for the payment of money in an aggregate amount (as to all such judgments and orders) exceeding $200,000 (to the extent not covered by independent third-party insurance as to which the insurer is rated at least "A" by A.M. Best Company and as to which the relevant insurance company has acknowledged coverage or otherwise covered by an appeal bond), or (y) any one or more non-monetary final judgements that have, or could reasonably be expected to have,

4

individually or in the aggregate, a material adverse effect on Maker or its properties, and, in either case, enforcement proceedings are commenced by any creditor upon such judgement or order, or there is a period of thirty (30) consecutive days during which a stay of enforcement of such judgement, by reason of a pending appeal or otherwise, is not in effect; or

(x)    intentionally omitted; or

(xi)    the Mortgage or any other Note Document, after delivery thereof pursuant to the terms of the Note Documents, shall for any reason cease to create a valid and perfected first priority Lien (unless such cessation to be perfected is caused by Payee's failure to file Uniform Commercial Code continuation statements to continue such Lien) on the collateral purported to be covered thereby (subject to (A) Permitted Liens described in clauses (b) and (c) of the definition thereof and (B) any other Permitted Liens that have priority over such Liens by operation of law or as provided in the Purchase Agreement); or

(xii)    Buyer or any of its Affiliates fails to make, when due, payments under the Transition Service Agreement or the Revenue Cycle MSA (each as defined in the Purchase Agreement), the effect of which is to permit any party thereto (other than Buyer or any of its Affiliates) to terminate such agreement; or

(xiii)    failure by Buyer to satisfy Assumed Liabilities (as defined in the Purchase Agreement) in excess of $200,000; or

(xiv)    an Event of Default occurs under the Transition Note (as defined in the Purchase Agreement) other than pursuant to Section 8(a)(ix) of the Transition Note; or

(xv)    default by Buyer under Section 8.24 of the Purchase Agreement pertaining to the cessation of operations at the Mortgaged Property; or

(xvi)    if any of the following occurs:

(A)    if by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property, or any part thereof, or of Maker shall be appointed and such order shall not be discharged or dismissed within sixty (60) days after such appointment; or

(B)    if any Accelerating Transfer shall occur; or

(C)    subject to Permitted Contest, if any Person having or claiming an interest in Maker or the Mortgaged Property, or any part thereof, commences an action or proceeding against Maker, the Mortgaged Property, or any part thereof or against the Mortgaged Property, or any part thereof that could reasonably be expected to have a Material Adverse Effect; or

(D)    subject to Permitted Contest, the issuance of any other execution or distraint process against the Mortgaged Property that could reasonably be expected to have a Material Adverse Effect; or

(E)    subject to Permitted Contract, there shall be commenced against Maker any case, proceeding or other action seeking issuance of a warrant of attachment, execution, distraint or similar process against all or any substantial part of its assets that results in

the entry of an order for any such relief that shall not have been vacated, discharged, or stayed or bonded pending appeal within sixty (60) calendar days from the entry thereof.

(b)    <u>Remedies</u>.  If an Event of Default occurs and is continuing,

(i)    Payee may declare the entire outstanding unpaid principal amount of this Note, together with all accrued but unpaid interest thereon and the Prepayment Fee, and all other Obligations, to be immediately due and payable without presentment, demand, declaration, protest or other notice or act of any kind, all of which are hereby expressly waived by Maker, and thereupon the same shall forthwith become and be immediately due and payable in cash; <u>provided</u> that, notwithstanding anything herein to the contrary, upon the occurrence of an Event of Default under <u>Section 8(a)(iii)</u> above, the entire outstanding unpaid principal amount of this Note, together with all accrued but unpaid interest thereon and the Prepayment Fee, and all other Obligations shall automatically become due and payable without further act of Payee or any other Person; and

(ii)    Payee shall be entitled to exercise against Maker or the Collateral any other rights of a secured creditor and which Payee may have been afforded under any contract or agreement with Maker (including the Mortgage or any other Note Document) at any time and other rights which Payee may have pursuant to applicable Law.

9.    <u>Definitions</u>.

"<u>Accelerating Transfer</u>" has the meaning set forth in Section 6.1 of the Mortgage.

"<u>Affiliate</u>" means, with respect to a Person, any other Person that directly or indirectly controls, is controlled by, or is under common control with, such Person; provided, however, that for so long as Tenet Healthcare Corporation remains a publicly traded company, no stockholder of Tenet Healthcare Corporation shall be considered an Affiliate of Sellers.  The term "*control*" used in the preceding sentence shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the work activities, management and policies of a Person whether through ownership of membership interests or voting securities, the election or appointment of board members, by contract or otherwise.

"<u>Anti-Terrorism Laws</u>" means any laws relating to terrorism or money laundering, including, without limitation, Executive Order No. 13224 (effective September 24, 2001), the USA PATRIOT Act, the laws comprising or implementing the Bank Secrecy Act, and the laws administered by U.S. Department of Treasury Office of Foreign Assets Control.

"<u>Blocked Person</u>" means any Person: (a) listed in the annex to, or is otherwise subject to the provisions of, Executive Order No. 13224, (b) owned or controlled by, or acting for or on behalf of, any Person that is listed in the annex to, or is otherwise subject to the provisions of, Executive Order No. 13224, (c) with which Payee is prohibited from dealing or otherwise engaging in any transaction by any Anti-Terrorism Law, (d) that commits, threatens or conspires to commit or supports "terrorism" as defined in Executive Order No. 13224, or (e) that is named a "specially designated national" or "blocked person" on the most current list published by U.S. Department of Treasury Office of Foreign Assets Control or other similar list or is named as a "listed person" or "listed entity" on other lists made under any Anti-Terrorism Law.

"<u>Buyer</u>" has the meaning specified in Section 1 hereto.

6

"Change of Control" means (a) the merger, dissolution, liquidation, or consolidation of Maker that is not a natural person (including with or into another Person), or the sale, transfer, license, lease or the sale or other disposition of (whether in one transaction or in a series of transactions) all or substantially all of the Equity Interests or assets (whether now owned or hereafter acquired) of Maker that is not a natural person, or (b) the failure of Buyer to directly own, beneficially and of record, all of both the aggregate ordinary voting power and the economics represented by the issued and outstanding Equity Interests of Maker that is not a natural person, in each case, on a fully diluted basis.

"Code" means the Internal Revenue Code of 1986, as the same may be amended, modified or supplemented from time to time, and any successor statute thereto, and any and all rules or regulations promulgated from time to time thereafter.

"Collateral" means (a) the Mortgaged Property and (b) any other assets in which a Lien is granted after the date hereof to secure the Obligations.

"Disposition Agreement" means that certain Disposition Agreement of even date herewith between Maker and Payee, as amended, restated, supplemented or otherwise modified from time to time.

"Environmental Laws" means any present and future federal, state and local laws, statutes, ordinances, rules, regulations, standards, policies and other governmental directives or requirements, as well as common law, pertaining to the environment, natural resources, pollution, health (including any environmental clean-up statutes and all regulations adopted by any local, state, federal or other Governmental Authority, and any statute, ordinance, code, order, decree, law rule or regulation all of which pertain to or impose liability or standards of conduct concerning medical waste or medical products, equipment or supplies), safety or clean-up that apply to Maker and relate to Hazardous Materials, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9601 et seq.), the Resource Conservation and Recovery Act of 1976 (42 U.S.C. § 6901 et seq.), the Federal Water Pollution Control Act (33 U.S.C. § 1251 et seq.), the Hazardous Materials Transportation Act (49 U.S.C. § 5101 et seq.), the Clean Air Act (42 U.S.C. § 7401 et seq.), the Federal Insecticide, Fungicide and Rodenticide Act (7 U.S.C. § 136 et seq.), the Emergency Planning and Community Right-to-Know Act (42 U.S.C. § 11001 et seq.), the Occupational Safety and Health Act (29 U.S.C. § 651 et seq.), the Residential Lead-Based Paint Hazard Reduction Act (42 U.S.C. § 4851 et seq.), any analogous state or local laws, any amendments thereto, and the regulations promulgated pursuant to said laws, together with all amendments from time to time to any of the foregoing and judicial interpretations thereof.

"Equity Interests" means (a) all shares of capital stock (whether denominated as common stock or preferred stock), equity interests, beneficial, partnership or membership interests, limited liability company interests, joint venture interests, participations or other ownership or profit interests in or equivalents (regardless of how designated) of or in a Person (other than an individual), whether voting or non-voting and (b) all securities convertible into or exchangeable for any of the foregoing and all warrants, options or other rights to purchase, subscribe for or otherwise acquire any of the foregoing, whether or not presently convertible, exchangeable or exercisable.

"Event of Default" has the meaning specified in Section 8(a) hereto.

"GAAP" means generally accepted accounting principles in the United States set forth from time to time in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board (or agencies with similar functions of comparable stature and authority

7

within the accounting profession) including, without limitation, the FASB Accounting Standards Codification, that are applicable to the circumstances as of the date of determination, consistently applied

"Governmental Authority" means any nation or government, any state or other political subdivision thereof, and any agency, department or Person exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"Hazardous Materials" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives, flammable materials; radioactive materials; polychlorinated biphenyls and compounds containing them; lead and lead-based paint; asbestos or asbestos-containing materials; any substance the presence of which on the Mortgaged Property is prohibited by any Environmental Laws; toxic mold, any substance that requires special handling; and any other material or substance now or in the future defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," "pollutant" or other words of similar import within the meaning of any Environmental Law, including: (a) any "hazardous substance" defined as such in (or for purposes of) CERCLA, or any so-called "superfund" or "superlien" under Law, including the judicial interpretation thereof; (b) any "pollutant or contaminant" as defined in 42 U.S.C.A. § 9601(33); (c) any material now defined as "hazardous waste" pursuant to 40 C.F.R. Part 260; (d) any petroleum or petroleum by-products, including crude oil or any fraction thereof; (e) natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel; (f) any "hazardous chemical" as defined pursuant to 29 C.F.R. Part 1910; (g) any toxic or harmful substances, wastes, materials, pollutants or contaminants (including, without limitation, asbestos, polychlorinated biphenyls ("PCB's"), flammable explosives, radioactive materials, infectious substances, materials containing lead-based paint or raw materials which include hazardous constituents); and (h) any other toxic substance or contaminant that is subject to any Environmental Laws or other past or present requirement of any Governmental Authority.

"Indebtedness" shall mean, as to any Person, without duplication, (i) all indebtedness of such Person for borrowed money (including principal, interest, fees and charges), (ii) all indebtedness of such Person for the deferred purchase price of property or services, and (iii) all other indebtedness of such Person that would be required to be reflected as debt on the liability side of a consolidated balance sheet of Person in accordance with GAAP.

"Insolvency Event" means, with respect to any Person, the occurrence of any of the following: (i) such Person shall commence any case, proceeding or other action (A) under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking to have an order for relief entered with respect to it, or seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to it or its debts, or (B) seeking appointment of a receiver, trustee, custodian, conservator or other similar official for it or for all or any substantial part of its assets, or such Person shall make a general assignment for the benefit of its creditors; or (ii) there shall be commenced against such Person any case, proceeding or other action of a nature referred to in clause (i) above that (A) results in the entry of an order for relief or any such adjudication or appointment or (B) remains undismissed, undischarged or unbonded for a period of sixty (60) calendar days.

"Investment" means, as to any Person, any direct or indirect acquisition or investment by such Person, whether by means of the purchase or other acquisition of Equity Interests of another Person, a loan, advance or capital contribution to, guarantee or assumption of debt of, or purchase or other acquisition of any other debt or interest in, another Person (including any partnership or joint venture interest in such other Person and any arrangement pursuant to which the investor guaranties Indebtedness of such other Person), or the purchase or other acquisition (in one transaction or a series of transactions)

8

of assets of another Person which constitute all or substantially all of the assets of such Person or of a division, line of business or other business unit of such Person.

"Indemnified Liability" has the meaning assigned to such term in Section 25.

"Indemnified Party" has the meaning assigned to such term in Section 25.

"Issue Date" has the meaning specified in the preamble hereto.

"Lien" shall mean any mortgage, pledge, hypothecation, collateral assignment, security deposit arrangement, encumbrance, deemed or statutory trust, security conveyance, lien (statutory or other), preference, priority or other security agreement of any kind or nature whatsoever (including, without limitation, any conditional sale or other title retention agreement, and any lease having substantially the same effect as any of the foregoing).

"Maker" has the meaning specified in the preamble hereto.

"Mandatory Prepayment Event" means the occurrence of any of the following, in which case Maker shall prepay the Obligations in full (other than any contingent indemnification obligation for which no claim has been asserted that are expressly stated in this Note or any of the other Note Documents to survive payment in full of the Obligations):

(a)      the consummation of any financing or refinancing that is secured by the Collateral (other than the financing under this Note and the other Note Documents); or

(b)      an Accelerating Transfer occurs.

"Material Adverse Effect" means any event, circumstance or effect that results in or causes a material adverse change in any of (a) the financial condition, business, performance, operations or assets (including the Mortgaged Property) of Maker; (b) the ability of Maker to perform its obligations under any Note Document; or (c) the validity or enforceability of any Note Document or the rights and remedies of Payee thereunder.

"Maturity Date" has the meaning specified in Section 3(a) hereto.

"Mortgage" means that certain Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, made as of the date hereof, given by Maker in favor of Payee, as amended, restated, supplemented or otherwise modified from time to time.

"Mortgaged Property" has the meaning assigned, collectively, to the terms "Property" and "Personalty" in the Mortgage.

"Note" has the meaning specified in the preamble hereto.

"Note Documents" means this Note, the Mortgage and any other agreements, documents or instruments executed and/or delivered by Maker from time to time in connection with the foregoing.

"Obligations" means (a) all of the obligations of Maker to repay the entire outstanding unpaid principal amount of this Note and other amounts under this Note and the other Note Documents (including all accrued but unpaid interest and the Prepayment Fee hereunder, including interest and Prepayment Fee hereunder accruing after the commencement of any Insolvency Event, or that would have

accrued hereunder but for the commencement of such Insolvency Event, in each case irrespective of whether a claim therefor is allowed or allowable in such case or proceeding), (b) all obligations of Maker under any Note Document (including with respect to the obligation to pay interest, interest accruing after the commencement of any Insolvency Event, or that would have accrued hereunder but for the commencement of such Insolvency Event, in each case irrespective of whether a claim therefor is allowed or allowable in such case or proceeding), and (c) any and all costs and expenses (including reasonable counsel fees and reasonable and documented out-of-pocket expenses) incurred by Payee in enforcing any rights under the Note Documents.

"Payee" has the meaning specified in the preamble hereto.

"Permits" means all certificates of need, governmental licenses, authorizations, provider numbers, supplier numbers, registrations, permits, drug or device authorizations and approvals, certificates, franchises, qualifications, accreditations, consents and approvals required under all applicable laws.

"Permitted Contest" means, with respect to any tax obligation or other obligation allegedly or potentially owing from Maker to any governmental tax authority or other third party, a contest maintained in good faith by appropriate proceedings promptly instituted and diligently conducted and with respect to which such reserve or other appropriate provision, if any, as shall be required in conformity with GAAP shall have been made on the books and records and financial statements of the Maker; *provided, however,* that (a) compliance with the obligation that is the subject of such contest is effectively stayed during such challenge; (b) Maker's title to, and its right to use, the Collateral is not adversely affected thereby and Payee's Lien and priority on such Collateral are not adversely affected, altered or impaired thereby; (c) the Collateral or any part thereof or any interest therein shall not be in any danger of being sold, forfeited or lost by reason of such contest by Maker; and (d) upon a final determination of such contest, Maker shall promptly comply with the requirements thereof.

"Permitted Liens" means (a) Liens for taxes not yet due and payable or the non-payment of which is subject to a Permitted Contest, (b) the matters set forth on the Schedule B of the title insurance policy insuring the lien of the Mortgage, including, without limitation, the standard printed exceptions that are not customarily removed on the Issue Date and any and all other matters set forth on Exhibit C attached hereto; (c) zoning regulations and other Laws affecting the Mortgaged Property; (d) matters as shown on the Surveys or that would be revealed by a physical inspection of the Mortgaged Property; (e) rights of setoff or bankers' liens upon deposits of funds in favor of banks or other depository institutions, solely to the extent incurred in connection with the maintenance of deposit accounts in the ordinary course of business, (f) deposits or pledges of cash to secure statutory obligations, surety and appeal bonds and other obligations of like nature arising in the ordinary course of business, and (g) mechanic's, workmen's, materialmen's or other like Liens arising in the ordinary course of business that are being contested in good faith pursuant to a Permitted Contest.

"Permitted Tax Distributions" means, for any taxable year for which Maker is treated under the Code as a Subchapter S corporation, partnership for income tax purposes, disregarded entity for income tax purposes or otherwise disregarded under the Code for income tax purposes, dividends and/or distributions paid by Maker to its partners or members in an amount not to exceed the *product of* (a) taxable income related to such partners' or members' ownership interest in Maker *multiplied by* (b) the sum of the highest marginal federal and state income tax rates in any State in which any such partner or member is organized or resident (or, to the extent such partner or member is itself a pass-through entity or disregarded entity under the Code, the State in which an ultimate taxpaying partner or member of such partner or member is organized or resident) which were applicable in such taxable year.

"<u>Person</u>" means and includes an individual, a partnership, a joint venture, a limited liability company, a corporation or trust, an unincorporated organization, a group, a government or other department or agency thereof, or any other entity.

"<u>Prepayment Fee</u>" shall be the greater of (A) the Prepayment Ratio (as hereinafter defined) multiplied by (x − y), where (x) is the present value of all remaining payments of principal and interest including the outstanding principal due on the Maturity Date, discounted at the rate which, when compounded monthly, is equivalent to the Treasury Rate compounded semi-annually, and (y) is the amount of the principal then outstanding, or (B) one percent (1%) of the amount of the principal being prepaid. The "Prepayment Ratio" shall be a fraction, the numerator of which shall be the amount of principal being prepaid, and the denominator of which shall be the principal then outstanding. The "Treasury Rate" shall be the annualized yield on securities issued by the United States Treasury having a maturity equal to the remaining stated term of this Note, as quoted in the <u>Federal Reserve Statistical Release [H. 15 (519)]</u> under the heading "U.S. Government Securities - Treasury Constant Maturities" for the date which is five (5) Business Days prior to the date on which prepayment is being made. If this rate is not available as of the date of prepayment, the Treasury Rate shall be determined by interpolating between the yield on securities of the next longer and next shorter maturity. If the Treasury Rate is no longer published, Payee shall select a comparable rate. Payee will, upon 10 business days' prior written request, provide an estimate of the amount of the Prepayment Fee for any contemplated prepayment.

"<u>Purchase Agreement</u>" has the meaning specified in <u>Section 1</u> hereto.

"<u>Reimbursable Expenses</u>" has the meaning specified in <u>Section 3(e)</u> hereto.

"<u>Restricted Payment</u>" means any dividend or other distribution, direct or indirect, on account of any shares (or equivalent) of any class of Equity Interests of Maker, now or hereafter outstanding, any redemption, retirement, sinking fund or similar payment, purchase or other acquisition for value, direct or indirect, of any shares (or equivalent) of any class of Equity Interests of Maker, now or hereafter outstanding, and any payment made to retire, or to obtain the surrender of, any outstanding warrants, options or other rights to acquire shares of any class of Equity Interests of Maker, now or hereafter outstanding.

"<u>Transition Service Agreement</u>" shall have the meaning assigned to such term in the Purchase Agreement.

10. <u>Place of Payment</u>. All payments of principal, interest and other amounts due under this Note (as may be modified by the Disposition Agreement) shall be made by 3:00 pm Eastern Time on the date when due, in United States Dollars and in immediately available funds and shall be made free and clear of and without reduction or withholding for any taxes, unless such withholding is required by applicable law; <u>provided</u> that, if any applicable law requires the deduction or withholding of any taxes from any such payment, then the sum payable by Maker hereunder shall be increased as necessary so that after such deduction or withholding (including any amounts payable under this <u>Section</u>) Payee receives an amount equal to the sum it would have received had no such deduction or withholding of taxes been made. All payments under this Note shall be made by wire transfer of immediately available funds to the account of Payee identified on <u>Schedule 1</u> hereto or to such other account as Payee shall notify Maker in writing from time to time.

11. <u>Notices</u>. Any notice to be given hereunder shall be given in writing and shall be deemed given: (a) when received if given in person, (b) on the date of transmission if sent by facsimile or email with receipt electronically confirmed to the sender, (c) three (3) days after being deposited in the U.S. mail, certified or registered mail, postage prepaid, and (d) if sent by recognized overnight delivery

11

service, the second day following the date given to such overnight delivery service (specified for overnight delivery). All such notices shall be given to Maker and Payee at their respective address set forth below:

<table>
<tr><td>If to Maker:</td><td>c/o SRC Hospital Investments II, LLC<br>898 N. Sepulveda Blvd., Suite 500<br>El Segundo, CA 90245<br>Attn: Nick Orzano</td></tr>
<tr><td></td><td>With a Copy to:</td></tr>
<tr><td></td><td>Duane Morris LLP<br>190 South LaSalle Street, Suite 3700<br>Chicago, Illinois 60603<br>Attn: N. Paul Coyle</td></tr>
<tr><td>If to Payee:</td><td>Tenet Business Services Corporation<br>c/o Tenet Healthcare Corporation<br>1445 Ross Ave., Suite 1400<br>Dallas, TX 75202<br>Attention: Michael Maloney and Steven Schaefer</td></tr>
<tr><td></td><td>With Copies to:</td></tr>
<tr><td></td><td>Alston & Bird LLP<br>1201 W. Peachtree Street<br>Atlanta, Georgia 30309<br>Attention: J. Mark Ray and Russell Hilton</td></tr>
</table>

Any party hereto may designate additional or different addresses for notices or communications by notice to the other party hereto in accordance with the foregoing.

12.    Expense Reimbursement. Maker promises to pay, no later than 7 days following written demand therefor, all reasonable third party documented out-of-pocket costs and expenses, including reasonable outside attorney's fees, and all other Reimbursable Expenses, incurred by Payee in connection with the collection and enforcement of this Note. Payment of expenses shall be governed by the terms of the Disposition Agreement provided Maker complies with the terms thereof.

13.    Maximum Rate. In no event shall the amount of interest due or payable under this Note exceed the maximum rate of interest allowed by applicable law and, in the event any such payment is inadvertently paid by Maker or inadvertently received by Payee, then such excess sum shall be credited as a payment of principal hereunder. It is the express intent of the parties hereto that Maker not pay and Payee not receive, directly or indirectly, in any manner whatsoever, interest in excess of that which may be lawfully paid by Maker under applicable law. If Maker makes any payment of interest hereunder in excess of such lawful rate, such excess shall be applied to reduce the outstanding principal amount of this Note.

14.    Independent Obligations. The obligations of Maker hereunder are independent and separate obligations from the obligations of Maker arising under the other Note Documents and all obligations of Maker hereunder shall be paid without setoff, defense, or counterclaim for any claim

arising under the other Note Documents or out of the transactions contemplated thereby, except as expressly provided in the Disposition Agreement.

15.    Waiver of Presentment, Demand and Dishonor.  Maker hereby waives presentment for payment, protest, demand, notice of protest, notice of nonpayment and diligence with respect to this Note, and waives and renounces all rights to the benefits of any statute of limitations or any moratorium, appraisement, exemption, or homestead now provided or that hereafter may be provided by any federal or applicable state statute, including but not limited to exemptions provided by or allowed under the United States Bankruptcy Code, both as to itself and as to all of its property, whether real or personal, against the enforcement and collection of the Indebtedness hereunder and any and all extensions, renewals, and modifications hereof.

16.    Replacement.  Upon receipt of evidence reasonably satisfactory to Maker of the loss, theft, destruction or mutilation of this Note and, in the case of any such loss, theft or destruction of this Note, upon receipt of an indemnity reasonably satisfactory to Maker or, in the case of any such mutilation, upon the surrender and cancellation of this Note, Maker shall execute and deliver, in lieu thereof, a new Note the same terms and conditions and dated the date of such lost, stolen, destroyed or mutilated Note.  Any Note in lieu of which any such new Note has been so executed and delivered by Maker shall not be deemed to be an outstanding Note and shall be deemed cancelled.

17.    Amendment and Waiver.  All amendments to this Note, and any waiver or consent of Payee, must be in writing and signed by Payee and Maker.  No delay or failure on the part of Payee in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Payee of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy.

18.    Assignment and Transfer.  The rights and obligations of Maker and Payee shall be binding upon and benefit the successors and assigns and transferees of Maker and Payee, as applicable; provided that (i) in no event may Maker assign this Note or any of its rights or obligations hereunder without Payee's prior written consent, which may be given or withheld in Payee's sole and absolute discretion, and (ii) Payee may assign this Note and its rights and obligations hereunder to any Person without consent of Maker.  Upon any assignment or other transfer of this Note by Payee, Maker shall issue a replacement Note with the appropriate legends to the transferee and such transferee shall become a "Payee" for purposes hereof.

19.    Governing Law.  This Note shall be governed by and construed in accordance with the laws of the State of Illinois without giving effect to any choice or conflict of law provision or rule (whether of the State of Illinois or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Illinois.

20.    Waiver of Jury Trial.  OF MAKER AND PAYEE HEREBY KNOWINGLY AND WILLINGLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO KNOWINGLY AND WILLINGLY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HAVE BEEN INDUCED TO ENTER INTO (OR ACCEPT)

THIS NOTE BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

21.    Submission to Jurisdiction. OF MAKER AND PAYEE HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES NO ACTION, LITIGATION OR PROCEEDING OF ANY KIND OR DESCRIPTION, WHETHER IN LAW OR EQUITY, WHETHER IN CONTRACT OR IN TORT OR OTHERWISE, SHALL BE COMMENCED IN ANY WAY RELATING TO THIS NOTE, IN ANY FORUM OTHER THAN THE STATE COURT SITTING IN CHICAGO, ILLINOIS OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, AND ANY APPELLATE COURT FROM ANY THEREOF, IN EACH CASE ARISING OUT OF OR RELATING TO THIS NOTE, AND EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS AND AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH ACTION, LITIGATION OR PROCEEDING SHALL BE HEARD AND DETERMINED IN SUCH ILLINOIS STATE COURT OR, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN SUCH FEDERAL COURT. EACH OF THE PARTIES HERETO AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION, LITIGATION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.

22.    Integration; Conflict; No Strict Construction. This Note represents the agreement of Maker and Payee with respect to the subject matter hereof and supersedes all negotiations and prior writings with respect to the subject matter hereof and thereof, and there are no promises, undertakings, representations or warranties by Maker and Payee relative to subject matter hereof that are not expressly set forth or referred to herein or in the other Note Documents. The parties hereto have participated jointly in the negotiation and drafting of this Note. In the event an ambiguity or question of intent or interpretation arises, this Note shall be construed as if drafted jointly by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Note. Any provision of this Note which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or thereof in such jurisdiction, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

23.    Construction. The headings of the various sections and subsections of this Note have been inserted for convenience only and shall not in any way affect the meaning or construction of any of the provisions hereof. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation." Unless the context otherwise requires, words in the singular include the plural and words in the plural include the singular. The words "herein," "hereof" and "hereunder," and words of similar import, shall be construed to refer to this Note in its entirety and not to any particular provision of this Note unless the context shall otherwise require. All references herein to Sections, paragraphs, clauses, subclauses and Exhibits shall be deemed references to Sections, paragraphs, clauses and subclauses of, and Exhibits to, this Note unless the context shall otherwise require. Time is of the essence of this Note.

24.    Intentionally omitted.

25.    Indemnification; Special Damages. Maker agrees to indemnify and hold harmless the Payee and its Affiliates, and each of their respective employees, partners, representatives, shareholders, officers, directors, trustees, agents, advisors, other representatives thereof and Persons having control

thereof (any of the foregoing shall be an "Indemnified Party") from and against any and all claims, liabilities, losses, damages, actions, reasonable attorneys' fees and reasonable and documented out-of-pocket expenses (as such fees and out-of-pocket expenses are incurred) and demands by any party (regardless of whether any such Indemnified Party is a party thereto and regardless of whether such matter is initiated by a third party, Maker or any of its equity holders, affiliates or creditors), including the costs of investigating and defending such claims (all of the foregoing, collectively, the "Indemnified Liabilities"), in each case arising out of or resulting from (a) any breach or alleged breach by Maker of any representation or warranty made hereunder or any other Note Document or the breach of any covenant hereunder or under any other Note Document; (b) any violation of, non-compliance with, or any liability under any agreements or instruments related to any of the foregoing, resulting from entering into the Note Documents or any action taken by Payee pursuant hereto or thereto; (c) any claims against any Indemnified Party by any direct or indirect shareholder or other investor resulting from entering into the Note Documents or any action taken by Payee pursuant hereto or thereto; (d) any taxes (which shall, for the avoidance of doubt, not include any income or transfer taxes), fees, costs and other charges payable in connection with the Note, or the execution, delivery, and enforcement of the Note Documents (including, in each case, any amendments thereto (subject, for the avoidance of doubt, to the definition of Reimbursable Expenses) or waivers of any of the provisions thereof); (e) any claim in respect of any collateral securing the Obligations, including without limitation, any claim in connection with the ownership, use or operation of the Mortgaged Property or any part thereof from and after the Effective Date (as defined in the Mortgage); and (f) the actual or alleged presence of Hazardous Materials relating in any way to any real property (including the Mortgaged Property) owned, leased or operated, at any time, by Maker; the generation, storage, transportation, handling, release or threat of release of Hazardous Materials by Maker at any location; the non-compliance by Maker or any lessee of a Maker with any Environmental Law (including applicable permits thereunder) applicable to any real property (including the Mortgaged Property); or any claim asserted in any way to any real property (including the Mortgaged Property) at any time owned, leased or operated by Maker. The parties' indemnification obligations concerning Hazardous Materials and Environmental Laws with respect to the ownership and use of the Property prior to the date of this Note shall be governed by the terms of the Purchase Agreement. Notwithstanding the foregoing, no Maker shall be required to indemnify any Indemnified Party pursuant this Section if and to the extent that the Indemnified Liability in respect of which indemnity is sought arises out of the gross negligence or willful misconduct of the Indemnified Party seeking indemnification hereunder. No claim may be made by Maker against Payee or any other Indemnified Party or by Payee or any other Indemnified Party against Maker for any special, speculative, indirect, exemplary, punitive or consequential damages (collectively "Special Damages") in respect of any breach or wrongful conduct (whether the claim therefor is based on contract, tort or duty imposed by law) in connection with, arising out of, or in any way related to this Note or the transactions contemplated or relationship established by this Note, any other Note Document or any other document executed and/or delivered in connection therewith, or any act, omission or event occurring in connection herewith or therewith; and to the fullest extent permitted by applicable law each of Maker and Payee hereby waives, releases and agrees not to sue upon any such claim for Special Damages, whether or not accrued and whether or not known or suspected to exist in its favor. The foregoing provisions of this Section 25 shall not apply to any matters or conditions identified in the Purchase Agreement (including but not limited to the Exhibits and Schedules attached thereto, and any underlying document referenced therein) or to any matter or condition which otherwise existed prior to the Issue Date.

26.    Reinstatement. Notwithstanding anything herein to the contrary, this Note shall continue in full force and effect or be revived, as the case may be, if any payment by or on behalf of Maker or any other Note Party is made in respect of the Obligations and such payment or any part thereof is subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, receiver or any other party, in connection with any proceeding under any bankruptcy, insolvency, reorganization or debtor relief Laws or otherwise, all as if such payment had not been made and whether

or not Payee is in possession of or has released this Note or any other Note Document, and regardless of any prior revocation, rescission, termination or reduction of any Note Document or the Obligations. The obligations of Maker under this paragraph shall survive termination of this Note.

27.   Relation to Purchase Agreement. Notwithstanding anything to the contrary in this Note: (a) the representations, warranties, covenants, indemnities, and other obligations of Maker under this Note and the other Note Documents shall not diminish, supersede, or discharge Payee from the representations, warranties, covenants, indemnities, and other obligations of Payee under the Purchase Agreement and Ancillary Documents (as defined in the Purchase Agreement), and (b) nothing in this Note or the other Note Documents shall impose any obligation or liability on Maker for any Excluded Liability (as defined in the Purchase Agreement).

28.   Exculpation.

(a)   Notwithstanding anything to the contrary contained in this Note, upon the occurrence of an Event of Default, except as provided in this Section 28, Payee will look solely to the Collateral and the security under the Note Documents for the repayment of the Obligations and will not enforce a deficiency judgment or other recourse judgement against Maker for payment of the Obligations, provided, however, nothing contained herein shall limit Payee's right to obtain a foreclosure judgment against Maker. However, nothing contained in this Section shall limit the rights of Payee to proceed against Maker on a full recourse basis: (i) to recover damages for fraud, material misrepresentation, material breach of warranties set forth on Exhibit A (1) through (7) or material waste; (ii) to recover any condemnation proceeds or insurance proceeds or other similar funds which have been misapplied by Maker or which, under the terms of the Mortgage, should have been paid to Payee; (iii) to recover Indemnified Liabilities arising under Section 25(f) of this Note relating to Hazardous Substances and Environmental Laws and any other damages, costs and expenses arising from, or in connection with any breach of Section 5.11 of the Mortgage pertaining to Hazardous Substances and Environmental Laws; and/or (iv) to recover costs and damages arising from Maker's failure to pay taxes pursuant to Section 5.2 of the Mortgage or insurance premiums pursuant to Section 5.4 of the Mortgage.

(b)   The limitation of liability set forth in this Section 28 shall not apply and the Obligations shall be fully recourse in the event that Borrower commences a voluntary bankruptcy or insolvency proceeding or an involuntary bankruptcy or insolvency proceeding is commenced against Borrower and is not dismissed within 90 days of filing. In addition, this agreement shall not waive any rights which Payee would have under any provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Obligations or to require that the Collateral shall continue to secure all of the Obligations.

(c)   Notwithstanding the foregoing, the Obligations shall be fully recourse to the Borrower in the event there is a Mandatory Prepayment Event.

*     *     *

IN WITNESS WHEREOF, Maker has executed and delivered this Note on the Issue Date.

**MAKER**

**WESTLAKE PROPERTY HOLDINGS, LLC**, a Delaware limited liability company

By: _____
    Name: Nicholas Orzano
    Title: Authorized Signatory

*[Signature Page – Senior Secured Promissory Note]*

## Schedule I

**Payee Account Information**

**[CONFIRM ACCOUNT INFORMATION]**
Bank:  Bank of America
ABA:  026-009-593
Beneficiary:  Tenet Healthcare Corporation
Account:  12353-13182
REF:  SRC/Pipeline Seller Note

## Exhibit A

### Representations and Warranties

(1) Maker (i) is a Delaware limited liability company, is duly organized, validly existing and in good standing under the laws of the State of Delaware, is qualified to do business in the State of Illinois and is not organized under any other jurisdiction, and (ii) has all powers and all Permits necessary or desirable in the operation of its business as presently conducted or as proposed to be conducted, except where the failure to have such powers or Permits would not reasonably be expected to have a Material Adverse Effect.

(2) The execution, delivery and performance by Maker of the Note Documents to which it is a party (a) are within its powers, have been duly authorized by all necessary action pursuant to its organizational documents, (b) require no material order, consent, approval, license, authorization or validation of, or filing, recording or registration with, or exemption by, or any other action of, any Governmental Authority or other Person (except for (x) those that have otherwise been obtained or made on or prior to the Issue Date and which remain in full force and effect on the Issue Date and (y) those, the failure of which to receive, would not reasonably be expected to have a Material Adverse Effect), and (c) do not violate, conflict with or cause a breach or a default under (i) any law applicable to Maker or any of the organizational documents of Maker, or (ii) any agreement or instrument binding upon it (other than any agreement or instrument assumed, assigned or otherwise acquired from Payee or any of its Affiliates), except for such violations, conflicts, breaches or defaults as would not, with respect to this clause (c), reasonably be expected to have a Material Adverse Effect.

(3) Each of the Note Documents to which Maker is a party constitutes a valid and binding agreement or instrument of Maker, enforceable against Maker in accordance with its respective terms, except as the enforceability thereof may be limited by bankruptcy, insolvency or other similar laws relating to the enforcement of creditors' rights generally and by general equitable principles. The terms and conditions of the Note Documents, including, without limitation, the Prepayment Premium and default interest rate, are commercially reasonable and constitute good faith and fair dealing on the part of Payee.

(4) Except as disclosed to Payee in writing prior to the Issue Date, there is no action, suit or proceeding before any court, mediator, arbitrator or Governmental Authority, pending against, or to Maker's knowledge threatened in writing against, Maker that, (a) individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect, or (b) in any manner draws into question the validity of any of the Note Documents. The foregoing provisions of subclause (a) of this clause (4) shall not apply to any matters or conditions identified in the Purchase Agreement (including but not limited to the Exhibits and Schedules attached thereto, and any underlying document referenced therein) or to any matter or condition which otherwise existed prior to the Issue Date.

(5) The Obligations of Maker under the Note Documents rank senior in priority of payment to all Indebtedness of Maker.

(6) Maker is not an "investment company" or a company "controlled" by an "investment company" or a "subsidiary" of an "investment company," all within the meaning of the Investment Company Act of 1940.

(7) Maker is not (i) in violation of any Anti-Terrorism Law, (ii) engaging in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions

set forth in any Anti-Terrorism Law, (iii) a Blocked Person, or is controlled by a Blocked Person, (iv) acting for or on behalf of a Blocked Person, (v) associated with a Blocked Person or (vi) providing material, financial or technical support or other services to or in support of acts of terrorism of a Blocked Person.  Neither Maker nor, to the knowledge of Maker, any of its agents acting or benefiting in any capacity in connection with the transactions contemplated by this Note, (A) conducts any business or engages in making or receiving any contribution of funds, goods or services to or for the benefit of any Blocked Person, or (B) deals in, or otherwise engages in any transaction relating to, any property or interest in property blocked pursuant to Executive Order No. 13224, any similar executive order or other Anti-Terrorism Law.

(8) Maker has no subsidiaries or employees.

## Exhibit B

## Affirmative Covenants

(1)  Maker will preserve, renew and keep in full force and effect its existence.

(2)  Maker (a) will pay and discharge, at or prior to maturity, all of their respective obligations and liabilities, including tax liabilities (including, without limitation, as required under Paragraph 5.2 of any Mortgage), except for such obligations and/or liabilities (i) that may be the subject of a Permitted Contest, and (ii) the nonpayment or nondischarge of which could not reasonably be expected to have a Material Adverse Effect or result in a Lien against any Collateral, except for Permitted Liens, and (b) will maintain, in accordance with GAAP, appropriate reserves for the accrual of all of their respective obligations and liabilities.  Maker will comply in all material respects with the requirements of all applicable laws and all contractual obligations.  The foregoing provisions of this clause (2) shall not apply to any matters or conditions identified in the Purchase Agreement (including but not limited to the Exhibits and Schedules attached thereto, and any underlying document referenced therein) or to any matter or condition which otherwise existed prior to the Issue Date.

(3)  Maker will give prompt written notice to Payee (a) of any litigation or governmental proceedings pending or threatened (in writing) against Maker which would reasonably be expected to have a Material Adverse Effect or which in any manner calls into question the validity or enforceability of this Note or the other Note Documents, (b) upon Maker becoming aware of the existence of any default under the Note Documents or any Event of Default, (c) of any strikes or other labor disputes pending or, to Maker's knowledge, threatened in writing against Maker.  In the case of any notice given pursuant to foregoing, Maker shall contemporaneously deliver a certificate of a senior officer of Maker specifying the nature and period of existence of such condition, event or change, or specifying the notice given and action taken by any such Person and the nature of such claimed Event of Default, default, event or condition, and what action Maker have taken, are taking and propose to take with respect thereto.

**Exhibit C**

**Permitted Liens**

None.