# **EXHIBIT 3**

```
*--------------------------------------------------------*
Official Receipt for Recording in:

        Cook County Recorder of Deeds
        118 N. Clark

        Chicago, Illinois 60610

    Issued To:
        DEGRAFF




                    Recording Fees
*--------------------------------------------------------*
Document                                        Recording
Description    Number      Book/Page             Amount
*--------------------------------------------------------*
RELS        1903206371                          $68.00
RHSPS                                            $9.00
RPRF                                             $1.00
DEED        1903206372                          $62.00
RHSPS                                            $9.00
RPRF                                             $1.00
RELS        1903206373                          $40.00
RELS        1903206374                          $50.00
RHSPS                                            $9.00
RPRF                                             $1.00
DEED        1903206375                          $50.00
RHSPS                                            $9.00
RPRF                                             $1.00
MISC        1903206376                          $90.00
RHSPS                                            $9.00
RPRF                                             $1.00
DEED        1903206377                          $92.00
RHSPS                                            $9.00
RPRF                                             $1.00
DEEDAFF     1903206378                          $80.00
AFFIDAV                                          $2.00
RHSPS                                            $9.00
RPRF                                             $1.00
MORT        1903206379                         $126.00
RHSPS                                            $9.00
RPRF                                             $1.00
                                             ----------
                                              $740.00
                    Collected Amounts
*--------------------------------------------------------*
    Payment
    Type                                        Amount
*--------------------------------------------------------*
Check          80812                          $740.00
                                             ----------
                                              $740.00


                                             ----------
            Change Due    :                     $.00

                    Thank You
        EDWARD M. MOODY - Recorder of Deeds
```

3

# Illinois Anti-Predatory Lending Database Program

## Certificate of Exemption



**Report Mortgage Fraud
844-768-1713**

Doc# 1903206379 Fee $126.00

RHSP FEE:$9.00 RPRF FEE: $1.00

EDWARD M. MOODY

COOK COUNTY RECORDER OF DEEDS

DATE: 02/01/2019 03:55 PM  PG:  1 OF 38

---

The property identified as:     **PIN:** 15-10-202-001-0000

**Address:**
**Street:**     619 N 15TH AVENUE
**Street line 2:**
**City:** MELROSE PARK          **State:** IL          **ZIP Code:** 60160

**Lender:** VHS OF ILLINOIS, INC

**Borrower:** WESTLAKE PROPERTY HOLDINGS, LLC

**Loan / Mortgage Amount:** $17,000,000.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is commercial property.

**Certificate number:**  B96396EF-9507-4923-8D19-FEA5868CA72F          **Execution date:** 1/23/2019

S
P
S
SC
INT



**Prepared by:**
Steve Collier, Esq.
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309

**After Recording, Return to:**
MBL Title
1022 E. 15TH Street
Plano, Texas 75074
Attn: Adam Rachavong

Space above this line for Recorder's Use

Permanent Index Number:  See Exhibit "A"

## MORGAGE, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

THIS MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES, FINANCING STATEMENT AND FIXTURE FILING (this "Mortgage") is made as of the 28th day of January, 2019 by **WESTLAKE PROPERTY HOLDINGS, LLC,** a Delaware limited liability company (hereinafter called the "Mortgagor"), having an address c/o 898 N. Sepulveda Blvd., Suite 500, El Segundo, CA 90245, Attention: Nick Orzano, to **VHS OF ILLINOIS, INC.,** a Delaware corporation ( the "Mortgagee" or "Lender"), having an office at 1445 Ross Ave., Suite 1400, Dallas, TX 75202, Attention: Michael Maloney and Steven Schaefer.

1. GRANT.

     1.1 The Property. For the purpose of securing payment and performance of the Secured Obligations defined in Paragraph 2 below, Mortgagor hereby irrevocably and unconditionally grants, conveys, transfers, mortgages and assigns to Mortgagee, upon the statutory mortgage condition for breach of which this Mortgage is subject to foreclosure as provided by law, with mortgage covenants and right of entry and possession, all estate, right, title and interest which Mortgagor now has or may later acquire in the following property (all or any part of such property, or any interest in all or any part of it, together with the Personalty (as hereinafter defined) being hereinafter collectively referred to as the "Property"):

         (a) The real property located in the County of Cook, State of Illinois, as described in Exhibit A hereto (the "Land");

         (b) All buildings, structures, improvements, fixtures and appurtenances now or hereafter placed on the Land, and all apparatus and equipment now or hereafter attached in any manner to the Land or any building on the Land, including all pumping plants, engines, pipes, ditches and flumes, and also all gas, electric, cooking, heating, cooling, air conditioning, lighting, refrigeration and plumbing fixtures and equipment (collectively, the "Improvements");

         (c) All easements and rights of way appurtenant to the Land; all crops growing or to be grown on the Land (including all such crops following severance from the Land); all standing timber upon the Land (including all such timber following severance from the Land); all development rights or credits and air rights; all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Land) and shares of stock pertaining to such water or water rights, ownership of which affect the Land; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Land;

         (d) All existing and future leases, subleases, subtenancies, licenses, occupancy agreements and concessions relating to the use and enjoyment of all or any part of the Land or the Improvements, and any and all guaranties and other agreements relating to or made in connection with any of the foregoing;

         (e) All proceeds, including all claims to and demands for them, of the voluntary or involuntary conversion of any of the Land, Improvements, or the other property described above into cash or liquidated claims, including proceeds of all present and future fire, hazard or casualty insurance policies, whether or not such policies are required by Mortgagee, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or the other property described above or any part of them; and

LEGAL02/38575478v4

(f)    All proceeds of, additions and accretions to, substitutions and replacements for, and changes in any of the property described above.

1.2    Fixture Filing.  This Mortgage constitutes a financing statement filed as a fixture filing under the Illinois Uniform Commercial Code, as amended or recodified from time to time (the "Uniform Commercial Code"), covering any Property which now is or later may become a fixture attached to the Land or any building located thereon.

## 2. THE SECURED OBLIGATIONS.

2.1    Purpose of Securing.  Mortgagor makes the grant, conveyance, transfer and assignment set forth in Paragraph 1, makes the irrevocable and absolute assignment set forth in Paragraph 3, and grants the security interest set forth in Paragraph 4, all for the purpose of securing the following obligations (the "Secured Obligations") in any order of priority that Mortgagee may choose:

(a) Payment and performance of all obligations of Mortgagor to Mortgagee arising under the following instruments or agreements (collectively, with this Mortgage, the "Secured Documents"):

(i)    that certain Senior Secured Promissory Note dated as of January 28, 2019, payable by Mortgagor as maker in the stated principal amount of Ten Million and 00/100 Dollars ($10,000,000.00) to the order of Mortgagee (the "Seller Note");

(ii)    that certain promissory note dated as of January 28, 2019, payable by Mortgagor, Pipeline – West Suburban Medical Center, LLC and Pipeline – Weiss Memorial Hospital, LLC, and Pipeline – Westlake Hospital, LLC, each a Delaware limited liability company (affiliates of Mortgagor) as maker in the stated principal amount of Seventeen Million and 00/100 Dollars ($17,000,000.00) to the order of Mortgagee (the "Transition Note'); and

(iii)    that certain Consulting Agreement dated as of January 28, 2019, between Mortgagor and Mortgagee (the "Consulting Agreement"); and

(iv)    that certain Disposition Agreement dated as of January 28, 2019, between Mortgagor and Mortgagee (the "Disposition Agreement").

The final maturity date of the Transition Note, and obligations under the Consulting Agreement and Disposition Agreement, is July 28, 2021.  The final maturity date of the Seller Note is January 28, 2022.

This Mortgage also secures payment of all obligations of Mortgagor under the Secured Documents which arise after any of the Secured Documents is extended, renewed, modified or amended pursuant to any written agreement between Mortgagor and

-3-

Mortgagee, and all obligations of Mortgagor under any successor agreement or instrument which restates and supersedes the Secured Documents in its entirety;

(b) Payment and performance of all obligations of Mortgagor under this Mortgage;

This Mortgage secures, among other obligations which comprise the Secured Obligations, loans and advances made or to be made by Mortgagee to Mortgagor from time to time, plus interest thereon as provided in the Secured Documents, and any disbursements made for the payment of taxes, special assessments or insurance on the Property or any other amounts advanced or made by Mortgagee, with interest on such disbursements. Such loans or advances constitute "revolving credit" as defined in 205 ILCS 5/5d and 815 ILCS 205/4.1. All future advances made by Mortgagee for the benefit of Mortgagor or Mortgagor from time to time under this Mortgage or the Secured Documents and whether or not such advances are obligatory or are made at the option of Mortgagee, made at any time from and after the date of this Mortgage, and all interest accruing thereon, shall be equally secured by this Mortgage and shall have the same priority as all amounts, if any, advanced as of the date hereof and shall be subject to all of the terms and provisions of this Mortgage. This Mortgage shall be valid and have priority to the extent of the full amount of the Secured Obligations over all subsequent liens and encumbrances, including statutory liens, excepting solely taxes and assessments levied on the Property given priority by law.

2.2  Terms of Secured Obligations. All persons who may have or acquire an interest in all or any part of the Property will be considered to have notice of, and will be bound by, the terms of the Secured Documents described in Paragraph 2.1(a) and each other agreement or instrument made or entered into in connection with each of the Secured Obligations. These terms include any provisions in the Secured Documents which permit borrowing, repayment and reborrowing, or which provide that the interest rate on one or more of the Secured Obligations may vary from time to time.

3. ASSIGNMENT OF RENTS.

3.1  Assignment. Mortgagor hereby irrevocably, absolutely, presently and unconditionally assigns to Mortgagee all rents, royalties, issues, profits, revenue, income and proceeds of the Property, whether now due, past due or to become due, including all prepaid rents and security deposits (collectively, the "Rents"), and confers upon Mortgagee the right to collect such Rents with or without taking possession of the Property. In the event that anyone establishes and exercises any right to develop, bore for or mine for any water, gas, oil or mineral on or under the surface of the Property, any sums that may become due and payable to Mortgagor as bonus or royalty payments, and any damages or other compensation payable to Mortgagor in connection with the exercise of any such rights, shall also be considered Rents assigned under this Paragraph. THIS IS AN ABSOLUTE ASSIGNMENT, NOT AN ASSIGNMENT FOR SECURITY ONLY.

3.2  Grant of License. Notwithstanding the provisions of Paragraph 3.1, Mortgagee hereby confers upon Mortgagor a license ("License") to collect and retain the Rents

-4-

as they become due and payable, so long as no Event of Default, as defined in Paragraph 6.2, shall exist and be continuing. If an Event of Default has occurred and is continuing, Mortgagee shall have the right, which it may choose to exercise in its sole discretion, to terminate this License upon notice to Mortgagor, and without regard to the adequacy of the security for the Secured Obligations.

4.  SECURITY INTEREST IN RELATED PERSONALTY.

4.1  Grant of Security Interest. Mortgagor grants to Mortgagee a security interest in, and pledges and assigns to Mortgagee, all of Mortgagor's right, title and interest, whether presently existing or hereafter acquired in and to all of the following property (collectively, the "Personalty"):

(a)  All furniture (including hospital beds), furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the Uniform Commercial Code, whether tangible or intangible, other than Fixtures (as defined below), which are now or hereafter owned by Borrower, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "Personal Property"), together with the right, title and interest of Borrower in and to any of the Personal Property, to the extent permitted by applicable law, and to the extent assignable without impairing the enforceability thereof, which may be subject to any security interests, as defined in the Uniform Commercial Code, superior in lien to the lien of this Security Instrument and all proceeds and products of the above;

(b)  All "equipment," as such term is defined in Article 9 of the Uniform Commercial Code, now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment (including medical equipment), heating, ventilation or air conditioning equipment, garbage equipment and apparatus, incinerators, boilers, furnaces, motors, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "Equipment");

(c)  All Equipment now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the

operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, plumbing, laundry incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "Fixtures");

(d)   All crops growing or to be grown on the Land (and after severance from the Land); all standing timber upon the Land (and after severance from the Land); all sewer, water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Land) and all evidence of ownership rights pertaining to such water or water rights, ownership of which affect the Land; and all architectural and engineering plans, specifications and drawings which arise from or relate to the Land or the Improvements;

(e)   All certificates of need, permits, licenses and claims to or demands for the voluntary or involuntary conversion of any of the Land, Improvements, or other Property into cash or liquidated claims, proceeds of all present and future fire, hazard or casualty insurance policies relating to the Land and the Improvements, whether or not such policies are required by Mortgagee, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or other Property or any part of them; and

(f)   All substitutions, replacements, additions, and accessions to any of the above property, and all books, records and files relating to any of the above property, including, without limitation, all general intangibles related to any of the above property and all proceeds of the above property.

5. RIGHTS AND DUTIES OF THE PARTIES.

5.1   Representations and Warranties.   Mortgagor represents and warrants that Mortgagor lawfully possesses and holds fee simple title to all of the Land and the Improvements, subject to the encumbrances shown in the mortgage title insurance commitment delivered to Mortgagee, unless Mortgagor's present interest in the Land and the Improvements is described in Exhibit A as a leasehold interest, in which case Mortgagor lawfully possesses and holds a leasehold interest in the Land and the Improvements as stated in Exhibit A.

-6-

5.2 <u>Taxes, Assessments, Liens and Encumbrances</u>.  Mortgagor shall pay prior to delinquency all taxes, levies, charges and assessments, including assessments on appurtenant water stock, imposed by any public or quasi-public authority or utility company which are (or if not paid, may become) a lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it.  Mortgagor shall immediately discharge any lien on the Property which Mortgagee has not consented to in writing, and shall also pay when due each obligation secured by or reducible to a lien, charge or encumbrance which now or hereafter encumbers or appears to encumber all or part of the Property, whether the lien, charge or encumbrance is or would be senior or subordinate to this Mortgage.  If Mortgagor desires to contest a lien, Mortgagor shall have the right to bond such lien so that it no longer encumbers the Property.

5.3 <u>Damages and Insurance and Condemnation Proceeds</u>.

(a)  Mortgagor hereby absolutely and irrevocably assigns to Mortgagee, and authorizes the payor to pay to Mortgagee, the following claims, causes of action, awards, payments and rights to payment (collectively, the "Claims"):

(i)  all awards of damages and all other compensation payable directly or indirectly because of a condemnation, proposed condemnation or taking for public or private use which affects all or part of the Property or any interest in it;

(ii)  all other awards, claims and causes of action, arising out of any breach of warranty or misrepresentation affecting all or any part of the Property, or for damage or injury to, or defect in, or decrease in value of all or part of the Property or any interest in it;

(iii)  all proceeds of any insurance policies payable because of loss sustained to all or part of the Property, whether or not such insurance policies are required by Mortgagee; and

(iv)  all interest which may accrue on any of the foregoing.

(b)  Mortgagor shall immediately notify Mortgagee in writing if:

(i)  any damage occurs or any injury or loss is sustained to all or part of the Property, or any action or proceeding relating to any such damage, injury or loss is commenced; or

(ii)  any offer is made, or any action or proceeding is commenced, which relates to any actual or proposed condemnation or taking of all or part of the Property.

If Mortgagee chooses to do so, it may in its own name appear in or prosecute any action or proceeding to enforce any cause of action relating to a Claim, and it may make any

-7-

compromise or settlement of the action or proceeding. Mortgagee, if it so chooses, may participate in any action or proceeding relating to condemnation or taking of all or part of the Property, and may join Mortgagor in adjusting any loss covered by insurance.

(c)    All proceeds of the Claims assigned to Mortgagee under this Paragraph shall be paid to Mortgagee. In each instance, Mortgagee shall apply those proceeds first toward reimbursement of all of Mortgagee's costs and expenses of recovering the proceeds, including attorneys' fees. Mortgagor further authorizes Mortgagee, at Mortgagee's option and in Mortgagee's sole discretion, and regardless of whether there is any impairment of the Property, (i) to apply the balance of such proceeds, or any portion of them, to pay or prepay some or all of the Secured Obligations in such order or proportion as Mortgagee may determine, or (ii) to hold the balance of such proceeds, or any portion of them, in an interest-bearing account to be used for the cost of reconstruction, repair or alteration of the Property, or (iii) to release the balance of such proceeds, or any portion of them, to Mortgagor. If any proceeds are released to Mortgagor, Mortgagee shall not be obligated to see to, approve or supervise the proper application of such proceeds. If the proceeds are held by Mortgagee to be used to reimburse Mortgagor for the costs of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition, or such other condition as Mortgagee may approve in writing. Mortgagee may, at Mortgagee's option, condition disbursement of the proceeds on Mortgagee's approval of such plans and specifications prepared by an architect satisfactory to Mortgagee, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen, and such other evidence of costs, percentage of completion of construction, application of payments, and satisfaction of liens as Mortgagee may reasonably require. Notwithstanding the foregoing, if no Event of Default exists and if the proceeds do not exceed $200,000.00, Mortgagee shall make proceeds available to Mortgagor for restoration of the Property pursuant to reasonable disbursement procedures.

5.4 <u>Insurance</u>. Mortgagor shall provide and maintain in force at all times all risk property damage insurance (including without limitation windstorm coverage, and hurricane coverage as applicable) on the Property, general liability insurance and such other type of insurance on the Property as may be required by Mortgagee in its reasonable judgment. At Mortgagee's request, Mortgagor shall provide Mortgagee with a certificate of insurance setting forth the coverage, the limits of liability, the carrier, the policy number and the expiration date. Each such policy of insurance shall be in an amount, for a term, and in form and content satisfactory to Mortgagee, and shall be written only by companies approved by Mortgagee. In addition, each policy of hazard insurance shall include a loss payable endorsement in favor of Mortgagee. Mortgagee approves the insurance described on <u>Exhibit B</u> attached hereto. Unless Mortgagor provides evidence of the insurance coverage required by this Paragraph, Mortgagee may purchase insurance at Mortgagor's expense to protect Mortgagee's interest in the Property. This insurance may but need not, protect Mortgagor's interests. The coverage that Mortgagee purchases may not pay any claim that Mortgagor makes or any claim that is made against Mortgagor in connection with the Property. Mortgagor may later cancel any insurance purchased by Mortgagee, but only after providing evidence that Mortgagor has obtained insurance as required by this Paragraph. If Mortgagee purchases insurance for the Property,

-8-

Mortgagor will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges Mortgagee may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to outstanding principal balance of the Secured Obligations. The costs of the insurance may be more than the cost of insurance Mortgagor may be able to obtain on its own.

5.5   Maintenance and Preservation of Property.

(a)   Mortgagor shall keep the Property in good condition and repair and shall not commit or allow waste of the Property. Mortgagor shall not remove or demolish the Property or any part of it, or alter, restore or add to the Property, or initiate or allow any change in any zoning or other land use classification which affects the Property or any part of it, except with Mortgagee's express prior written consent in each instance. Mortgagor shall not be required to repaint or recarpet the Improvements or to resurface, replace, repair or restore any parking areas, sidewalks, driveways, or hardscapes or landscaping, except as a result of a casualty as described herein.

(b)   If no Event of Default exists and all or part of the Property becomes damaged or destroyed as a result of a casualty, Mortgagor shall upon receipt of insurance proceeds commence and thereafter diligently repair and/or restore the Property to completion in a good and workmanlike manner in accordance with sound building practices, provided Mortgagee agrees to disburse insurance proceeds or other sums to pay costs of the work of repair or reconstruction under Paragraph 5.3.

(c)   Mortgagor shall not commit or allow any act upon or use of the Property which would violate any applicable law or order of any governmental authority, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property. Mortgagor shall not bring or keep any article on the Property or cause or allow any condition to exist on it, if that could invalidate or would be prohibited by any insurance coverage required to be maintained by Mortgagor on the Property or any part of it under this Mortgage.

(d)   Mortgagor shall perform all other acts requested by Mortgagee in writing which from the character or use of the Property may be reasonably necessary to maintain and preserve its value.

(e)   Notwithstanding the provisions of this Paragraph 5, the parties acknowledge Mortgagor shall cease operations at the Property in accordance with Section 2(ii) of the Disposition Agreement.

5.6   Releases, Extensions, Modifications and Additional Security. Without affecting the personal liability of any person, including Mortgagor (or Mortgagor, if different

from Mortgagor), for the payment of the Secured Obligations or the lien of this Mortgage on the remainder of the Property for the unpaid amount of the Secured Obligations, Mortgagee may from time to time and without notice:

    (a)  release any person liable for payment of any Secured Obligation;

    (b)  extend the time for payment, or otherwise alter the terms of payment, of any Secured Obligation;

    (c)  accept additional real or personal property of any kind as security for any Secured Obligation, whether evidenced by deeds of trust, mortgages, security agreements or any other instruments of security;

    (d)  alter, substitute or release any property securing the Secured Obligations;

    (e)  consent to the making of any plat or map of the Property or any part of it;

    (f)  join in granting any easement or creating any restriction affecting the Property;

    (g)  join in any subordination or other agreement affecting this Mortgage or the lien of it; or

    (h)  release the Property or any part of it from the lien of this Mortgage.

    5.7  <u>Release</u>.  When all of the Secured Obligations have been paid in full and no further commitment to extend credit continues, within fifteen (15) days of written request from Mortgagor, Mortgagee shall release the Property, or so much of it as is then held under this Mortgage, from the lien of this Mortgage.

    5.8  <u>Compensation and Reimbursement of Costs and Expenses</u>.

    (a)  Mortgagor agrees to pay fees in the maximum amounts legally permitted, or reasonable fees as may be charged by Mortgagee when the law provides no maximum limit, for any services that Mortgagee may render in connection with this Mortgage, including Mortgagee's providing a statement of the Secured Obligations. Mortgagor shall also pay or reimburse all of Mortgagee's out-of-pocket costs and expenses which may be incurred in rendering any such services.

    (b)  Mortgagor further agrees to pay or reimburse Mortgagee for all out-of-pocket costs, expenses and other advances which may be incurred or made by Mortgagee to protect or preserve the Property or to enforce any terms of this Mortgage, including the exercise of any rights or remedies afforded to Mortgagee under Paragraph 6.3, whether any lawsuit is filed or not, or in defending any action or proceeding arising

-10-

under or relating to this Mortgage, including attorneys' fees and other legal costs, costs of any sale of the Property and any cost of evidence of title.

(c) Mortgagor shall pay all obligations arising under this Paragraph within five (5) business days upon demand by Mortgagee. Each such obligation shall be added to, and considered to be part of, the principal of the Secured Obligations, and shall bear interest from the date the obligation arises at the rate provided in any instrument or agreement evidencing the Secured Obligations. If more than one rate of interest is applicable to the Secured Obligations, the highest rate shall be used for purposes hereof.

5.9 Exculpation and Indemnification.

(a) Mortgagee shall not be directly or indirectly liable to Mortgagor or any other person as a consequence of any of the following:

(i) Mortgagee's exercise of or failure to exercise any rights, remedies or powers granted to it in this Mortgage;

(ii) Mortgagee's failure or refusal to perform or discharge any obligation or liability of Mortgagor under any agreement related to the Property or under this Mortgage;

(iii) Mortgagee's failure to produce Rents from the Property or to perform any of the obligations of the lessor under any lease covering the Property;

(iv) any waste committed by lessees of the Property or any other parties, or any dangerous or defective condition of the Property; or

(v) any loss sustained by Mortgagor or any third party resulting from any act or omission of Mortgagee in operating or managing the Property upon exercise of the rights or remedies afforded Mortgagee under Paragraph 6.3, unless the loss is caused by the gross negligence, willful misconduct or bad faith of Mortgagee.

Mortgagor hereby expressly waives and releases all liability of the types described above, and agrees that no such liability shall be asserted against or imposed upon Mortgagee.

(b) Mortgagor agrees to indemnify Mortgagee against and hold Mortgagee harmless from all losses, damages, liabilities, third-party claims, causes of action, judgments, court costs, attorneys' fees and other legal expenses, cost of evidence of title, cost of evidence of value, and other costs and expenses which Mortgagee may suffer or incur in performing any act required or permitted by this Mortgage or by law or because of any failure of Mortgagor to perform any of its obligations, unless the loss is caused by the gross negligence, willful misconduct or bad faith of Mortgagee. This agreement by Mortgagor to indemnify Mortgagee shall survive the release and cancellation of any or all of the Secured Obligations and the full or partial release of this

Mortgage but shall terminate two (2) years following any such full release if no claim has been made.

5.10    Defense and Notice of Claims and Actions.  At Mortgagor's sole expense, Mortgagor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this Mortgage and the rights and powers of Mortgagee created under it, against all adverse claims.  Mortgagor shall give Mortgagee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

5.11    Hazardous Substances.

(a)    Before signing this Mortgage, Mortgagor researched and inquired into the previous uses and ownership of the Property.  Based on that due diligence, Mortgagor represents and warrants that to the best of its knowledge, no hazardous substance has been disposed of or released or otherwise exists in, on, under or onto the Property, except as Mortgagor has disclosed to Mortgagee in writing.  Mortgagor further represents and warrants that Mortgagor has complied, and will comply and cause all occupants of the Property to comply, with all current and future laws, regulations and ordinances or other requirements of any governmental authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or hazardous substances ("Environmental Laws").  Mortgagor shall promptly, at Mortgagor's sole cost and expense, take all reasonable actions with respect to any hazardous substances or other environmental condition at, on, or under the Property necessary to (i) comply with all applicable Environmental Laws; (ii) allow continued use, occupation or operation of the Property; or (iii) maintain the fair market value of the Property.  Mortgagor acknowledges that hazardous substances may permanently and materially impair the value and use of the Property. "Hazardous substance" means any substance, material or waste that is or becomes designated or regulated as "toxic," "hazardous," "pollutant," or "contaminant" or a similar designation or regulation under any current or future federal, state or local law (whether under common law, statute, regulation or otherwise) or judicial or administrative interpretation of such, including without limitation petroleum or natural gas.

(b)    Mortgagor agrees to indemnify Mortgagee against and hold Mortgagee harmless from all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys' fees and other legal expenses, and other costs and expenses which Mortgagee may suffer or incur in performing any act required or permitted by this Mortgage or by law or because of any failure of Mortgagor to perform any of its obligations concerning hazardous substances and Environmental Laws under Paragraph 5.11(a), for environmental substances or conditions first placed upon the Property from and after the date of this Mortgage, unless the loss is caused by the gross negligence, willful misconduct or bad faith of Mortgagee.  The parties' indemnification obligations concerning hazardous substances and Environmental Laws with respect to the ownership and use of the Property prior to the date of this Mortgage shall be governed by the terms of the Purchase Agreement (as defined in the Seller Note).

5.12    Site Visits, Observation and Testing.  Mortgagee and its agents and representatives shall have the right at any reasonable time, after giving reasonable notice to

-12-

Mortgagor, to enter and visit the Property for the purposes of performing appraisals, observing the Property, taking and removing environmental samples, and conducting tests on any part of the Property. Mortgagor shall reimburse Mortgagee on demand for the costs of any such environmental investigation and testing conducted after the date hereof. Mortgagee will make reasonable efforts during any site visit, observation or testing conducted pursuant this Paragraph to avoid interfering with Mortgagor's use of the Property. Mortgagee is under no duty, however, to visit or observe the Property or to conduct tests, and any such acts by Mortgagee will be solely for the purposes of protecting Mortgagee's security and preserving Mortgagee's rights under this Mortgage. No such site visit, observation or testing or any report conducted after the date hereof or findings made as a result thereof ("Environmental Report") (i) will result in a waiver of any default of Mortgagor; (ii) impose any liability on Mortgagee; or (iii) be a representation or warranty of any kind regarding the Property (including its condition or value or compliance with any laws) or the Environmental Report (including its accuracy or completeness). In the event Mortgagee has a duty or obligation under applicable laws, regulations or other requirements to disclose an Environmental Report to Mortgagor or any other party, Mortgagor authorizes Mortgagee to make such a disclosure. Mortgagee may also disclose an Environmental Report to any regulatory authority, and to any other parties as necessary or appropriate in Mortgagee's judgment. Mortgagor further understands and agrees that any Environmental Report or other information regarding a site visit, observation or testing that is disclosed to Mortgagor by Mortgagee or its agents and representatives is to be evaluated (including any reporting or other disclosure obligations of Mortgagor) by Mortgagor without advice or assistance from Mortgagee.

6.  ACCELERATING TRANSFERS, DEFAULT AND REMEDIES.

6.1 Accelerating Transfers

(a) "Accelerating Transfer" means any sale, contract to sell, conveyance, encumbrance, or other transfer, whether voluntary, involuntary, by operation of law or otherwise, of all or any material part of the Property or any interest in it, including any transfer or exercise of any right to drill for or to extract any water (other than for Mortgagor's own use), oil, gas or other hydrocarbon substances or any mineral of any kind on or under the surface of the Property. Accelerating Transfer also means any "Change of Control" as defined in the Seller Note.

(b) Mortgagor agrees that Mortgagor shall not make any Accelerating Transfer, unless the transfer is preceded by Mortgagee's express written consent to the particular transaction and transferee. Mortgagee may withhold such consent in its sole discretion. If any Accelerating Transfer occurs, Mortgagee in its sole discretion may declare all of the Secured Obligations to be immediately due and payable, and Mortgagee may invoke any rights and remedies provided by Paragraph 6.3 of this Mortgage.

6.2 Events of Default. The occurrence of any one or more of the following events, at the option of Mortgagee, shall constitute an event of default ("Event of Default") under this Mortgage:

(a)  Mortgagor fails to make any payment, when due, under the Secured Documents (after giving effect to any applicable grace, notice or cure period), or any other default occurs under and as defined in the Secured Documents or in any other instrument or agreement evidencing any of the Secured Obligations and such default continues beyond any applicable cure period;

(b)  Mortgagor fails to make any payment or perform any obligation which arises under this Mortgage, and such failure continues for a period of fifteen (15) days following the date Mortgagor receives written notice from Mortgagee of such failure;

(c)  Mortgagor makes or permits the occurrence of an Accelerating Transfer in violation of Paragraph 6.1;

(d)  Any representation or warranty made in connection with this Mortgage or the Secured Obligations proves to have been false or misleading in any material respect when made; or

(e)  Any default occurs under any other mortgage on all or any part of the Property, or under any obligation secured by such mortgage, whether such mortgage is prior to or subordinate to this Mortgage.

6.3  <u>Remedies</u>.  At any time after the occurrence of an Event of Default, Mortgagee shall be entitled to invoke any and all of the rights and remedies described below, as well as any other rights and remedies authorized by law (subject to the limitations contained in Section 6.3(l) below).  All of such rights and remedies shall be cumulative, and the exercise of any one or more of them shall not constitute an election of remedies.

(a)  Mortgagee may declare any or all of the Secured Obligations to be due and payable immediately.

(b)  Mortgagee may apply to any court of competent jurisdiction for, and obtain appointment of, a receiver for the Property.

(c)  Mortgagee, in person, by agent or by court-appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and in its own name or in the name of Mortgagor sue for or otherwise collect any and all Rents, including those that are past due, and may also do any and all other things in connection with those actions that Mortgagee may in its sole discretion consider necessary and appropriate to protect the security of this Mortgage.  Such other things may include: entering into, enforcing, modifying, or canceling leases on such terms and conditions as Mortgagee may consider proper; obtaining and evicting tenants; fixing or modifying Rents; completing any unfinished construction; contracting for and making repairs and alterations; performing such acts of cultivation or irrigation as necessary to conserve the value of the Property; and preparing for harvest, harvesting and selling any crops that may be growing on the property.  Mortgagor hereby irrevocably constitutes and appoints Mortgagee as its attorney-in-fact to perform such acts and execute such documents as

-14-

Mortgagee in its sole discretion may consider to be appropriate in connection with taking these measures, including endorsement of Mortgagor's name on any instruments. Mortgagor agrees to deliver to Mortgagee all books and records pertaining to the Property, including computer-readable memory and any computer hardware or software necessary to access or process such memory, as may reasonably be requested by Mortgagee in order to enable Mortgagee to exercise its rights under this Paragraph.

(d)   Mortgagee may cure any breach or default of Mortgagor, and if it chooses to do so in connection with any such cure, Mortgagee may also enter the Property and/or do any and all other things which it may in its sole discretion consider necessary and appropriate to protect the security of this Mortgage. Such other things may include: appearing in and/or defending any action or proceeding which purports to affect the security of, or the rights or powers of Mortgagee under, this Mortgage; paying, purchasing, contesting or compromising any encumbrance, charge, lien or claim of lien which in Mortgagee's sole judgment is or may be senior in priority to this Mortgage, such judgment of Mortgagee to be conclusive as among the parties to this Mortgage; obtaining insurance and/or paying any premiums or charges for insurance required to be carried under this Mortgage; otherwise caring for and protecting any and all of the Property; and/or employing counsel, accountants, contractors and other appropriate persons to assist Mortgagee. Mortgagee may take any of the actions permitted hereunder either with or without giving notice to any person.

(e)   Mortgagee may bring an action in any court of competent jurisdiction to foreclose this instrument or to obtain specific enforcement of any of the covenants or agreements of this Mortgage.

(f)   Mortgagee may exercise the remedies contained in the Secured Documents or in any other instrument or agreement evidencing any of the Secured Obligations.

(g)   Mortgagee may proceed under the Uniform Commercial Code as to all or any part of the Personalty, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Mortgagee may sell the Personalty at a public sale to be held at the time and place specified in the notice of sale. It shall be deemed commercially reasonable for the Mortgagee to dispose of the Personalty without giving any warranties as to the Personalty and specifically disclaiming all disposition warranties.

(h)   If any provision of this Mortgage is inconsistent with any applicable provision of the Illinois Mortgage Foreclosure Law, Illinois Compiled Statutes Chapter 735, Section 5/15-1101 et seq. (the "Illinois Act"), the provisions of the Illinois Act shall take precedence over the provisions of this Mortgage, but shall not invalidate or render unenforceable any other provision of this Mortgage that can fairly be construed in a manner consistent with the Illinois Act.

LEGAL02/38575478v4

(i)  Without in any way limiting or restricting any of the Mortgagee's rights, remedies, powers and authorities under this Mortgage, and in addition to all of such rights, remedies, powers, and authorities, the Mortgagee shall also have and may exercise any and all rights, remedies, powers and authorities which the holder of a mortgage is permitted to have or exercise under the provisions of the Illinois Act, as the same may be amended from time to time.  If any provision of this Mortgage shall grant to the Mortgagee any rights, remedies, powers or authorities upon default of Mortgagor which are more limited than the rights that would otherwise be vested in the Mortgagee under the Illinois Act in the absence of said provision, the Mortgagee shall be vested with all of the rights, remedies, powers and authorities granted in the Illinois Act to the fullest extent permitted by law.

(j)  Without limiting the generality of the foregoing, all expenses incurred by the Mortgagee, to the extent reimbursable, under Sections 5/15-1510, 5/15-1512, or any other provision of the Illinois Act, whether incurred before or after any decree or judgment of foreclosure, and whether or not enumerated in any other provision of this Mortgage, shall be added to the indebtedness secured by this Mortgage and by the judgment of foreclosure.

(k)  Mortgagor waives, to the extent permitted by law, (a) the benefit of all laws now existing or that may hereafter be enacted providing for any appraisement before sale of any portion of the Property, (b) all rights of reinstatement, redemption, valuation, appraisement, homestead, moratorium, exemption, extension, stay of execution, notice of election to mature or declare due the whole of the Secured Obligations in the event of foreclosure of the liens hereby created, (c) all rights and remedies which Mortgagor may have or be able to assert by reason of the laws of the State of Illinois pertaining to the rights and remedies of sureties, (d) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Mortgage or to any action brought to enforce the Secured Documents or any other Secured Obligations, and (e) any rights, legal or equitable, to require marshaling of assets or to require foreclosure sales in a particular order. Without limiting the generality of the preceding sentence, Mortgagor, on its own behalf and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Mortgage, hereby irrevocably waives any and all rights of reinstatement or redemption from sale or from or under any order, judgment or decree of foreclosure of this Mortgage or under any power contained herein or under any sale pursuant to any statute, order, decree or judgment of any court. Mortgagor, for itself and for all persons hereafter claiming through or under it or who may at any time hereafter become holders of liens junior to the lien of this Mortgage, hereby expressly waives and releases all rights to direct the order in which any of the Property shall be sold in the event of any sale or sales pursuant hereto and to have any of the Property and/or any other property now or hereafter constituting security for any of the indebtedness secured hereby marshaled upon any foreclosure of this Mortgage or of any other security for any of said indebtedness. The Mortgagee shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. The Mortgagee shall have the right to determine the order in which any or all portions of the Secured Obligations are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Mortgagor, on behalf of itself and all persons now or hereafter

-16-

interested in the Property, voluntarily and knowingly hereby: acknowledges that the transaction of which this Mortgage is a part is a transaction which does not include either Agricultural real estate (as defined in the Illinois Act), or Residential real estate (as defined in the Illinois Act).

(l)    Notwithstanding anything contained in this Mortgage to the contrary, the terms and conditions of the Exculpation provisions of Section 28 of the Seller Note are expressly incorporated herein by this reference, and Mortgagor shall look solely to the Property and Personalty encumbered by this Mortgage for the repayment of the Secured Obligations (other than the Transition Note), and will not enforce a deficiency judgment against Mortgagor under the Seller Note, except for the limitations against exculpation that are set forth in Section 28 of the Seller Note.    Subject to the foregoing restriction against enforcing a deficiency judgment, nothing contained herein shall limit Mortgagee's right to obtain a foreclosure judgment against Mortgagor. Lender's rights under the Transition Note and any additional collateral securing the Transition Note are reserved.

6.4  Application of Sale Proceeds and Rents.

(a) Mortgagee shall apply the proceeds of any sale of the Property in the following manner: first, to pay the portion of the Secured Obligations attributable to the costs, fees and expenses of the sale, including costs of evidence of title in connection with the sale; and, second, to pay all other Secured Obligations in any order and proportions as Mortgagee in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto.

(b) Mortgagee shall apply any and all Rents collected by it, and any and all sums other than proceeds of any sale of the Property which Mortgagee may receive or collect under Paragraph 6.3, in the following manner: first, to pay the portion of the Secured Obligations attributable to the costs and expenses of operation and collection that may be incurred by Mortgagee or any receiver; and, second, to pay all other Secured Obligations in any order and proportions as Mortgagee in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto. Mortgagee shall have no liability for any funds which it does not actually receive.

7.  MISCELLANEOUS PROVISIONS

7.1  No Waiver or Cure.

(a) Each waiver by Mortgagee must be in writing, and no waiver shall be construed as a continuing waiver. No waiver shall be implied from any delay or failure by Mortgagee to take action on account of any default of Mortgagor. Consent by Mortgagee to any act or omission by Mortgagor shall not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Mortgagee's consent to be obtained in any future or other instance.

LEGAL02/38575478v4

(b) If any of the events described below occurs, that event alone shall not cure or waive any breach, Event of Default or notice of default under this Mortgage or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed); or impair the security of this Mortgage; or prejudice Mortgagee or any receiver in the exercise of any right or remedy afforded any of them under this Mortgage; or be construed as an affirmation by Mortgagee of any tenancy, lease or option, or a subordination of the lien of this Mortgage:

(i) Mortgagee, its agent or a receiver takes possession of all or any part of the Property;

(ii) Mortgagee collects and applies Rents, either with or without taking possession of all or any part of the Property;

(iii) Mortgagee receives and applies to any Secured Obligation proceeds of any Property, including any proceeds of insurance policies, condemnation awards, or other claims, property or rights assigned to Mortgagee under this Mortgage;

(iv) Mortgagee makes a site visit, observes the Property and/or conducts tests thereon;

(v) Mortgagee receives any sums under this Mortgage or any proceeds of any collateral held for any of the Secured Obligations, and applies them to one or more Secured Obligations;

(vi) Mortgagee or any receiver performs any act which it is empowered or authorized to perform under this Mortgage or invokes any right or remedy provided under this Mortgage.

7.2    Powers of Mortgagee. Mortgagee may take any of the actions permitted under Paragraphs 6.3(b) and/or 6.3(c) regardless of the adequacy of the security for the Secured Obligations, or whether any or all of the Secured Obligations have been declared to be immediately due and payable, or whether notice of default and election to sell has been given under this Mortgage.

7.3    Mortgagor.

(a) If any obligor other than Mortgagor ("Other Obligor") exist under the Secured Documents described in Paragraph 2.1(a), Mortgagor authorizes Mortgagee to perform any of the following acts at any time, all without notice to Mortgagor and without affecting Mortgagee's rights or Mortgagor's obligations under this Mortgage:

(i) Mortgagee may alter any terms of the Secured Documents or any part of it, including renewing, compromising, extending or accelerating, or

otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Secured Documents or any part of it;

(ii)  Mortgagee may take and hold security for the Secured Documents, accept additional or substituted security for the Secured Documents, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security;

(iii)  Mortgagee may apply any security now or later held for the Secured Documents in any order that Mortgagee in its sole discretion may choose, and may direct the order and manner of any sale of all or any part of it and bid at any such sale;

(iv)  Mortgagee may release any Other Obligor of its liability for the Secured Documents or any part of it;

(v)  Mortgagee may substitute, add or release any one or more guarantors or endorsers of the Secured Documents; and

(vi)  Mortgagee may extend other credit to any Other Obligor, and may take and hold security for the credit so extended, whether or not such security also secures the Secured Documents.

(b)  Mortgagor waives:

(i)  Any right it may have to require Mortgagee to proceed against any Other Obligor, proceed against or exhaust any security held from any Other Obligor, or pursue any other remedy in Mortgagee's power to pursue;

(ii)  Any defense based on any legal disability of any Other Obligor, any discharge or limitation of the liability of any Other Obligor to Mortgagee, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause, or any claim that Mortgagor's obligations exceed or are more burdensome than those of any Other Obligor;

(iii)  All presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Mortgage and of the existence, creation, or incurring of new or additional indebtedness of Mortgagor, and demands and notices of every kind, except for notices that may be otherwise expressly provided by the Secured Documents;

(iv)  Any defense based on or arising out of any defense that Mortgagor may have to the payment or performance of the Secured Documents or any part of it; and

LEGAL02/38575478v4

(v) Until the Secured Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that the Mortgagee may have against Mortgagor, and all rights to participate in any security now or later to be held by Mortgagee for the Secured Documents.

(c) Mortgagor assumes full responsibility for keeping informed of any Other Obligor's financial condition and business operations and all other circumstances affecting any Other Obligor's ability to pay and perform its obligations to Mortgagee, and agrees that Mortgagee shall have no duty to disclose to Mortgagor any information which Mortgagee may receive about any Other Obligor's financial condition, business operations, or any other circumstances bearing on its ability to perform.

(d) No provision or waiver in this Mortgage shall be construed as limiting the generality of any other provision or waiver contained in this Mortgage.

(e) For purposes of this Paragraph 7.3, all references to the Secured Documents shall also include any instrument or agreement executed by Mortgagor and any Other Obligor subsequent to the date of this Mortgage which is secured by this Mortgage.

7.4 Merger. No merger shall occur as a result of Mortgagee's acquiring any other estate in or any other lien on the Property unless Mortgagee consents to a merger in writing.

7.5 Joint and Several Liability. If Mortgagor consists of more than one person, each shall be jointly and severally liable for the faithful performance of all of Mortgagor's obligations under this Mortgage.

7.6 Applicable Law. This Mortgage shall be governed by the laws of the State of Illinois.

7.7 Successors in Interest. The terms, covenants and conditions of this Mortgage shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties. However, this Paragraph does not waive the provisions of Paragraph 6.1.

**7.8 SERVICE OF PROCESS. THE MORTGAGOR WAIVES PERSONAL SERVICE OF PROCESS UPON THE MORTGAGOR, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO THE MORTGAGOR AT THE ADDRESS STATED ON THE SIGNATURE PAGE HEREOF AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.**

**7.9   Waiver of Jury Trial.** EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS MORTGAGE OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION HEREWITH OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). MORTGAGOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST MORTGAGEE OR ANY OTHER PERSON INDEMNIFIED UNDER THIS MORTGAGE ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES. EACH PARTY HERETO (a) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (b) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS MORTGAGE AND THE OTHER DOCUMENTS CONTEMPLATED HEREBY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS PARAGRAPH AND (c) CERTIFIES THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE.

7.10 Interpretation. Whenever the context requires, all words used in the singular will be construed to have been used in the plural, and vice versa, and each gender will include any other gender. The captions of the paragraphs of this Mortgage are for convenience only and do not define or limit any terms or provisions. The word "include(s)" means "include(s), without limitation," and the word "including" means "including, but not limited to." The word "obligations" is used in its broadest and most comprehensive sense, and includes all primary, secondary, direct, indirect, fixed and contingent obligations. It further includes all principal, interest, prepayment charges, late charges, loan fees and any other fees and charges accruing or assessed at any time, as well as all obligations to perform acts or satisfy conditions. No listing of specific instances, items or matters in any way limits the scope or generality of any language of this Mortgage. The Exhibits to this Mortgage are hereby incorporated in this Mortgage.

7.11 Waiver of Marshaling. Mortgagor waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to direct the order in which any of the Property will be sold in the event of any sale under this Mortgage. Each successor and assign of Mortgagor, including any holder of a lien subordinate to this Mortgage, by acceptance of its interest or lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

7.12 Waiver of Homestead. Mortgagor hereby abandons and waives all claims of homestead on the Property and does hereby forever release and discharge the Property from any and all claims of homestead.

7.13 Severability. If any provision of this Mortgage should be held unenforceable or void, that provision shall be deemed severable from the remaining provisions

and in no way affect the validity of this Mortgage except that if such provision relates to the payment of any monetary sum, then Mortgagee may, at its option, declare all Secured Obligations immediately due and payable.

7.14 <u>Notices</u>.  Mortgagor hereby requests that a copy of notice of default and notice of sale be mailed to it at the address set forth below, which mailing shall be by recognized national overnight delivery service and/or by first class mail, return receipt requested.  That address is also the mailing address of Mortgagor as debtor under the Uniform Commercial Code.  Mortgagee's address given below is the address for Mortgagee as secured party under the Uniform Commercial Code.

Addresses for Notices to Mortgagor:

    c/o SRC Hospital Investments II, LLC
    898 N. Sepulveda Blvd., Suite 500
    El Segundo, CA 90245
    Attn:  Nick Orzano

With a Copy to:

    Duane Morris LLP
    190 South LaSalle Street, Suite 3700
    Chicago, Illinois 60603
    Attn:  N. Paul Coyle

Address for Notices to Mortgagee:

    c/o Tenet Healthcare Corporation
    1445 Ross Ave., Suite 1400
    Dallas, Texas 75202
    Attention:  Michael Maloney and Steven Schaefer

With Copies to:

    Alston & Bird LLP
    1201 W. Peachtree Street
    Atlanta, Georgia 30309
    Attention: J. Mark Ray and Russell Hilton

7.17 <u>Business Loan</u>.  Mortgagor stipulates, represents, warrants, affirms and agrees that each of the Secured Documents and other Secured Obligations secured hereby constitute a "business loan" within the meaning of the Illinois Compiled Statutes, Chapter 815, Sections 205/4(a) or (c), as amended.

7.18 <u>No Property Manager Lien</u>.  Any property management agreement for or relating to all or any part of the Property, whether now in effect or entered into hereafter by

-22-

Mortgagor or on behalf of Mortgagor, shall contain a subordination provision whereby the property manager forever and unconditionally subordinates to the lien of this Mortgage any and all mechanic's lien rights and claims that it or anyone claiming through or under it may have at any time pursuant to any statute or law, including, without limitation, Illinois Compiled Statutes, Chapter 770, Section 60/1 ), as amended. Such property management agreement or a short form thereof, including such subordination, shall, at the Mortgagee's request, be recorded with the office of the recorder of deeds for the county in which the Property is located. Mortgagor's failure to cause any of the foregoing to occur shall constitute an Event of Default under this Mortgage.

7.19. <u>Time of Essence</u>.   Time is of the essence of this Mortgage and all of the Secured Documents.

7.20  <u>Maximum Indebtedness</u>.  Notwithstanding anything contained herein to the contrary, in no event shall the Secured Obligations exceed an amount equal to two (2) times the original principal amount of the collective Secured Obligations as provided by the Secured Documents; provided, however, in no event shall the Mortgagor be obligated to advance funds in excess of the face amount of the Seller Note and the Transition Note.

LEGAL02/38575478v4

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage as of the date first above written.

MORTGAGOR:

**WESTLAKE PROPERTY HOLDINGS, LLC,**
a Delaware limited liability company

By: _____
Name: ~ ⌐⌐⌐⌐ ⌐⌐ ORZ⌐⌐
Title: M⌐⌐⌐⌐⌐

## ACKNOWLEDGMENT

STATE OF _____

COUNTY OF _____

On the ___ day of December in the year 2018 before me, the undersigned, a notary public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

LEGAL02/38575478v4

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____ Los Angeles _____

On _January 23, 2019_ before me, _____ MIn Young Park _____, Notary Public, personally appeared

Nicholas Lee Orzano

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under Penalty of Perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS MY HAND AND OFFICIAL SEAL.

_____
Signature of Notary Public

**MIN YOUNG PARK**
Commission No. 2269455
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires DECEMBER 30, 2022

(Notary Seal)

## OPTIONAL INFORMATION

*The acknowledgment contained within this document is in accordance with California law. Any certificate of acknowledgement performed within the State of California shall use the preceding wording pursuant to Civil Code section 1189. An acknowledgment cannot be affixed to a document sent by mail or otherwise delivered to a notary public, including electronic means, whereby the signer did not personally appear before the notary public, even if the signer is known by the notary public. In addition, the correct notarial wording can only be signed and sealed by a notary public. The seal and signature cannot be affixed to a document without the correct notarial wording.*

DESCRIPTION OF ATTACHED DOCUMENT

Mortgage, Assignment of Rents,
Security Agreement & Fixture Filing
(Title of document)

Number of Pages __37__ (Including acknowledgment)

Document Date __1/24/2019__

CAPACITY CLAIMED BY SIGNER

_____ Individual
_____ Corporate Officer
_____ Partner
_____ Attorney-In-Fact
_____ Trustee
_____ Other: _____

<u>EXHIBIT A</u>

<u>Description of Property</u>

**PARCEL 1:**

LOTS 1 TO 4, BOTH INCLUSIVE, AND LOTS 15 TO 20 BOTH INCLUSIVE, IN BLOCK 66 IN MELROSE, BEING A SUBDIVISION OF LOTS 3, 4 AND 5 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3 AND ALL OF SECTION 10, LYING NORTH OF THE CHICAGO AND NORTHWESTERN RAILROAD GALENA DIVISION, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number:  15-10-202-001-0000 (Affects Lots 1 and 2 of Parcel 1)
Tax ID Number:  15-10-202-002-0000 (Affects Lot 3 of Parcel 1)
Tax ID Number:  15-10-202-003-0000 (Affects Lot 4 of Parcel 1)
Tax ID Number:  15-10-202-008-0000 (Affects Lot 20 of Parcel 1)
Tax ID Number:  15-10-202-009-0000 (Affects Lot 19 of Parcel 1)
Tax ID Number:  15-10-202-010-0000 (Affects Lot 18 of Parcel 1)
Tax ID Number:  15-10-202-011-0000 (Affects Lot 17 of Parcel 1)
Tax ID Number:  15-10-202-012-0000 (Affects Lot 16 of Parcel 1)
Tax ID Number:  15-10-202-013-0000 (Affects Lot 15 of Parcel 1)

**PARCEL 2:**

LOTS 1 THRU 20, BOTH INCLUSIVE, IN BLOCK 49 IN MELROSE, BEING A SUBDIVISION OF LOTS 3, 4 AND 5 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3 AND ALL OF SECTION 10, LYING NORTH OF THE CHICAGO AND NORTHWESTERN RAILROAD GALENA DIVISION, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

TOGETHER WITH THE NORTH-SOUTH 14 FOOT VACATED ALLEY LYING EAST OF AND ADJOINING SAID LOTS 1 THRU 10, BOTH INCLUSIVE, AND LYING WEST OF AND ADJOINING SAID LOTS 11 THRU 20, BOTH INCLUSIVE, IN BLOCK 49 IN MELROSE, AFORESAID.

TOGETHER WITH THAT PART OF 14TH AVENUE, LYING SOUTH OF AND ADJOINING THE SOUTH LINE OF CHICAGO AVENUE AND LYING NORTH OF AND ADJOINING THE NORTHERLY LINE OF LAKE STREET, IN SECTION 10, TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, AS VACATED BY ORDINANCE RECORDED NOVEMBER 9, 2007 AS DOCUMENT 0731315167.

Tax ID Number:  15-10-203-001-0000 (Affects Lots 1, 2 part of vacated street & alley of parcel 2)
Tax ID Number:  15-10-203-002-0000 (Affects Lot 3 & part of vacated street & alley of parcel 2)
Tax ID Number:  15-10-203-003-0000 (Affects Lot 4 & part of vacated street & alley of parcel 2)
Tax ID Number:  15-10-203-006-0000 (Affects Lot 7 & part of vacated street & alley of parcel 2)
Tax ID Number:  15-10-203-007-0000 (Affects Lot 8 & part of vacated street & alley of parcel 2)
Tax ID Number:  15-10-203-008-0000 (Affects Lot 10,  part of vacated street & alley of parcel 2 & part of parcel 28)

LEGAL02/38575478v4

Tax ID Number: 15-10-203-009-0000 (Affects Lot 20, part vacated alley of parcel 2 & part of parcel 4)
Tax ID Number: 15-10-203-010-0000 (Affects Lot 19, part vacated alley of parcel 2 & part of parcel 4)
Tax ID Number: 15-10-203-011-0000 (Affects Lot 18, part vacated alley of parcel 2 & part of parcel 4)
Tax ID Number: 15-10-203-012-0000 (Affects Lot 17, part vacated alley of parcel 2 & part of parcel 4)
Tax ID Number: 15-10-203-013-0000 (Affects Lots 15, 16, part vacated alley of parcel 2 & part of parcel 4)
Tax ID Number: 15-10-203-014-0000 (Affects Lot 14, part of Lot 13, part vacated alley of parcel 2 & part of parcel 4)
Tax ID Number: 15-10-203-015-0000 (Affects Part Lots 13, 14, part of vacated alley of parcel 2 & part of parcel 4)
Tax ID Number: 15-10-203-016-0000 (Affects Lot 11, part Lot 12, part vacated alley of parcel 2 & part of parcels 4 & 28)
Tax ID Number: 15-10-203-017-0000 (Affects Part Lots 5, 6, part of vacated street & alley of parcel 2)


**PARCEL 3:**

LOTS 81, 82, 83 AND 84 IN THE SUBDIVISION OF ALL THAT PART LYING NORTH OF THE SOUTH LINE OF NORTH 6TH STREET (EXTENDED EASTERLY) OF LOT "F" IN MELROSE, BEING A SUBDIVISION OF LOTS 3, 4 AND 5 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3 AND ALL OF SECTION 10, LYING NORTH OF THE CHICAGO AND NORTHWESTERN RAILROAD GALENA DIVISION, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number: 15-10-204-006-0000 (Affects Parcel 3 and Part of Parcels 4 and 28)


**PARCEL 4:**

THAT PART OF VACATED 13TH AVENUE LYING SOUTH OF THE SOUTH LINE OF CHICAGO AVENUE, NORTH OF THE NORTH LINE OF SUPERIOR STREET, EAST OF LOTS 11 TO 20, BOTH INCLUSIVE, IN BLOCK 49 IN MELROSE AFORESAID, AND WEST OF LOTS 81 TO 84, BOTH INCLUSIVE, IN THE SUBDIVISION OF ALL THAT PART LYING NORTH OF THE SOUTH LINE OF NORTH 6TH STREET (NOW KNOWN AS SUPERIOR STREET) EXTENDED EASTERLY OF LOT "F" IN MELROSE, BEING A SUBDIVISION OF LOTS 3, 4 AND 5 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3 AND ALL OF SECTION 10, LYING NORTH OF THE CHICAGO AND NORTHWESTERN RAILROAD GALENA DIVISION, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, AS VACATED BY ORDINANCE RECORDED NOVEMBER 24, 1981 AS DOCUMENT 26068295, IN COOK COUNTY, ILLINOIS.

Tax ID Number: 15-10-203-009-0000 (Affects Lot 20, part vacated alley of parcel 2 & part of parcel 4)
Tax ID Number: 15-10-203-010-0000 (Affects Lot 19, part vacated alley of parcel 2 & part of parcel 4)
Tax ID Number: 15-10-203-011-0000 (Affects Lot 18, part vacated alley of parcel 2 & part of parcel 4)
Tax ID Number: 15-10-203-012-0000 (Affects Lot 17, part vacated alley of parcel 2 & part of parcel 4)
Tax ID Number: 15-10-203-013-0000 (Affects Lots 15, 16, part vacated alley of parcel 2 & part of parcel 4)
Tax ID Number: 15-10-203-014-0000 (Affects Lot 14, part of Lot 13, part vacated alley of parcel 2 & part of parcel 4)
Tax ID Number: 15-10-203-015-0000 (Affects Part Lots 13, 14, part of vacated alley of parcel 2 & part of parcel 4)

-26-

Tax ID Number: 15-10-203-016-0000 (Affects Lot 11, part Lot 12, part vacated alley of parcel 2 & part of parcels 4 & 28)
Tax ID Number: 15-10-204-006-0000 (Affects Parcel 3 and Part of Parcels 4 and 28)

**PARCEL 5:**

LOTS 1, 2, 3 AND 4 IN BLOCK 10 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number: 15-10-204-005-0000 (Affects Parcel 5 and Part of Parcels 27 and 28)

**PARCEL 6:**

LOTS 1 AND 2 IN KUHLMANN SUBDIVISION OF LOTS 4, 5, 6, 7 AND 8 IN BLOCK 48 OF MELROSE, A SUBDIVISION OF LOTS 3, 4 AND 5 IN THE SUPERIOR COURT PARTITION OF THE SOUTH 1/2 OF SECTION 3 AND ALL OF SECTION 10, ALL IN TOWNSHIP 39 NORTH RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING NORTH OF THE CHICAGO AND NORTHWESTERN RAILWAY, GALENA DIVISION, IN COOK COUNTY, ILLINOIS.

TOGETHER WITH THE WEST 1/2 OF VACATED 13TH AVENUE LYING EAST OF AND ADJOINING SAID PARCEL.

Tax ID Number: 15-10-209-005-0000 (Affects parcel 6)

**PARCEL 7:**

LOTS 3, 4 AND 5 IN KUHLMANN SUBDIVISION OF LOTS 4, 5, 6, 7 AND 8 IN BLOCK 48 OF MELROSE, A SUBDIVISION OF LOTS 3, 4 AND 5 IN THE SUPERIOR COURT PARTITION OF THE SOUTH 1/2 OF SECTION 3 AND ALL OF SECTION 10, ALL IN TOWNSHIP 39 NORTH RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING NORTH OF THE CHICAGO AND NORTHWESTERN RAILWAY, GALENA DIVISION, IN COOK COUNTY, ILLINOIS.

TOGETHER WITH THE EAST 1/2 OF THE VACATED ALLEY LYING WEST OF AND ADJOINING LOT 5 AFORESAID.

Tax ID Number: 15-10-209-002-0000 (Affects Lot 5 & vacated alley of parcel 7)
Tax ID Number: 15-10-209-003-0000 (Affects Lot 4 of parcel 7)
Tax ID Number: 15-10-209-004-0000 (Affects Lot 3 of parcel 7)

**PARCEL 8:**

LOTS 1, 2 AND 3 TAKEN AS A TRACT, IN BLOCK 48 IN MELROSE, BEING A SUBDIVISION OF LOTS 3, 4 AND 5 IN THE SUPERIOR COURT PARTITION OF THE SOUTH 1/2 OF SECTION 3 AND ALL OF SECTION 10, LYING NORTH OF THE CHICAGO AND NORTHWESTERN RAILROAD GALENA DIVISION, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

LEGAL02/38575478v4

TOGETHER WITH THE WEST 1/2 OF THE VACATED ALLEY LYING EAST OF AND ADJOINING SAID PARCEL.

Tax ID Number:  15-10-209-006-0000 (Affects parcel 8)
                15-10-209-007-0000 (Affects parcel 8)


PARCEL 9:

LOTS 1 TO 8, BOTH INCLUSIVE, AND THE SOUTH 1/2 OF LOT 9, LOTS 11 TO 20, BOTH INCLUSIVE, IN BLOCK 9 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, AND THAT PART OF SECTION 10, LYING NORTH OF RAILROAD, IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

TOGETHER WITH THAT PART OF THE NORTH AND SOUTH ALLEY LYING WEST OF AND ADJOINING SAID LOTS 1 TO 7, BOTH INCLUSIVE, AND LYING EAST OF AND ADJOINING SAID LOTS 14 TO 20, BOTH INCLUSIVE, IN BLOCK 9 AFORESAID, AS VACATED BY ORDINANCE RECORDED NOVEMBER 27, 1973 AS DOCUMENT 22554694.

TOGETHER WITH THE NORTH AND SOUTH ALLEY LYING WEST OF AND ADJOINING SAID LOTS 8 AND 9, AND LYING WEST OF AND ADJOINING LOT 10 IN BLOCK 9 AFORESAID, AS VACATED BY ORDINANCE RECORDED NOVEMBER 9, 2007 AS DOCUMENT 0731315167.

Tax ID Number:  15-10-205-018-0000 (Affects Parcel 9)


PARCEL 10:

LOTS 1 TO 10, BOTH INCLUSIVE, IN BLOCK 8 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, AND THAT PART OF SECTION 10, LYING NORTH OF RAILROAD, IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number:  15-10-206-001-0000 (Affects Lots 9 & 120 & part of vacated street of parcel 10)
Tax ID Number:  15-10-206-002-0000 (Affects Lots 7 & 8 & part of vacated street of parcel 10)
Tax ID Number:  15-10-206-003-0000 (Affects Lot 6 & part of vacated street of parcel 10)
Tax ID Number:  15-10-206-004-0000 (Affects Lot 5 & part of vacated street of parcel 10)
Tax ID Number:  15-10-206-005-0000 (Affects Lot 5 & part of vacated street of parcel 10)
Tax ID Number:  15-10-206-006-0000 (Affects Lot 3 & part of vacated street of parcel 10)
Tax ID Number:  15-10-206-007-0000 (Affects Lots 1 & 2, part of vacated street of parcel 10 & part of parcel 28)


PARCEL 11:

THAT PART OF LOT "F" IN MELROSE, BEING A SUBDIVISION OF LOTS 3, 4 AND 5 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3 AND ALL OF SECTION 10, LYING NORTH

OF THE CHICAGO AND NORTHWESTERN RAILROAD GALENA DIVISION, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING BETWEEN THE NORTH LINE OF ELGIN ROAD (NOW KNOWN AS LAKE STREET) AND THE SOUTH LINE OF NORTH 6TH STREET (NOW KNOWN AS SUPERIOR STREET), SAID LOT "F" BEING OTHERWISE DESCRIBED AS A STRIP OF LAND 42 FEET WIDE LYING EAST AND ABUTTING THE EAST LINE OF 13TH AVENUE, SOUTH OF AND ABUTTING THE SOUTH LINE OF LOT "E" AND NORTH AND ABUTTING THE RIGHT OF WAY OF CHICAGO AND NORTHWESTERN RAILROAD AS SHOWN ON PLAT RECORDED AS DOCUMENT 102939, IN COOK COUNTY, ILLINOIS.

TOGETHER WITH THE EAST 1/2 OF VACATED 13TH AVENUE LYING WEST OF AND ADJOINING THAT PART OF LOT "F" DESCRIBED ABOVE.

Tax ID Number: 15-10-210-001-0000 (Affects parcel 11)


PARCEL 12:

THE WEST 75 FEET OF LOT 1 (AS MEASURED ON THE NORTH LINE THEREOF) IN BLOCK 5 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, AND THAT PART OF SECTION 10 LYING NORTH OF RAILROAD, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number: 15-10-210-005-0000 (Affects parcel 12)


PARCEL 13:

LOT 1 (EXCEPT THE WEST 75 FEET THEREOF, AS MEASURED ON THE NORTH LINE THEREOF) AND THE SOUTH 24 FEET OF LOT 2 (EXCEPT THE WEST 75 FEET THEREOF, AS MEASURED ON THE SOUTH LINE OF SAID LOT 2) IN BLOCK 5 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, AND THAT PART OF SECTION 10 LYING NORTH OF RAILROAD, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number: 15-10-210-006-0000 (Affects parcel 13)
Tax ID Number: 15-10-210-007-0000 (Affects part of parcels 13 and 27)
Tax ID Number: 15-10-210-008-0000 (Affects parcel 13)
Tax ID Number: 15-10-210-013-0000 (Affects part of parcels 13 and 14)


PARCEL 14:

THE WEST 1/3 OF LOTS 2 AND 3 TAKEN AS A TRACT (EXCEPT THE SOUTH 24 FEET THEREOF) IN BLOCK 5 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, AND THAT PART OF SECTION 10 LYING NORTH OF RAILROAD, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

ALSO

LEGAL02/38575478v4

THE SOUTH 24 FEET OF THE WEST 75 FEET OF LOT 2 IN BLOCK 5 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, AND THAT PART OF SECTION 10 LYING NORTH OF RAILROAD, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number: 15-10-210-013-0000 (Affects part of parcels 13 and 14)


**PARCEL 15:**

THE WEST 1/2 OF THE EAST 2/3 OF LOTS 2 AND 3 (EXCEPT THE SOUTH 24 FEET OF LOT 2) IN BLOCK 5 S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, AND THAT PART OF SECTION 10 LYING NORTH OF RAILROAD, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number: 15-10-210-011-0000 (Affects parcel 15)


**PARCEL 16:**

THE EAST 1/3 OF LOTS 2 AND 3 (EXCEPT THE SOUTH 24 FEET OF LOT 2) IN BLOCK 5 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, AND THAT PART OF SECTION 10 LYING NORTH OF RAILROAD, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number: 15-10-210-012-0000 (Affects parcel 16 and part of parcel 27)


**PARCEL 17:**

LOTS 3 THRU 20, BOTH INCLUSIVE, IN BLOCK 6 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, AND THAT PART OF SECTION 10 LYING NORTH OF RAILROAD, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

TOGETHER WITH THAT PART OF THE VACATED NORTH SOUTH 14 FOOT ALLEY IN SAID BLOCK 6, LYING WEST OF AND ADJOINING LOTS 5 TO 12, BOTH INCLUSIVE, AND LYING EAST OF AND ADJOINING SAID LOTS 13 TO 20, BOTH INCLUSIVE, IN BLOCK 6 AFORESAID; ALSO THE EAST 1/2 OF THAT PART OF SAID VACATED ALLEY LYING WEST OF AND ADJOINING SAID LOTS 3 AND 4 IN BLOCK 6 AFORESAID, AS VACATED BY ORDINANCE RECORDED NOVEMBER 21, 1980 AS DOCUMENT 25676496.

ALSO

THE WEST 38 FEET (AS MEASURED ON THE NORTH LINE) OF LOTS 1 AND 2 IN BLOCK 6 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, AND THAT PART OF SECTION 10 LYING NORTH OF RAILROAD, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY,

LEGAL02/38575478v4

ILLINOIS.

TOGETHER WITH THE EAST 1/2 OF THE VACATED ALLEY LYING WEST AND ADJOINING SAID LOTS 1 AND 2 IN BLOCK 6 AFORESAID, AS VACATED BY ORDINANCE RECORDED NOVEMBER 21, 1980 AS DOCUMENT 25676496.

Tax ID Number: 15-10-211-001-0000 (Affects Lot 13 and part vacated alley of parcel 17)
Tax ID Number: 15-10-211-002-0000 (Affects Lot 14 and part vacated alley of parcel 17)
Tax ID Number: 15-10-211-003-0000 (Affects Lot 15 and part vacated alley of parcel 17)
Tax ID Number: 15-10-211-004-0000 (Affects Lot 16 and part vacated alley of parcel 17)
Tax ID Number: 15-10-211-005-0000 (Affects Lot 17, part of Lot 18 and part vacated alley of parcel 17)
Tax ID Number: 15-10-211-006-0000 (Affects Lot 19, 20 and part of Lot 18 and part vacated alley of parcel 17)
Tax ID Number: 15-10-211-009-0000 (Affects Lot 12, part vacated alley of parcel 17 and part parcel 28)
Tax ID Number: 15-10-211-010-0000 (Affects Lot 11 and part vacated alley of parcel 17)
Tax ID Number: 15-10-211-011-0000 (Affects Lot 10 and part vacated alley of parcel 17)
Tax ID Number: 15-10-211-012-0000 (Affects Lot 9 and part vacated alley of parcel 17)
Tax ID Number: 15-10-211-013-0000 (Affects Lots 7 & 8 and part vacated alley of parcel 17)
Tax ID Number: 15-10-211-014-0000 (Affects Lots 5 & 6 and part vacated alley of parcel 17)
Tax ID Number: 15-10-211-015-0000 (Affects Lot 6 and part vacated alley of parcel 17)
Tax ID Number: 15-10-211-016-0000 (Affects Lot 3 and part vacated alley of parcel 17)
Tax ID Number: 15-10-211-017-0000 (Affects Part of Lots 1 & 2 and part vacated alley of parcel 17)

## PARCEL 18:

LOTS 9 TO 14, BOTH INCLUSIVE, IN BLOCK 7 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, AND THAT PART OF SECTION 10 LYING NORTH OF RAILROAD, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number: 15-10-212-001-0000 (Affects Lot 14 and part vacated street)
Tax ID Number: 15-10-212-002-0000 (Affects Lot 13 and part vacated street)
Tax ID Number: 15-10-212-003-0000 (Affects Lot 11 & 12 and part vacated street)
Tax ID Number: 15-10-212-004-0000 (Affects Lots 9 & 10 and part vacated street)

## PARCEL 19:

LOTS 12 AND 13 (EXCEPT THE EAST 50 FEET THEREOF) AND THE NORTH 1/2 OF LOT 11 (EXCEPT THE EAST 50 FEET THEREOF) LOTS IN BLOCK 4 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, AND THAT PART OF SECTION 10 LYING NORTH OF RAILROAD, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number: 15-10-218-002-0000 (Affects part of parcel 19)
Tax ID Number: 15-10-218-003-0000 (Affects part of parcel 19)

## PARCEL 20:

THE EAST 50 FEET OF THE NORTH 9 FEET OF LOT 11, AND THE EAST 50 FEET OF LOT 12

-31-

AND THE EAST 50 FEET OF LOT 13 (MEASURED ON THE SOUTH LINE THEREOF) IN BLOCK 4 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, AND THAT PART OF SECTION 10 LYING NORTH OF RAILROAD, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number:  15-10-218-004-0000 (Affects parcel 20)


**PARCEL 21:**

THE EAST 110.25 FEET OF LOT 9 (EXCEPT THE NORTH 30 FEET THEREOF) AND THE EAST 110.25 FEET OF THE NORTH 15 FEET OF LOT 8 IN BLOCK 4 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, AND THAT PART OF SECTION 10 LYING NORTH OF RAILROAD, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number:  15-10-218-017-0000 (Affects parcel 21 and other Property)


**PARCEL 22:**

LOTS 21 AND 22 IN BLOCK 6, TOGETHER WITH THE WEST 1/2 OF THE VACATED ALLEY LYING EAST OF AND ADJOINING SAID LOTS, IN IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, AND THAT PART OF SECTION 10 LYING NORTH OF RAILROAD, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number:  15-10-211-007-0000 (Affects parcel 22)
                15-10-211-008-0000 (Affects parcel 22)

**PARCEL 23:**

LOT 33 IN BLOCK 3 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, AND THAT PART OF SECTION 10 LYING NORTH OF RAILROAD, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number:  15-10-219-007-0000 (Affects parcel 23)

**PARCEL 24:**

LOTS 21 AND 22 (EXCEPT THE EAST 10.24 FEET OF SAID LOT 22 MEASURED ON THE NORTH AND SOUTH LINE OF SAID LOT) IN BLOCK 5 IN A. J. STONE'S ADDITION, BEING A SUBDIVISION OF LOT 1 (EXCEPT THE NORTH 15 ACRES THEREOF) IN PARTITION OF PARTS OF SECTIONS 3 AND 10, TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number:  15-10-221-055-0000 (Affects parcel 24)

LEGAL02/38575478v4

**PARCEL 25:**

THE EAST 10.24 FEET OF LOT 22, ALL OF LOT 23 AND THE WEST 15 FEET OF LOT 24, MEASURED ON THE NORTH AND SOUTH LINES THEREOF, IN BLOCK 5 IN A. J. STONE'S ADDITION, BEING A SUBDIVISION OF LOT 1 (EXCEPT THE NORTH 15 ACRES THEREOF) IN PARTITION OF PARTS OF SECTIONS 3 AND 10, TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax ID Number:  15-10-221-056-0000 (Affects parcel 25)

**PARCEL 26:**

THAT PART OF LOT "F" IN MELROSE, BEING A SUBDIVISION OF LOTS 3, 4 AND 5 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3 AND ALL OF SECTION 10, LYING NORTH OF THE CHICAGO AND NORTHWESTERN RAILROAD GALENA DIVISION, ALL IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING SOUTH OF LAKE STREET (FORMERLY ELGIN ROAD) DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTHWEST CORNER OF LOT 13 IN BLOCK 4 IN S. R. HAVEN'S SUB (WHICH SAID SUBDIVISION ABUTS ON SAID LOT "F") BEING THE INTERSECTION OF THE SOUTH LINE OF LAKE STREET AND THE EAST LINE OF SAID LOT "F", RUNNING THENCE SOUTH ALONG THE EAST LINE OF LOT "F", 150 FEET; THENCE DUE WEST 42 FEET TO THE WEST LINE OF SAID LOT "F"; THENCE NORTH ALONG THE SOUTH LINE OF SAID LOT "F", 163.5 FEET, MORE OR LESS, TO THE SOUTH LINE OF SAID LAKE STREET OR ELGIN ROAD; THENCE IN A SOUTHEASTERLY DIRECTION ALONG THE SOUTH LINE OF SAID LAKE STREET OR ELGIN ROAD, 43.85 FEET, MORE OR LESS, TO THE PLACE OF BEGINNING, IN COOK COUNTY, ILLINOIS.

Tax ID Number:  15-10-218-049-0000 (Affects parcel 26)

**PARCEL 27:**

THAT PART OF 12TH AVENUE, LYING SOUTH OF AND ADJOINING THE SOUTH LINE OF CHICAGO AVENUE AND LYING NORTH OF AND ADJOINING THE NORTHERLY LINE OF LAKE STREET IN SECTION 10, TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, AS VACATED BY ORDINANCE RECORDED NOVEMBER 9, 2007 AS DOCUMENT 0731315167.

Tax ID Number:  15-10-204-005-0000 (Affects Parcel 5 and Part of Parcels 27 and 28)
Tax ID Number:  15-10-210-012-0000 (Affects parcel 16 and part of parcel 27)
Tax ID Number:  15-10-210-007-0000 (Affects part of parcels 13 and 27)

**PARCEL 28:**

THAT PART OF SUPERIOR STREET, LYING EAST OF AND ADJOINING THE EAST LINE OF 11TH AVENUE AND LYING WEST OF AND ADJOINING THE NORTHERLY EXTENSION OF THE EAST LINE OF LOT 14 IN BLOCK 7 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, AND THAT PART OF SECTION 10 LYING NORTH OF

-33-

RAILROAD;

**ALSO**

THAT PART OF SUPERIOR STREET, LYING EAST OF AND ADJOINING THE EAST LINE OF 12TH AVENUE AND LYING WEST OF AND ADJOINING THE WEST LINE OF 11TH AVENUE IN SECTION 10, TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN;

**ALSO**

THAT PART OF SUPERIOR STREET, LYING EAST OF AND ADJOINING THE EAST LINE OF 14TH AVENUE AND LYING WEST OF AND ADJOINING THE WEST LINE OF 12TH AVENUE IN SECTION 10, TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN,

ALL AS VACATED BY ORDINANCE RECORDED NOVEMBER 9, 2007 AS DOCUMENT 0731315167.

Tax ID Number: 15-10-203-008-0000 (Affects Lot 10, part of vacated street & alley of parcel 2 & part of parcel 28)
Tax ID Number: 15-10-203-016-0000 (Affects Lot 11, part Lot 12, part vacated alley of parcel 2 & part of parcels 4 & 28)
Tax ID Number: 15-10-204-005-0000 (Affects Parcel 5 and Part of Parcels 27 and 28)
Tax ID Number: 15-10-204-006-0000 (Affects Parcel 3 and Part of Parcels 4 and 28)
Tax ID Number: 15-10-206-007-0000 (Affects Lots 1 & 2, part of vacated street of parcel 10 & part of parcel 28)
Tax ID Number: 15-10-211-009-0000 (Affects Lot 12, part vacated alley of parcel 17 and part parcel 28)

**PARCEL 29:**

THAT PART OF VACATED 11TH AVENUE, LYING SOUTH OF AND ADJOINING THE SOUTH LINE OF CHICAGO AVENUE AND LYING NORTH OF AND ADJOINING THE WESTERLY EXTENSION OF THE NORTH LINE OF LOT 8 IN BLOCK IN 7 IN S.R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3, TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN AND THAT PART OF SECTION 10, LYING NORTH OF THE RIGHT-OF-WAY OF THE CHICAGO AND NORTHWESTERN RAILWAY IN TOWNSHIP 39 NORTH, RANGE 12, EAST OF THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS, AS VACATED BY ORDINANCE RECORDED NOVEMBER 9, 2007 AS DOCUMENT 0731315167.

Tax ID Number: 15-10-206-003-0000
Tax ID Number: 15-10-206-004-0000
Tax ID Number: 15-10-206-005-0000
Tax ID Number: 15-10-206-006-0000
Tax ID Number: 15-10-206-007-0000
Tax ID Number: 15-10-212-001-0000
Tax ID Number: 15-10-212-002-0000
Tax ID Number: 15-10-212-003-0000
Tax ID Number: 15-10-212-004-0000

-34-

**PARK PARCEL:**

THE WEST 80.00 FEET OF THE NORTH 1/2 OF LOT 4 AND THE WEST 80.00 FEET OF LOTS 5 AND 6 IN BLOCK 4 IN S. R. HAVEN'S SUBDIVISION OF LOT 2 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3 AND THAT PART OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING NORTH OF RAILROAD TOGETHER WITH THE SOUTH 125 FEET OF THAT PART OF LOT 'F' IN MELROSE, LYING WEST OF AND ADJOINING THE NORTH 1/2 OF LOT 4 AND ALL OF LOTS 5 AND 6 IN BLOCK 4 IN S. R. HAVEN'S SUBDIVISION AFORESAID, SAID MELROSE, BEING A SUBDIVISION OF LOTS 3, 4 AND 5 IN THE SUBDIVISION OF THE SOUTH 1/2 OF SECTION 3 AND ALL OF SECTION 10, LYING NORTH OF THE CHICAGO & NORTH WESTERN R. R. GALENA DIVISION, IN COOK COUNTY, ILLINOIS.

Permanent Index Nos.:   15-10-218-034-0000
                        15-10-218-035-0000
                        15-10-218-036-0000
                        15-10-218-037-0000
                        15-10-218-038-0000
                        15-10-218-039-0000
                        15-10-218-040-0000
                        15-10-218-041-0000
                        15-10-218-046-0000

*619 N 15th Ave Melrose Park IL 60160*

LEGAL02/38575478v4

## EXHIBIT B

### Insurance Requirements

Commercial general liability insurance covering bodily injury and property damage to third parties and including Blanket Contractual Liability, covering Mortgagor and Mortgagor's employees, at the following limits: $2,000,000 per occurrence; $4,000,000 general aggregate.

LEGAL02/38575478v4