# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | Case No. 19-22878 |
| WESTLAKE PROPERTY HOLDINGS, LLC, ) | (Jointly Administered) |
| *et al*., ) | |
| ) | Hon. Deborah L. Thorne |
| Debtors. ) | |
| ) | |
| ) | |

## NOTICE OF FILING OF REVISED PROPOSED PURCHASE AGREEMENT

TO:   See Attached Service List

Ira Bodenstein, not individually, but solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estates of Westlake Property Holdings, LLC ("Holdings") and Pipeline – Westlake Hospital, LLC ("Pipeline-Westlake," and together with Holdings, the "Debtors"), hereby files a marked copy of the revised proposed Asset Purchase Agreement (the "Purchase Agreement") in connection with the *Trustee's Motion for Authority to Sell Certain Equipment Free and Clear of All Liens, Claims and Encumbrances and Related Relief* [ECF No. 129]. The Purchase Agreement remains subject to non-material modification, amendment or correction.

|  |  |
|---|---|
|  | Ira Bodenstein, not personally, but as chapter 7 trustee for the bankruptcy estates of Pipeline – Westlake Hospital, LLC and Westlake Property Holdings, LLC |
| Dated: January 29, 2020 | */s/ Allen J. Guon* |
|  | One of his attorneys |

Robert M. Fishman
Allen J. Guon
David D. Doyle
FOX ROTHSCHILD LLP
321 N. Clark Street, Suite 1600
Chicago, IL 60654
312-517-9200

107234739.v1

# **CERTIFICATE OF SERVICE**

      Allen J. Guon, an attorney, certifies that he caused to be served a true copy of the above and foregoing notice and attached document upon the Electronic Mail Notice List through the ECF System which sent notification of such filing via electronic means or via U.S. First Class Mail, as indicated, on January 29, 2020.

                                                                    */s/ Allen J. Guon*

Mailing Information for Case 19-22878

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Terence G Banich    tbanich@foxrothschild.com, kjanecki@foxrothschild.com
- Ira Bodenstein    iratrustee@foxrothschild.com, IL29@ecfcbis.com;plove@foxrothschild.com;chdocket@foxrothschild.com
- Ira Bodenstein    ibodenstein@foxrothschild.com, plove@foxrothschild.com;chdocket@foxrothschild.com
- Erin M Buechler    erin.buechler@comed.com
- John T Carroll    jcarroll@cozen.com, pgiordano@cozen.com;jdeeney@cozen.com;john-carroll-2735@ecf.pacerpro.com
- Rosanne Ciambrone    rciambrone@duanemorris.com, jkahane@duanemorris.com;rpdarke@duanemorris.com;jjohnson3@duanemorris.com
- Scott R Clar    sclar@cranesimon.com, mjoberhausen@cranesimon.com;asimon@cranesimon.com
- David E Cohen    dcohen@fishercohen.com
- Jeffrey C Dan    jdan@cranesimon.com, sclar@cranesimon.com;mjoberhausen@cranesimon.com
- David R Doyle    ddoyle@foxrothschild.com, kjanecki@foxrothschild.com
- Robert M Fishman    rfishman@foxrothschild.com, kjanecki@foxrothschild.com
- Allen J Guon    aguon@foxrothschild.com, plove@foxrothschild.com;chdocket@foxrothschild.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Kevin H Morse    kmorse@clarkhill.com
- Nancy A Peterman    petermann@gtlaw.com, chilitdock@gtlaw.com;greenbergc@gtlaw.com;stibbep@gtlaw.com
- Christina Sanfelippo    csanfelippo@foxrothschild.com, orafalovsky@foxrothschild.com
- Julia Jensen Smolka    jjensen@dimonteandlizak.com, mkwakwa@dimontelaw.com
- John R Weiss    jrweiss@duanemorris.com
- Eric R von Helms    evonhelms@kmksc.com
- Vlad V. Chirica    vchirica@perlandgoodsnyder.com
- Allen R. Perl    aperl@perlandgoodsnyder.com

**Manual Notice List – Via E-Mail**
Stanley Otake
sotake@wilshirepacificadvisors.com
Eric Weissman
eweissman@wilshirepacificadvisors.com
Wilshire Pacific Capital Advisors

Gregory F. Pesce
gregory.pesce@kirkland.com

107234739.v1

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT("**Agreement**"), dated as of January 30, 2020, (hereinafter referred to as the "**Effective Date**") is entered into by and between Ira Bodenstein, not personally, but as chapter 7 trustee ("**Seller**" or "**Trustee**") for the estates of Pipeline-Westlake Hospital, LLC and Westlake Property Holdings, LLC, on the one hand, and The Alternative Source Medical LLC ("**Buyer**,") on the other. Seller and Buyer are collectively referred to herein as the "**Parties**" and at times each is individually referred to herein as a "**Party**."

## RECITALS

**WHEREAS**, on August 6, 2019 ("**Petition Date**"), Pipeline-Westlake Hospital, LLC ("**Pipeline-Westlake**") and Westlake Property Holdings, LLC ("**Holdings**," and with Pipeline-Westlake, the "**Debtors**") filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware (the "**Delaware Court**"), designated as Case Nos. 19-11756 and 19-11757, respectively;

**WHEREAS**, on August 13, 2019, the Delaware Court entered the *Order Granting Motion of the United States Trustee to Transfer Venue to the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division*, transferring the bankruptcy cases (the "**Bankruptcy Cases**") to the U.S. Bankruptcy Court for the Northern District of Illinois (the "**Bankruptcy Court**"), where the Bankruptcy Cases are jointly administered under Lead Case No. 19-22878;

**WHEREAS**, Ira Bodenstein is the duly appointed chapter 7 trustee of the Debtors' bankruptcy estates (collectively, the "**Estates**");

**WHEREAS**, prior to the Petition Date, the Debtors operated a hospital located at 1225 West Lake Street, Melrose Park, Illinois 60160 (the "**Premises**");

**WHEREAS**, the Buyer desires to purchase the Estates' right, title, and interest in certain Purchased Assets (defined below) located at the Premises;

**WHEREAS**, after purchasing the Purchased Assets, the Buyer desires to hold an auction (the "**Auction**") for the Purchased Assets at the Premises; and

**WHEREAS**, the Parties wish to memorialize the terms and conditions of their agreement for the transfer of the Purchased Assets.

**NOW**, **THEREFORE**, for and in consideration of the foregoing recitals, which are incorporated herein by this reference, and for other good and valuable considerations, the receipt, adequacy, and sufficiency of which are hereby acknowledged, the Parties hereby covenant and agree as follows:

## AGREEMENT

A.   **Recitals Incorporated**. The recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full, and made a part of, this Agreement.

106508877

**B.     Purchase and Sale.**  Subject to the provisions of this Agreement and the Sale Order, Buyer agrees to purchase by quit-claim bill of sale all of the Debtors' and the Estates' right, title, and interest in and to the furniture, fixtures, and equipment (the "**Purchased Assets**") specifically identified on the Quit-Claim Bill of Sale ("**Bill of Sale**") attached hereto as **Exhibit 1**, plus equipment any other personal property located at the Premises that is owned by the Debtors that is not (i) is owned by Holdings and (ii) is not subject to a security interest, a lease or the rights of a third-party party or (ii) an Excluded Asset (defined below) ("**Purchased Assets**").  A copy of the Quit-Claim Bill of Sale ("**Bill of Sale**") is attached hereto as **Exhibit 1**.

**C.     Payment of Purchase Price.**  The purchase price for the Purchased Assets shall be One Million Fifty Thousand Dollars and No Cents ($1,050,000.00) ("**Purchase Price**").  The Purchase Price will be paid by the Buyer to the Trustee in immediately available funds by cashier's check upon the entry of the Sale Order (defined below).  Upon entry of the Sale Order by the Bankruptcy Court, Seller shall execute and deliver or cause to be executed and delivered to the Buyer by email the Bill of Sale. Simultaneously with the execution of this Agreement by the Parties, the Trustee will deliver to Buyer wire transfer instructions.

**D.     Excluded Assets.**  Notwithstanding anything to the contrary contained herein, the Purchased Assets purchased pursuant to this Agreement do not include (i) any of the Debtor's books and records (including electronic data that may reside in any of the Purchased Assets pertaining solely to the Debtor's internal corporate matters); (ii) any patient information, patient records, patient lab results, or patient bodily tissue or fluid (including electronic data that may reside in any of the Purchased Assets specifically containing individually identifiable health information as defined in the Health Insurance Portability and Accountability Act of 1996, 42 U.S. Code § 1320d, *et seq*. (hereinafter referred to as "**HIPAA**")); or (iii) any furniture, fixtures or equipment located at the Premises that are not specifically of the personal property identified on the Bill of Sale **Exhibit 2** to this Agreement (hereinafter collectively referred to as "**Excluded Assets Asset(s)**").  Buyer agrees and represents that to the extent the hard drives on any computer or server located at the Premises contain any Excluded Assets (including individually identifiable health information protected by HIPAA), Buyer agrees to will securely and safely destroy any such electronic records in a manner which complies with HIPAA and applicable laws and regulations.

**E.     Disclaimer.**  Buyer agrees that it is purchasing and shall take possession of the Purchased Assets in their "AS IS" AND "WHERE IS" CONDITION AND SELLER MAKES NO WARRANTIES OR REPRESENTATIONS AS TO, AND SPECIFICALLY DISCLAIMS, ANY WARRANTIES OF VALUE, QUANTITY, MERCHANTABILITY, OR FITNESS FOR ANY PURPOSE WHATSOEVER.  Buyer acknowledges that it has previously been given the opportunity to and has conducted such investigations and inspections of the Purchased Assets as Buyer has deemed necessary or appropriate for the purposes of this Agreement.  Buyer acknowledges and agrees that Seller has not made, and hereby does not make, any express or implied representations, statements, warranties, or conditions of any kind or nature whatsoever concerning the Purchased Assets.

**F.     Risk of Loss.**  Upon the Buyer's receipt of the Bill of Sale from the Seller, (i) Buyer bears all risk of loss of the Purchased Assets, and (ii) Buyer will maintain insurance against loss or damage to the Purchased Assets while the Purchased Assets are located in the Premises.  Seller

will have no liability to Buyer for any loss or damage to the Property after Buyer's receipt of the Bill of Sale.

**G.    Cost of Removal**. Costs and expenses to remove the Purchased Assets from the Premises will be at the sole cost, liability and expense of the Buyer. The Buyer will properly disconnect each Purchase Asset from the Premises, and will reasonably cap electrical, plumbing, and other utility services at the location where the Purchased Assets are located. The Buyer will supervise the removal of the Purchased Assets sold to a Third-Party Purchaser and will have all Purchased Assets removed from the Premises ~~(whether or not sold to a Third-Party Purchaser)~~ not later than the Access Termination Date. Any Purchased Assets remaining at the Premises after the Access Termination Date shall be deemed abandoned to the Estate and Buyer shall have no further interest in such property (collectively, the "**Abandoned Property**"). At Seller's request, Buyer shall use its best efforts to assist Seller in removing any Abandoned Property from the Premises ("**Removal Services**"). Buyer shall not charge Seller for providing the Removal Services.

**H.    Use of the Premises.** Seller will maintain the Purchased Assets at the Premises until the earlier of (i) such time as may be necessary for the Buyer to sell and/or remove the Purchased Assets; (ii) such time as may be necessary for Third Party Purchasers (defined below) to remove their purchased Purchased Assets; or (iii) April 30, 2020 (the "**Access Termination Date**").

**1.**    Seller grants and will timely enable and facilitate, all without cost or expense to the Buyer, reasonable access to and use of the Premises by Buyer, its agents, licensees, and invitees, including potential buyers of the Purchased Assets (collectively, "**Third Party Purchasers**"), for the purposes of storing and preparing the Purchased Assets for sale, exhibiting the Purchased Assets to Third Party Purchasers and enabling inspection of the Purchased Assets, conducting private sales and/or public Auctions at the Premises, and removal of the Purchased Assets after sale, and Seller will cooperate in all such uses to the extent reasonably requested by the Buyer. ~~The~~ Buyer shall contact the Seller to request access to the Premises at least three (3) business days prior to the requested access date. After obtaining access to the Premises, the Buyer shall ensure, prior to leaving the Premises, that the Premises are left in substantially the same condition as it was on the date that Buyer gained access. After obtaining access to the Premises, Buyer shall ensure that the Premises are left in broom-swept condition prior to leaving the Premises. To the extent that the Buyer is required to remove, modify or damage the walls or other structures to remove the Purchased Assets from the Premises, the Buyer shall repair such removal, modification or damage to the state such structure existed as of the date of this Agreement, including but not limited to rebuilding any walls that were removed.

**2.**    The term "Facility Services" means electricity, gas, water, heat, air conditioning, lighting, security, elevator, and waste disposal services. Seller, at its sole cost and expense, will provide all Facility Services at the Premises. Seller will, at its sole cost and expense, shall use commercially reasonable efforts to cause all Facility Services to be fully operating on business days during normal business hours (9 a.m. to 5 p.m. Monday through Friday, except holidays) to facilitate the sale of the Purchased Assets to Third Party Purchasers. Such access, use, and Facility Services will continue until the

Access Termination Date, or on such other date or dates as may be mutually agreeable to the Parties.

3. Seller will promptly notify the Buyer in advance of any material change to the Premises regarding or affecting the Purchased Assets, the Facility Services, or the Premises, alteration of maintenance programs, or any events or knowledge that could materially affect any sale of the Purchased Assets, the value of any Purchased Assets or performance by either Party under this Agreement. Seller shall undertake commercially reasonable efforts to promptly remedy any such material change.

4. The Buyer will carry and maintain public liability insurance coverage issued by a company or companies licensed to sell such coverage to the extent of not less than $1,000,000.00 for bodily injury, and $1,000,000.00 for property damage per occurrence. Prior to the commencement of the sale of any Purchased Assets by the Buyer, the Buyer will furnish Seller customary certificates of such insurance coverage as Seller reasonably requires. Said certificate shall contain an endorsement that such insurance may not be canceled except upon thirty (30) days' prior written notice and shall confirm that the Seller is named as an additional insured. Such coverage will remain in effect until the Access Termination Date.

5. The Buyer hereby agrees to indemnify and hold Seller harmless from any and all claims, demands, liability, loss, costs and expenses (including, without limitation, reasonable attorneys' fees), excluding consequential, punitive or exemplary damages, asserted against or incurred by Seller and arising out of or in connection with (i) any breach by the Buyer of any of its material covenants, representations or warranties under this Agreement; (ii) any breach by the Buyer of any of its material obligations under this Agreement; (iii) any death, bodily injury or property damage caused or incurred by the Buyer and/or its agents or employees in the course of performing any services or work under this Agreement, or while on the Premises; (iv) any death, bodily injury or property damage caused or incurred by any Third Party Purchaser on the Premises; (v) the negligence, gross negligence or intentional misconduct by the Buyer and/or its agents or employees or (vi) damage to the Premises from the work contemplated by this Agreement and the removal of the Purchased Assets. Notwithstanding anything contained herein to contrary, Buyer shall have no duty to indemnify or hold Seller harmless to the extent that any loss is caused by Seller's or Seller's agents' negligence, gross negligence or intentional acts.

**I.    No Third Party Beneficiaries.**  This Agreement is for the sole benefit of the Parties hereto and their permitted assigns, and nothing herein expressed or implied shall give or be construed to give any person (other than the parties hereto and such assigns) any legal or equitable rights hereunder.

**J.    Amendment and Modification.**  This Agreement may be amended, modified or supplemented only by written agreement of the parties hereto.

K. **Severability.**  Any provision of this Agreement that shall be prohibited or unenforceable shall be deemed ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

L. **Entire Agreement.**  This Agreement constitutes the entire understanding of the Parties hereto as to the subject matter hereof.  The undersigned acknowledge that there are no communications or understandings, oral or written, contrary, different or which in any way restrict or alter this Agreement.  The undersigned further acknowledge that all prior agreements, communications, and understandings within the scope of the subject matter of this Agreement are, upon execution of this Agreement, superseded, null and void.

M. **Governing Law and Jurisdiction.**  This Agreement shall be governed by the laws of the United States of America as to matters of federal bankruptcy law and otherwise by the laws of the State of Illinois. With respect to matters governed by Illinois law, this Agreement shall be construed and interpreted in accordance with its laws, notwithstanding its conflict of law principles or any other rule, regulation or principle that would result in the application of any other state's law.  Furthermore, the Parties agree that the Bankruptcy Court shall retain exclusive jurisdiction over all matters relating to this Agreement.

N. **Counterparts.**  This Agreement may be executed in any number of counterparts, and each counterpart will constitute an original document, but all such separate counterparts constitute only one and the same instrument.  Facsimile and e-mailed signatures shall be deemed to have the same effect as original signatures.

O. **Expenses.**  Each of the Parties hereto shall bear all fees and expenses incurred by such party in connection with, relating to or arising out of the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby, including, without limitation, attorneys, accountants, and other professional fees and expenses.

P. **Authority.**  The Parties represent and warrant to each other that (a) they respectively have the legal capacity and authority to enter into this Agreement and (b) this Agreement constitutes the voluntary, legal, valid and binding obligation of each of the Parties.

Q. **Recitals.**  The recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full, and made a part of, this Agreement.

R. **Headings.**  The Paragraph headings contained in this Agreement are included for the purpose of convenience only, and do not affect the construction or interpretation of any of the provisions of this Agreement

S. **Bankruptcy Court Approval.**  This Agreement is subject to the approval of the Bankruptcy Court.  Within five (5) business days after the Effective Date, Seller shall file a motion seeking entry of an order (a "**Sale Order**") approving this Agreement and authorizing Seller to take such steps as may be necessary or appropriate to consummate the transactions contemplated hereby.  The Sale Order shall provide that the Purchased Assets are to be transferred free and clear of any and all liens, claims and interests and shall contain a waiver of the stay period provided in Fed. R. Bankr. P. 6004(h). ~~The Trustee will return the Deposit to Buyer in the event that the Court does not enter the Sale Order on January 30, 2020.~~

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK - SIGNATURES TO FOLLOW]

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK - SIGNATURES TO FOLLOW]

**IN WITNESS WHEREOF**, the parties hereto have duly executed and delivered this Agreement as of the Effective Date set forth above, and in doing so, fully agree to be bound by the terms set forth herein.

| | |
|---|---|
| **Ira Bodenstein, not personally, but as chapter 7 trustee for the estates of Pipeline-Westlake Hospital, LLC and Westlake Property Holdings, LLC** | **The Alternative Source Medical LLC** |
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Its: _____ | Its: _____ |

106508877.v9
~~106508877.v7~~

EXHIBIT 1

# EXHIBIT 1

## QUIT-CLAIM BILL OF SALE

Seller, Ira Bodenstein, not individually but solely in his capacity as chapter 7 trustee (the "Trustee" or "Seller") for the bankruptcy estates (the "Estates") of Pipeline-Westlake Hospital, LLC ("Pipeline-Westlake") and Westlake Property Holdings, LLC ("Holdings," and together with Pipeline-Westlake, the "Debtors"), which bankruptcy cases are pending under Lead Case No. 19-22878 in the U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division, in consideration of One Million Fifty Thousand Dollars and No Cents ($1,050,000.00), receipt of which is hereby acknowledged, does hereby sell, assign, transfer~~-~~, and ~~set~~ quit-claim over to Buyer, The Alternative Source Medical LLC (the "Buyer"), all of the Debtors' and the Estates' right, title ~~and interest in the property (the "Assets") set forth in Exhibit 1 attached hereto~~, and interest in and to the furniture, fixtures, equipment any other personal property located at the 1225 West Lake Street, Melrose Park, Illinois 60160 as of January 29, 2020 that is owned by the Debtors and that is not (i) subject to a security interest, a lease or the rights of a third party or (ii) an Excluded Asset (as defined in the Asset Purchased Agreement dated January 30, 2019 between Seller and Buyer) (collectively, the "Purchased Assets").

The Assets are being conveyed to Buyer free and clear of all liens, claims, encumbrances and interests, but otherwise on an **"AS IS, WITH ALL FAULTS," BASIS AND WITHOUT ANY REPRESENTATION OR WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE OR OF ANY OTHER KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE SELLER OR ANY OF HIS AGENTS AS TO ANY MATTERS CONCERNING THE ASSETS, INCLUDING, WITHOUT LIMITATION: (i) the quality, nature, adequacy and physical condition of the Assets, (ii) the compliance of the Assets with any applicable codes, laws, regulations, statutes, ordinances, covenants, conditions and restrictions of any governmental or quasi-governmental entity or of any other person or entity, or (iii) the quality of any labor and materials used in connection with the Assets.**

THIS DOCUMENT IS EXECUTED PURSUANT TO THE AUTHORITY GRANTED BY THE U.S. BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION, BY ORDER DATED ~~_____~~ JANUARY 30, 2020.

IN WITNESS WHEREOF, Seller has signed and sealed this Bill of Sale on this ~~____~~ 30th day of ~~____~~ January, 2020.

                                                                                    _____
                                                                                    Ira Bodenstein, Trustee
                                                                                    321 N. Clark Street, Suite 1600
                                                                                    Chicago, IL 60654

# EXHIBIT 2

Huntington/SRC Investments Equipment

- 1 CSM-AIO-001 CSM SOFTWARE & WORKSTATION KIT (AIO)
- 1 CSM-BDL-001 PHARM WHOLESALER ORDERING INTERFACES
- 1 CSM-FRM-003 3-CELL CSM AUX
- 1 CSM-SCN-001 2D BARCODE SCANNER, CSM
- 24 MDA-DRW-004 8-BIN LOCKING DRAWER
- 7 MDA-FRM-001 1-CELL OMNIRX
- 4 MDA-FRM-002 2-CELL OMNIRX
- 3 MDA-FRM-003 3-CELL OMNIRX
- 1 MDA-FRM-005 OMNIRX G4
- 2 MDA-FRM-006 OMNIRX-TT G4
- 16 MDA-OPT-001 EXTERNAL RETURN BIN INSTALLED
- 6 MDA-OPT-003 MED PRINTER LABELS - BOX (6 ROLLS)
- 6 MDA-PNT-001 MEDICATON LABEL PRINTER (G4 PC BOX)
- 2 MDA-SCN-003 2D SAFETYSTOCK G4 (OMNIRX, TT, HALF RX)
- 14 MDA-SCN-004 2D SAFETYSTOCK G4 (1,2,3 CELL)
- 35 MSA-LIC-001 ANYWHERE RN
- 1 MSA-OPT-001 FLEXLOCK WITH TEMPCHECK (50FT)
- 16 MSA-OPT-006 FLEXLOCK WITH TEMPCHECK (50FT) INSTL G4
- 4 OERB50 50 FOOT CABLE FOR EXTERNAL RETURN BIN/FL
- 16 OEXPLCT OMNIEXPLORER (PER CT CABINET)
- 55 OLL12 12-BIN LOCKING DRAWER
- 62 OLL24 24-BIN LOCKING DRAWER

- 19 OLL6 6-BIN LOCKING DRAWER
- 1 OMC-PNT-001 SAFETYSTOCK THERMAL PRINTER (SATO)
- 1 OMC-SCN-004 2D SAFETYSTOCK IMAGER (1D UPGR/NEW LOC)
- 5 OSD24 OMNICELL DRAWER MODULE (SUPPLY DRAWER)
- 9 OSOMDP OPTION KIT, OMNIDISPENSER PLUS3
- 11 OSPPO PROFILE DRIVEN OPTION
- 17 OSRXU NINE DRAWER PHARMACY MODULE
- 1 OX104RX OMNIRX ONE-CELL AUXILIARY
- 25 PS1 PULL OUT SHELF
- PANDORA VIA MULTILOCATION LICENSE
- 2 PVI-ANA-003 PVIA CLINICALS ADC 10 LIC PK OMNICELL
- 8 SP SINGLEPOINTE
- 14 SRD-IDR-016 TOUCH & GO FOR G4 PC BOX CONSOLE
- 2 SRD-IDR-021 TOUCH & GO FOR G4 LID CONSOLE

Stryker Equipment

- 7203-000-000 SYSTEM 7 SINGLE TRIGGER ROTARY 2
- 7206-000-000 SYSTEM 7 RECIP SAW 2
- 7208-000-000 SYSTEM 7 SAG SAW 2
- 6203-110-000 AO SMALL ATTACHMENT 2
- 6203-135-000 HUDSON/MODIFIED TRINKLE ATTACH 2
- 6203-150-000 SYS 6/MOD TRINKLE 2
- 6203-160-000 TRINKLE ATTACHMENT 2
- 6203-126-000 ADJ PIN COLLET 2.0 2mm 2
- 4405-000-000 CORDLESS DRIVER 4 2

- 4100-062-000 Wire Collet 2
- 4100-126-000 Adjustable Pin Collet 2
- 4100-110-000 Synthes Drill 2
- 4100-135-000 Hudson/Modified Trickle Drill 2
- 4100-131-000 1/4 inch Drill with Jacobs Chuck 2
- 4100-132-000 5/32 inch Drill with Jacobs Chuck 2
- 4190-235-000 Hudson/Modified Trinkle Reamer 2
- 6400-015-000 REMB MICRO DRILL 2
- 5100-015-250 Micro Drill Medium Straight Attachment 2
- 6400-034-000 REMB SAG SAW 2
- 6400-031-000 REMB OSC SAW 2
- 6400-037-000 REMB RECIP SAW 2
- 6400-099-000 REMB UNIVERSAL DRIVER 2
- 6400-062-000 REMB ELECTRIC WIREDRIVER 2
- Pre-Owned Cordless Driver 4
- Pre-Owned Universal Charger
- Stryker SmartLife Battery Pack, Small (2)

TIAA Commercial Finance, Inc.

- GE Healthcare Technologies OEC 9900 Elite Digital Mobile Standard C-ARM VASMTS (together with all attachments, accessories and accessions thereto)

Siemens

- CA-1500 (serial no. G1028)

Abbott

- ARC ci4100 Analyzer (serial number C401244)

4

Miscellaneous Computer Equipment

- All PCs, servers, and all related cabling, and miscellaneous hardware, racking and software

Equipment leased from De Lage Landen Financial Services, Inc.

| Asset Number | Manufacturer Name | Model Number | Serial Number |
|---|---|---|---|
| 25374342_12 | CANON | IR1730IF | QGF11466 |
| 25374342_13 | CANON | IR1730IF | QGF11489 |
| 25374342_15 | CANON | IR1730IF | QGF11540 |
| 25374342_18 | CANON | IR1730IF | QGF11541 |
| 25374342_24 | CANON | IR1730IF | QGF11464 |
| 25374342_31 | CANON | IR1730IF | QGF11543 |
| 25374342_41 | CANON | IR1730IF | QGF11886 |
| 25374342_7 | CANON | IR1730IF | QGF11465 |
| 25374342_8 | CANON | IR1730IF | QGF11923 |
| 25374342_9 | CANON | IR1730IF | QGF11859 |
| 25374342_19 | CANON | IRA400IF | QLA22338 |
| 25374342_2 | CANON | IRA400IF | QLA22320 |
| 25374342_57 | CANON | IRA400IF | QLA39720 |
| 25374342_6 | CANON | IRA400IF | QLA22336 |
| 25374342_17 | CANON | IRA4235 | RKJ14773 |
| 25374342_23 | CANON | IRA4235 | RKJ14826 |
| 25374342_3 | CANON | IRA4235 | RKJ14830 |
| 25374342_38 | CANON | IRAC5235 | RRB24551 |
| 25374342_55 | CANON | IRAC5535 | WXF12637 |
| 25374342_56 | CANON | IRAC5535 | WXF12660 |
| 25374342_14 | HP | M426FDN | PHB8H8DB03 |
| 25374342_16 | HP | M426FDN | PHB8H8B91R |
| 25374342_20 | HP | M426FDN | PHB8H8DBZX |
| 25374342_21 | HP | M426FDN | PHB8H8B9RF |
| 25374342_22 | HP | M426FDN | PHB8H8BHP1 |
| 25374342_25 | HP | M426FDN | PHB8H8C7YC |
| 25374342_26 | HP | M426FDN | PHB8H8C34P |
| 25374342_27 | HP | M426FDN | PHB8H8DB6M |
| 25374342_28 | HP | M426FDN | PHB8H8C93G |
| 25374342_29 | HP | M426FDN | PHB8H8C6K0 |
| 25374342_30 | HP | M426FDN | PHB8H8C7KG |

5

| | | | |
|---|---|---|---|
| 25374342_32 | HP | M426FDN | PHB8H8C5K1 |
| 25374342_33 | HP | M426FDN | PHB8H8C7NP |
| 25374342_34 | HP | M426FDN | PHB8H8C7N6 |
| 25374342_35 | HP | M426FDN | PHB8H8B9CS |
| 25374342_36 | HP | M426FDN | PHB8H8BJT8 |
| 25374342_37 | HP | M426FDN | PHB8H8B9L7 |
| 25374342_39 | HP | M426FDN | PHB8H8BJN0 |
| 25374342_40 | HP | M426FDN | PHB8H8BB00 |
| 25374342_42 | HP | M426FDN | PHB8H8C7T2 |
| 25374342_43 | HP | M426FDN | PHB8H8C342 |
| 25374342_44 | HP | M426FDN | PHB8H8B9NX |
| 25374342_45 | HP | M426FDN | PHB8H8C6LN |
| 25374342_46 | HP | M426FDN | PHB8H8B9BH |
| 25374342_47 | HP | M426FDN | PHB8H8B97Q |
| 25374342_48 | HP | M426FDN | PHB8H8C7TT |
| 25374342_49 | HP | M426FDN | PHB8H8C5Z9 |
| 25374342_51 | HP | M426FDN | PHB5H5B996 |
| 25374342_52 | HP | M426FDN | PHB8H8B9NC |
| 25374342_53 | HP | M426FDN | PHB8H8Y35G |
| 25374342_54 | HP | M426FDN | PHB8HCS/XH |
| 25374342_50 | HP | M525F | MXFCH8W1SF |
| 25374342_1 | HP | M527F | MXBCHBT0XD |
| 25374342_10 | HP | M527F | MXBCHBT0YS |
| 25374342_11 | HP | M527F | MXBCHBT0Z5 |
| 25374342_4 | HP | M527F | MXBCHBT0YT |
| 25374342_5 | HP | M527F | MXBCHBT0ZG |
| 25374342_58 | HP | M527F | MXBCK6C129 |